**LAW OFFICES OF RONALD A. MARRON, APLC**
Ronald A. Marron, (SBN 175650)
Margarita Salazar (SBN 224649)
Maggie Realin (SBN 263639)
3636 4th Avenue, Suite 202
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665
ron.marron@gmail.com

**THE WESTON FIRM**
Jack Fitzgerald (SBN 257370)
2811 Sykes Court
Santa Clara, California 95051
Telephone: (408) 459-0305
Facsimile: (480) 247.4553
jack@westonfirm.com

*Attorneys for Plaintiff Salvatore Gallucci*
*and the Proposed Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SALVATORE GALLUCCI, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>BOIRON, INC., a foreign corporation; and BOIRON USA, INC., a foreign corporation,<br><br>        Defendants. | CASE NO. 11-CV-2039 JAH NLS<br>CLASS ACTION<br><br>**PLAINTIFF SALVATORE GALLUCCI'S OPPOSITION TO DEFENDANT BOIRON USA, INC.'S MOTION TO DISMISS; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:     November 21, 2011<br>Time:    2:30 p.m.<br>Location: Courtroom 11 (2nd Floor)<br>Judge:   Hon. John A. Houston |

# TABLE OF CONTENTS

I.      SUMMARY OF ARGUMENT ................................................................. 1

II.     THE UNDERLYING FACTS REGARDING THE PARTIES ....................... 2

III.    STANDARD OF REVIEW ...................................................................... 4

IV.     THIS COURT'S EXERCISE OF PERSONAL JURISDICTION OVER
        DEFENDANT BOIRON USA DOES NOT VIOLATE DUE PROCESS ................. 5

        A.      California's Long-Arm Statute Permits the Broad Exercise of Personal
                Jurisdiction ........................................................................................ 5

        B.      The Court Should Conduct a Threshold Analysis of the Relationship
                Between Boiron USA and Boiron, Inc. to Determine if Agency or Alter
                Ego Theories Apply ............................................................................ 6

                1.      Boiron, Inc.'s forum-related activities should be imputed to
                        Boiron USA under agency theory ............................................ 6

                        (i)      Services of Special Importance .................................... 7

                        (ii)     Right to Control ........................................................ 9

                2.      Boiron, Inc.'s forum-related activities should be imputed to
                        Boiron USA under alter ego theory because there is such a unity
                        of interest between the two companies that it would work a
                        fraud and injustice not to disregard the separate personalities of
                        the two corporations and regard them as one ............................ 10

                        (i)      Unity of Interest, Ownership, and Goals .................... 11

                        (ii)     Control ..................................................................... 12

                        (iii)    Fraud or Injustice ..................................................... 13

        C.      This Court has General In Personam Jurisdiction Over Boiron, Inc. and
                Can Impute the Subsidiary's Ongoing and Substantial Contacts with the
                Forum to Boiron USA .......................................................................... 14

        D.      Specific In Personam Jurisdiction Exists Over Boiron, Inc. and Should
                be Imputed to Boiron USA ................................................................... 15

                1.      Boiron, Inc. purposefully availed itself of, and purposeful
                        directed its activities to, the California medical community and
                        all California consumers ....................................................... 15

                2.      This claim arises out of Boiron, Inc.'s forum-related activities ........... 16

                3.      Exercise of personal jurisdiction in California is reasonable, and
                        does not violate the notions of fair play and substantial justice. ......... 17

V.      PLAINTIFF'S COMPLAINT STATES A PLAUSIBLE CLAIM FOR RELIEF
        AND IS PLED WITH PARTICULARITY, PER FEDERAL RULES OF
        CIVIL PROCEDURE 12(B)(6) AND 9(B), RESPECTIVELY ........................ 18

VI.     CONCLUSION .................................................................................... 18

i

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Altria Group, Inc. v. Good*, 129 S. Ct. 538 (2008) ........................................................................ 17

*Bauman v. DaimlerChrysler, Corp.*, --- F.3d ---,
    No. 07-15386, 2011 WL 1879210 (9th Cir. May 18, 2011) ............................................ 1, 6, 7, 9

*Burger King v. Rudzewicz,* 471 U.S. 462 (1985) ............................................................................ 5

*Data Disc, Inc. v. Systems Tech. Assoc., Inc.,* 557 F.2d 1280 (9th Cir. 1977) ............................ 4

*Doe I. v. Unocal Corp.*, 248 F.3d 915 (9th Cir. 2001)...................................... 2, 4, 6, 7, 8, 11, 13

*Hanson v. Denckla,* 357 U.S. 235 (1958) .................................................................................... 14

*Harris Rutsky & Co. Ins. Svcs. v. Bell & Clements,* 328 F.3d 1122 (9th Cir. 2003) .... 5, 15, 16, 17

*Internat'l Shoe Co. v. State of Wash.,* 326 U.S. 310 (1945) ................................................. 5, 17

*Kidd v. Ashcroft,* 580 F.3d 949 (9th Cir. 2009) ............................................................................ 4

*Kramer Motors, Inc. v. British Leyland, Ltd.*, 628 F.2d 1175 (9th Cir. 1980) ........................... 15

*Kulko v. Superior Court*, 436 U.S. 84 (1978) ............................................................................. 15

*Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n,*
    107 F.3d 1026 (3d Cir. 1997) ................................................................................................. 4

*McGee v. International Life Ins. Co.*, 355 U.S. 220 (1957) .......................................................... 15

*Metcalfe v. Renaissance Marine, Inc.,* 566 F.3d 324 (3d Cir. 2009) ............................................ 4

*Paulsen v. CNF, Inc.,* 391 F. Supp. 2d 804 (N.D. Cal. 2005) ....................................................... 4

*Perkins v. Benguet Consolid. Mining Co.,* 342 U.S. 437 (1952) ................................................. 14

*Purdue Research Foundation v. Sanofi-Synthelabo, S.A.,* 338 F.3d 773 (8th Cir. 2003).............. 4

*Sampson v. Boiron-Borneman Inc.*, Case No. 5:95-cv-20535-JW (Sept. 1995 N.D. Cal.) ............ 2

*Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797 (9th Cir. 2004).......................... 15, 16

*Standard Homeopathic v. Boiron-Borneman, Inc., Boiron, Inc., Boiron USA,*
    *and Boiron*, Case No. 2:95-cv-01196-JP (Mar. 1995 E.D. Penn.)........................................... 3

## FEDERAL STATUTES

21 U.S.C. § 360(b) ......................................................................................................................... 7

21 U.S.C. § 360(c) ......................................................................................................................... 7

21 U.S.C. § 360(d) ......................................................................................................................... 7

21 U.S.C. § 360(i) .......................................................................................................................... 7

21 C.F.R. § 207.3 ........................................................................................................................... 7

21 C.F.R. § 207.20 ......................................................................................................................... 7

21 C.F.R. § 207.25 ......................................................................................................................... 7

21 C.F.R. § 207.40(a) ..................................................................................................................... 7

21 C.F.R. § 207.40(c)(1)-(2) ......................................................................................................... 7

Federal Rule of Civil Procedure 4(k)(1)(A).......................................................................... 5, 14

ii

*Gallucci v. Boiron, Inc., et al.,* Case No. 11-CV-2039 JAH NLS
PLAINTIFF SALVATORE GALLUCCI'S OPPOSITION TO DEFENDANT BOIRON USA, INC.'S MOTION TO
DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Federal Rule of Civil Procedure 8(a) ......................................................................... 4

Federal Rule of Civil Procedure 9(b) .......................................................... 1, 12, 17, 18

Federal Rule of Civil Procedure 12(b) ....................................................................... 4

Federal Rule of Civil Procedure 12(b)(6) .................................................... 1, 12, 17, 18

**CALIFORNIA STATUTES**

18 Cal. Adm. Code Reg. §§ 23501-23504 ................................................................. 8

Cal. Civ. Proc. Code § 410.10 .................................................................................. 5

**TREATISES**

REST. (3D) – AGENCY, § 1.01, cmt. c ........................................................................ 9

*Gallucci v. Boiron, Inc., et al.,* Case No. 11-CV-2039 JAH NLS
PLAINTIFF SALVATORE GALLUCCI'S OPPOSITION TO DEFENDANT BOIRON USA, INC.'S MOTION TO
DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

## I.   SUMMARY OF ARGUMENT

Plaintiff Salvatore Gallucci filed his complaint, a putative class action, on September 2, 2011 against defendants Boiron USA, Inc. ("Boiron USA") and Boiron, Inc. with respect to a dietary supplement that Boiron manufactures called Oscillococcinum® and Children's Oscillococcinum ("Oscillo").  Dkt. 1, ¶¶ 1-3.  Plaintiff's theories of liability are that the labels of the Oscillo packages are false and misleading, in violation of the Unfair Competition Law, Consumer Legal Remedies Act, express warranty, and implied warranty of merchantability.  Dkt. 1, ¶¶ 3-61.

The complaint alleges that Boiron USA and Boiron, Inc. are Pennsylvania companies that jointly advertise Oscillo via a web site entitled www.oscillo.com; market and sell Oscillo to the U.S. market through the Oscillo package and web site representations; distribute and sell Oscillo in identified stores within the forum district; and that plaintiff is a California resident who read, believed, and relied upon the statements on the Oscillo web site and Oscillo packages, purchased within the forum, all to his detriment.  Dkt. 1, ¶¶ 1-3, 7, 8, 10-13, 31-60, and nn. 2, 4.  These facts, if taken as true, plus all reasonable inferences from the facts, sufficiently allege personal jurisdiction in the forum over Boiron USA.

Defendant Boiron USA contends that this Court lacks personal jurisdiction over it because Boiron USA is merely a holding company for Boiron, Inc., and Boiron USA does not manufacture, distribute, or sell any products in California or elsewhere in the United States.  Dkt. 11-1 at 5:23-27.  Boiron USA also moves to dismiss, in the alternative, for failure to plead with particularity and failure to state a claim, invoking Federal Rules of Civil Procedure 9(b) and 12(b)(6).  *Id.* at 2:8-11.

Plaintiff alleges that even if Boiron USA does not manufacture, distribute or sell any products in the forum, the Court can exert personal jurisdiction over Boiron USA based on attributing Boiron, Inc.'s intentional acts (manufacturing, advertising and selling Oscillo) to Boiron USA.  *See Bauman v. DaimlerChrysler, Corp.*, No. 07-15386, 2001 WL 1879210, *6576-6580 (9th Cir. May 18, 2011); *Doe I. v. Unocal Corp.*, 248 F.3d 915, 925-926 (9th Cir.

1

2001).  The facts show that the purpose, location, and corporate management of Boiron USA and Boiron, Inc. are so deeply intertwined that Boiron, Inc. is merely the agent or alter ego of Boiron USA.  *See id.*  As such, Boiron, Inc.'s minimum contacts in California should be imputed to Boiron USA.  *See id.*

Plaintiff requests that the Court deny Boiron USA's motion to dismiss for lack of jurisdiction.  In the alternative, plaintiff requests that the Court grant jurisdictional discovery to plaintiff before ruling on this motion and hold an evidentiary hearing; or grant plaintiff leave to amend his complaint so he may include jurisdictional facts obtained through discovery.

## II.   THE UNDERLYING FACTS REGARDING THE PARTIES

Boiron® is a registered trademark.  Dkt. 1, pp. 7-8 (showing pictures of Oscillococcinum® packaging).  Oscillo® is a trademarked product that is owned, manufactured, marketed, and sold by Boiron®.  *Id.*; Borion 2010 Operating Report ("Operating Report"), p. 29 at the Declaration of Ronald A. Marron In Support of Plaintiff Salvatore Gallucci's Opposition to Defendant Boiron USA, Inc.'s Motion to Dismiss Plaintiff's Complaint[1]; Oscillo.com web page (demonstrating that Boiron has also trademarked the phrase "feeling a bit off") (last visited Oct. 17, 2011), at Exh. 4.

Boiron began its homeopathic drug business in France in 1932, founded by two brothers with the surname Boiron.  Exh. 1, p. 3.  Since then, Boiron has expanded worldwide, with a "family of companies" in many nations, most of which are run by an entity named with a country designation, such as Boiron Spain, Boiron Brazil, Boiron Portugal, etc.  *Id.*; Boiron Organization Chart, at Exh. 2; Dkt. 11-2 at 1:26-27.  In North America, the Boiron family of companies achieves its goal of marketing and selling homeopathic drugs through "three players:  Boiron USA, Boiron Canada, and Unda, the group's Belgian subsidiary" that exports to both.  Exh. 1, p. 29.

---

[1]  All references to Exhibits ("Exh.") refer to exhibits attached to the Marron Declaration, concurrently filed and served herewith.

*Gallucci v. Boiron, Inc., et al.,* Case No. 11-CV-2039 JAH NLS
PLAINTIFF SALVATORE GALLUCCI'S OPPOSITION TO DEFENDANT BOIRON USA, INC.'S MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1    Boiron entered the United States in 1983 to expand its business through the purchase of

2  an existing homeopathic drug company called John A. Borneman & Sons, Inc.  BoironUSA.com

3  Overview (last visited Oct. 2, 2011), at Exh. 3.  To the best of plaintiff's information and belief,

4  for some time after the purchase, the company was called Boiron-Borneman, Inc.  *See Sampson*

5  *v. Boiron-Borneman Inc*., Case No. 5:95-cv-20535-JW (filed Sept. 1995 in Santa Clara Superior

6  Court; removed by defendant Boiron-Borneman, Inc. to U.S. Dist. Court in N.D. Cal.; apparently

7  a SEC matter); *Standard Homeopathic v. Boiron-Borneman, Inc., Boiron, Inc., Boiron USA, and*

8  *Boiron*, Case No. 2:95-cv-01196-JP (filed in March 1995 in U.S. Dist. Court for E.D. of Penn.; a

9  trademark infringement matter).  Boiron-Borneman, Inc. may still exist.  Exh. 1, p. 39 (stating

10  "Boiron, Inc. Consolide hold 100% of Boiron-Borneman, Inc.").

11    Defendants assert through their web site that the newly formed American company is

12  "commonly referred to as Boiron USA."  Exh. 3.  Throughout Boiron's literature, the United

13  States side of its business has always been referred to as Boiron USA, and not Boiron, Inc.  *Id.*;

14  Exh. 1 (denoting Boiron, Inc. only in a few places); Exh. 4, Oscillo.com web page (as referenced

15  in Dkt. 1, p. 3-4, nn. 2 and 4).  Boiron USA's corporate headquarters in the U.S. originated in

16  Pennsylvania, and have remained there ever since.  *See* Exh. 3.  Boiron USA is incorporated in

17  Delaware, but has its corporate headquarters in Pennsylvania.  Dkt. 11-1, 2:14-15; Dkt. 11-2, ¶¶

18  4-5; *see* Dkt. 1, ¶ 8.  Boiron, Inc.'s corporate headquarters are in Pennsylvania.  *See* Dkt. 1, ¶ 8.

19    In 1993, Boiron USA moved to new corporate headquarters in Newtown Square,

20  Pennsylvania.  Exh. 3.  The new headquarters not only houses corporate personnel but also

21  includes manufacturing, order fulfillment, storage, and research and development of new

22  homeopathic drugs.  *Id.*  If customers want to return any Boiron product, the Boiron USA web

23  site instructs them to send it to the Newtown Square headquarters.  Exh. 5.

24    In 1995, Thierry Boiron came to Newtown Square, Pennsylvania from France and

25  became "Boiron USA's third president."  Exh. 3.  Thierry Boiron remained President of Boiron

26  USA until 2006, when Ludovic Rassat took over.  *Id.*  Thierry Boiron is a high-ranking corporate

27  officer of the "Boiron Group," an entity that directs and funds all the Boiron country companies,

28

3

1   including Boiron USA.  Exh. 1, pp. 3, 4, 40; *see also* Dkt. 11-2, 1:26-27 (referring to the "Boiron

2   family of companies").  Thierry Boiron is also the "Director and Deputy Chairman of Boiron

3   USA, Inc. and Boiron, Inc."  Exh. 1, p. 40.  Christian Boiron, who is Director and Chairman of

4   the Board of the Boiron Group, is the "Director and Chairman of Boiron USA, Inc. and Boiron,

5   Inc."  *Id.*

6                                    **III.   STANDARD OF REVIEW**

7           In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b), the court

8   must accept all factual allegations of the complaint as true, "draw inferences from those

9   allegations in the light most favorable to the plaintiff," and "construe the complaint liberally."

10  *Kidd v. Ashcroft,* 580 F.3d 949, 956 (9th Cir. 2009).  A complaint need not contain facts alleging

11  personal jurisdiction, as lack of personal jurisdiction is an affirmative defense.  Fed.R.Civ.P.

12  8(a); *Purdue Research Foundation v. Sanofi-Synthelabo, S.A.,* 338 F.3d 773, 781-82 (8th Cir.

13  2003).

14          Generally, a Rule 12(b)(2) motion only tests the sufficiency of the complaint, and the

15  court "cannot consider material outside the complaint," such as affidavits, facts recited in briefs,

16  and discovery materials.  *Paulsen v. CNF, Inc.,* 391 F. Supp. 2d 804, 807 (N.D. Cal. 2005).  But

17  when a defendant factually challenges personal jurisdiction through submission of extrinsic

18  evidence, such as an affidavit, the plaintiff is required to go beyond the pleadings and submit its

19  own affirmative evidence, supporting jurisdiction.  *Purdue,* 338 F.3d at 782-83 (stating that the

20  extrinsic evidence rule is a national precedent).

21          A district court has discretion to hold an evidentiary hearing on the issue of personal

22  jurisdiction before ruling on a motion to dismiss.  *Doe I. v. Unocal Corp.*, 248 F.3d 915, 922 (9th

23  Cir. 2001) (internal citations omitted).  If the court decides not to hold an evidentiary hearing, the

24  plaintiff opposing a jurisdictional motion need only set forth a "prima facie showing of

25  jurisdictional facts" to prevail.  *Id.*  The court may also "order discovery on the jurisdictional

26  issues."  *Id.*  Granting jurisdictional discovery is particularly appropriate when a corporate

27  defendant contends that it is not doing business within the forum.  *Massachusetts School of Law*

28

4

*Gallucci v. Boiron, Inc., et al.,* Case No. 11-CV-2039 JAH NLS
PLAINTIFF SALVATORE GALLUCCI'S OPPOSITION TO DEFENDANT BOIRON USA, INC.'S MOTION TO
DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1  *at Andover, Inc. v. American Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997); *Metcalfe v.*

2  *Renaissance Marine, Inc.*, 566 F.3d 324, 336 (3d Cir. 2009).

3         Finally, the court may stay its pretrial ruling on jurisdiction when faced with a fact-

4  intensive inquiry that may require findings that touch upon the merits of plaintiff's claims.  *Data*

5  *Disc, Inc. v. Systems Tech. Assoc., Inc.*, 557 F.2d 1280 (9th Cir. 1977).

6            **IV.   THIS COURT'S EXERCISE OF PERSONAL JURISDICTION OVER**

7                  **DEFENDANT BOIRON USA DOES NOT VIOLATE DUE PROCESS**

8         Personal jurisdiction exists over any defendant "who could be subjected to the

9  jurisdiction of a court of general jurisdiction in the state in which the district court is

10 located."  Fed.R.Civ.P. 4(k)(1)(A).  A motion to dismiss for lack of personal jurisdiction requires

11 an two-part analysis of (A) the forum state's long-arm statute and (B) whether the exercise of

12 jurisdiction would comply with due process requirements of "fair play and substantial justice"

13 based upon the defendant's "minimum contacts" with the forum state.  *Internat'l Shoe Co. v.*

14 *State of Wash.*, 326 U.S. 310, 316 (1945).

15 **A.     California's Long-Arm Statute Permits the Broad Exercise of Personal Jurisdiction**

16        In the absence of a federal statute governing personal jurisdiction, the court should apply

17 "the law of the state in which the district court sits."  *Harris Rutsky & Co. Ins. Svcs. v. Bell &*

18 *Clements*, 328 F.3d 1122, 1129 (9th Cir. 2003).  There is no federal statute covering personal

19 jurisdiction in this case, so the Court should apply California law.  *Id.*

20        California's long-arm statute is broad, permitting the district court to exercise personal

21 jurisdiction over nonresident defendants to the limits of the Due Process clause of the state and

22 federal Constitutions.  Cal. Civ. Proc. Code § 410.10.  Boiron USA received service of process

23 through personal service on Boiron, Inc.'s registered agent in Simi Valley, California, and is

24 apprised of the existence of plaintiff's complaint.  *See* Fed.R.Civ.P. 4(k)(1)(A); Dkt. 3.  Thus, the

25 only inquiry is whether the exercise of in personam jurisdiction meets due process.  Generally,

26 due process is satisfied if the defendant could "reasonably anticipate" that its deliberate,

27

28

*Gallucci v. Boiron, Inc., et al.,* Case No. 11-CV-2039 JAH NLS
PLAINTIFF SALVATORE GALLUCCI'S OPPOSITION TO DEFENDANT BOIRON USA, INC.'S MOTION TO
DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1   minimum contacts with the forum state could result in it being haled to the forum to answer for

2   its conduct.  *Burger King v. Rudzewicz*, 471 U.S. 462, 475-76 (1985).

3   **B.      The Court Should Conduct a Threshold Analysis of the Relationship Between**

4   **Boiron USA and Boiron, Inc. to Determine if Agency or Alter Ego Theories Apply**

5          In cases where minimum contacts could depend on the relationship between a parent

6   corporation and its subsidiary, the court should first analyze whether it is appropriate to attribute

7   the subsidiary's contacts with the forum to the parent corporation.  *Doe I.*, 248 F.3d at 925.

8   There are two ways to attribute the forum-related conduct of a subsidiary to a parent corporation:

9   alter ego theory and agency theory.  *Id. at* 926.  The two tests are separate and distinct.  *Bauman*,

10  2011 WL 1879210, *6576 (reversing grant of motion to dismiss by district court in the absence

11  of an evidentiary hearing because sufficient facts were alleged, that if true, supported general

12  personal jurisdiction over foreign defendant) (citing *Doe I. v. Unocal Corp.*).

13          1.    *Boiron, Inc.'s forum-related activities should be imputed to Boiron USA under*

14                *agency theory.*

15          Agency theory looks to "whether, in the truest sense, the subsidiaries' presence

16  substitutes for the presence of the parent."  *Doe I.,* 248 F.3d at 928-929 (internal quotation

17  omitted).  It is permissible to impute the subsidiary's forum contacts to the parent corporation

18  "where the subsidiary was either established for, or is engaged in, activities that, but for the

19  existence of the subsidiary, the parent would have to undertake itself."  *Id.* at 928 (internal

20  quotation omitted).  This renders the subsidiary merely an "incorporated department of its

21  parent."  *Id.*

22          The Ninth Circuit recently clarified the test for agency theory in *Bauman v.*

23  *DaimlerChrysler, Corp.*, where the court held that only two requirements are needed:  (i) the

24  subsidiary performs services of "special importance" to the parent corporation, and (ii) there is

25  "an element of control" by parent over subsidiary, but not the same degree of control as required

26  for the alter ego test.  2011 WL 1879210, *6576-6577 and n.12.  Rather, the parent need only

27  have the "right to control" the subsidiary.  *Id.* at *6577.  If both elements are present, the

28

6

1    subsidiary is the agent of the parent, and a court can impose general in personam jurisdiction

2    over the foreign defendant, by attributing the in-forum subsidiary's "presence," and substantial

3    and continuous contacts to the parent.  *Id.* at *6578.

          (i)      Services of Special Importance

5          Boiron, Inc.'s "presence [in California and in the U.S.] substitutes for the presence of"

6    Boiron USA within the meaning of the agency test, meaning this Court can attribute general

7    personal jurisdiction over Boiron USA.  *See id.; Doe I.,* 248 F.3d at 930.  First, Boiron, Inc.

8    performs "services of special importance" for Boiron USA because Boiron USA only has one

9    subsidiary.  *Bauman,* 2011 WL 1879210 at *6578-6580 (starting its analysis by noting that the

10   parent corporation only had one representative in the U.S.)  Even if a parent corporation replaces

11   its sole subsidiary with an independent contractor, the parent would still only have one

12   representative.  *Id.*  Without the representative, the parent would have to perform the subsidiary's

13   services, making the subsidiary's services of special importance to the parent.  *Id.*

14         The marketing, manufacture, and sale of Oscillo in the United States requires specially

15   important services by Boiron, Inc.  *See id.; Doe I.*, 248 F.3d at 930.  To sell any OTC drug in the

16   United States, the manufacturer must register with the FDA and have a registered agent in the

17   United States.  21 U.S.C. §§ 360(b), (c), (d), (i) (enacted 1972); 21 C.F.R. §§ 207.3, .20, .25, and

18   .40(a), (c)(1)-(2) (enacted 2001) (the latter subd. stating that foreign companies, such as Boiron

19   Group, must have a designated U.S. agent with its place of business in the U.S.).  If Boiron, Inc.

20   did not register with the FDA and stand as the U.S. agent for Oscillo in the United States, then

21   Boiron USA would have to register.[2]  *Id.; see Bauman*, 2011 WL 1879210 at *6578-6580; *Doe*

22   *I.*, 248 F.3d at 928.

23

24   [2] A review of the FDA web site indicates that the Oscillo products at issue in this case were
     registered with the FDA by manufacturer Laboratories Boiron (presumably a foreign entity).

25   Exh. 7.  To comply with other FDCA rules, Boiron still needs to have a designated U.S. agent
     that is based in the United States.  21 U.S.C. §§ 360(b), (c), (d), (i) (enacted 1972); 21 C.F.R. §§

26   207.3, .20, .25, and .40(a), (c)(1)-(2) (enacted 2001).  But for Boiron, Inc. serving as Oscillo's
     U.S. agent with the FDA, Boiron USA would have to register as agent itself (and easily could do

27   so because Boiron USA is a Delaware corporation).  Dkt. 11-2, ¶¶ 4-5.

28

*Gallucci v. Boiron, Inc., et al.,* Case No. 11-CV-2039 JAH NLS
PLAINTIFF SALVATORE GALLUCCI'S OPPOSITION TO DEFENDANT BOIRON USA, INC.'S MOTION TO
DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1   Further, Oscillo® is a proprietary product, owned by Boiron, and sold under the Boiron®

2   trademark.  *See* Dkt. 1, pp. 7-8; Exh. 4.  The reasonable inference from the trademark facts is that

3   Boiron does not allow other companies to manufacture its product in the United States.  *See id.*

4   If Boiron, Inc. did not manufacture, distribute, advertise, and sell Oscillo in the United States,

5   then Boiron USA would have to undertake these activities itself.  *See Bauman*, 2011 WL

6   1879210 at *6578-6580; *Doe I.*, 248 F.3d at 928.

7   As to activities within the forum state, Boiron, Inc. is licensed to do business in

8   California.  Dkt. 11-1, 2:18-21.  If Boiron, Inc. did not obtain a business license and tax ID in

9   California, then Boiron USA would have to do so itself in order to market and sell Oscillo within

10   the forum state.  *See, e.g.,* 18 Cal. Adm. Code Reg. §§ 23501-23504 (tax laws impacting foreign

11   companies doing business in California, as one example).

12   Even if the Court accepts as true the contention that Boiron USA's sole purpose is

13   investment, Boiron USA could not achieve its investment purpose in the U.S. without Boiron,

14   Inc.'s special services of manufacturing, advertising, and selling Boiron® products.  *See Doe I.*,

15   248 F.3d at 928; *Bauman*, 2011 WL 1879210 at *6578-6580.  Aside from its own proprietary

16   and nonproprietary products, Boiron, Inc. does not manufacture, advertise or sell other

17   companies' products.  *See* Exh. 3.  Boiron USA also does not invest in other homeopathic

18   businesses – only Boiron, Inc.  *See id.; Bauman*, 2011 WL 1879210 at *6578-6580; *Doe I.,* 248

19   F.3d at 930; Exh. 1, pp 3-4, 29, 39, 40.

20   Like the defendants in *Unocal*, the Boiron family of companies is a "super-corporation"

21   or multinational homeopathic company with extensive business interests in countries around the

22   world.  *See Doe I.,* 248 F.3d. at 929; Exh. 1, pp. 3-4.  Plaintiff's facts are distinguishable,

23   however, from the finding in *Doe I. v. Unocal* because those defendants owned many

24   subsidiaries in the United States and plaintiffs were only attempting to impose agency theory on

25   two of the subsidiaries.  248 F.3d at 929.  Here, Boiron, Inc. is Boiron USA's <u>only</u> United States

26   subsidiary, suggesting that this factual difference would support at least specific personal

27   jurisdiction under *Unocal*, and probably general personal jurisdiction under *Bauman*'s clarified

28

*Gallucci v. Boiron, Inc., et al.,* Case No. 11-CV-2039 JAH NLS
PLAINTIFF SALVATORE GALLUCCI'S OPPOSITION TO DEFENDANT BOIRON USA, INC.'S MOTION TO
DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1   test for agency theory.  *See id; Bauman*, 2011 WL 1879210 at *6578-6580; Dkt. 11-1, 2:5-6 and

2   18-19; Dkt. 11-2, ¶¶ 7, 9; Exh. 3 (stating that Boiron USA's sole operational subsidiary is

3   located within California and has been since 1989).

4                    (ii)    Right to Control

5           Over the years, the two separate tests for agency theory and alter ego theory have become

6   mixed together, in error.  *Bauman*, 2011 WL 1879210 at *6580.  This has resulted in the

7   "control" element from alter ego theory taking a greater role in agency theory than it was ever

8   meant to.  *Id.*  The primary test for agency theory is whether the representative performs

9   sufficiently important services.  *Id.* at *6578.  The principal's amount of control over the

10  subsidiary need not be as substantial in degree for agency theory to apply, than it needs to be for

11  alter ego theory to apply.  *Id.* at *6580, *6581 (citing REST. (3D) – AGENCY, § 1.01, cmt. c).  As

12  with agency theory in general, only the "right to control" need be present, and arises out of the

13  principal and agent manifesting their assent to that control arrangement.  *Id.* at *6581.  The fact

14  that the principal never exercises its right does not eliminate the principal-agency relationship.

15  *Id.* The facts of this case support the reasonable inference that Boiron USA has the right to

16  control Boiron, Inc.

17          Aside from its own proprietary and nonproprietary products, Boiron, Inc. does not

18  manufacture, advertise or sell other companies' products.  *See* Exh. 3.  Boiron USA also does not

19  invest in other homeopathic businesses – only Boiron, Inc.  *See Bauman*, 2011 WL 1879210 at

20  *6581; *Doe I.,* 248 F.3d at 930; Exh. 1, pp 3-4, 29, 39, 40.  This makes Boiron, Inc., at most, an

21  exclusive distributor or agent of Boiron USA, and opens the door to the strong possibility that

22  Boiron USA has the right of control over Boiron, Inc., if not actual control.

23          Boiron USA only holds stock in one company, and holds all the stock of that company –

24  Boiron, Inc., also suggesting that the right to control exists.  *See* Dkt. 11-2, ¶¶ 7 and 9.  While it

25  is true that 100% ownership of a subsidiary, alone, is not sufficient to impute the contacts of the

26  subsidiary to the parent, the Ninth District has held that it is error to find agency theory or alter

27  ego theory are inapplicable before allowing plaintiff an opportunity to engage in jurisdictional

28

discovery.  *Harris Rutsky & Co.,* 328 F.3d at 1135 (remanding trial court's order granting a motion to dismiss, and ordering the court to permit fact-finding on issue of personal jurisdiction).

Further evidence of the right to control arises from the fact that Boiron, Inc. and Boiron USA share the same senior corporate officers (Thierry and Christian Boiron).  *See id.*; Exh. 1, p. 40; Exh. 3.  Plaintiff should be allowed to investigate whether Thierry and Christian Boiron's involvement with Boiron, Inc. is consistent with Boiron USA's status as an investor, or more consistent with its status as Boiron, Inc.'s principal.  *Harris Rutsky & Co.,* 328 F.3d at 1135.

Boiron USA and Boiron, Inc. also might share facilities and staff in Pennsylvania.  *See* Dkt. 11-2, ¶ 5 (stating Boiron USA has their headquarters in Pennsylvania but without providing an address); Exh. 3 (showing that the Newtown Square, Pennsylvania is where dissatisfied purchasers of Oscillo should return the product).  Plaintiff is unaware of the internal policies or structure of both companies, but where "subsidiaries are created by the parent, for tax or corporate finance purposes," the court may disregard the separate corporate existence of the subsidiary and find that agency theory applies.  *Doe I.*, 248 F.3d at 929 (internal citation omitted).  All of the facts plaintiff has obtained to date, just from public sources, raise the inference that Boiron USA may have the right to control Boiron, Inc.

Aside from Mr. Rassat's declaration, defendant produced no factual evidence of the relationship between Boiron USA and Boiron, Inc., such as corporate charters, memorandum of understanding or similar, to disprove agency theory applies to this case.  *See* Dkt. 11-2; Dkt. 11-1, 6:9-10 (devoting most of its brief to individual personal jurisdiction and not imputed personal jurisdiction).  At a minimum, the Court should not rule on defendant's motion until plaintiff has been given the opportunity for discovery on the relevant jurisdictional facts.  *See Harris Rutsky & Co.,* 328 F.3d at 1135.

> 2.   *Boiron, Inc.'s forum-related activities should be imputed to Boiron USA under alter ego theory because there is such a unity of interest between the two companies that it would work a fraud and injustice not to disregard the separate personalities of the two corporations and regard them as one.*

1    *Bauman* sets out the two-part test the Court should follow in its analysis of alter ego

2    theory:  (i) whether the parent and subsidiary have such a unity of interest, ownership, and goals,

3    (ii) demonstrated by the parent company's right to control the subsidiary, that (iii) it would result

4    in fraud or injustice not to disregard the separate corporate identities.  2011 WL 1879210 at

5    *6576; *see also Doe I.*, 248 F.3d at 926, 928.  Factual considerations include whether the parent

6    uses the subsidiary "as a marketing conduit," in an attempt to "shield itself from liability based

7    on its subsidiaries' activities."  *Doe I.,* 248 F.3d at 928.  In California, mere fact of

8    undercapitalization is sufficient to pierce the corporate veil and attribute the conduct of the

9    subsidiary to the parent corporation.  *Id.* at 927.  Other facts supporting alter ego theory are

10   failure to observe corporate formalities, such as the parent providing the subsidiary with "interest

11   free loans without . . . documenting those loans with promissory notes."  *Id.*

12                    (i)      Unity of Interest, Ownership, and Goals

13   Thierry Boiron was the third president of "Boiron USA", from 1995 to 2006, just prior to

14   Ludovic Rassat.  Exh. 3.  Thierry Boiron is a high-ranking corporate officer of the "Boiron

15   Group" in France.  Exh. 1, pp. 3 and 40.  More importantly, Thierry Boiron is currently the

16   "Director and Deputy Chairman of Boiron USA, Inc. **and** Boiron, Inc.  Exh. 1, p. 40.  Christian

17   Boiron, who is Director and Chairman of the Board over the entire family enterprise, is also

18   listed as "Director and Chairman of Boiron USA, Inc. **and** Boiron, Inc."  *Id.*  The reasonable

19   inference from this unity of ownership is that Boiron, Inc. is just an alter ego of Boiron USA.

20   *See Doe I.*, 248 F.3d at 928.

21   According to its United States web site, "Boiron USA" constructed new headquarters and

22   manufacturing facilities in 1993 in Newtown Square, Pennsylvania.  *See* Exh. 3:

23          Boiron invested in the construction of a new building and moved from the original
            Borneman site in Norwood to neighboring Newtown Square, Pennsylvania.  The building
24          continues to service as *both the Boiron USA headquarters as well as the manufacturing
            and distribution branch for the East Coast*.  The facility houses a high-tech
25          manufacturing laboratory, an innovative order fulfillment center, and spacious warehouse
            and automated shipping operations.  *Id.*, emphasis added (last viewed Oct. 2, 2011).
26

27

28
                                              11

1    Any United States consumer wishing to return Boiron's products (including Oscillo, except for

2    its 30-dose package) is instructed to return the product to:  "6 Campus Boulevard, Newtown

3    Square, Pennsylvania 19073."  Exh. 5.  Plaintiff is unaware whether Boiron USA's Pennsylvania

4    headquarters are also at 6 Campus Boulevard.  The omission of this information from

5    defendant's moving papers creates an inference that it might be.  *See* Dkt. 11-1 and 11-2.

6    Plaintiff is also unaware whether Boiron USA and Boiron, Inc. have shared offices in the past.

7          The facts tend to show that Boiron USA is inextricably intertwined with the

8    manufacturing, storage, distribution, shipping and return of Oscillo® because, from all

9    appearances, the same place where Boiron makes and sells its drugs is *the same place as* the

10   corporate headquarters of Boiron USA and Boiron, Inc.  *See* Exh. 3; Dkt. 11-2, 2:1; Dkt. 11-1 at

11   2:14-15.

12         It also appears that the very purpose of Boiron, Inc. is to further the interests of Boiron

13   USA – to profit from sales of Boiron® trademarked homeopathic products, including Oscillo®,

14   and to shield Boiron USA from any liability for that conduct.  *See* Exhs. 1, 2, 3, 4, 6.  Even if

15   these facts and inferences do not support the application of alter ego theory, which plaintiff

16   alleges they do, jurisdictional discovery is highly likely to reveal additional evidence about the

17   two companies' unity of interest, ownership, and goals.  *See Harris Rutsky & Co.,* 328 F.3d at

18   1135.

19              (ii)    <u>Control</u>

20         The facts surrounding Boiron's internal operations are not public knowledge.  Without

21   jurisdictional discovery, plaintiff would be prevented from alleging additional facts that are

22   solely within the custody and control of defendants, and that were not even produced in

23   defendant's motion to dismiss.  For example, defendant attaches the affidavit of Ludovic Rassat

24   to its motion, which vaguely states that "Boiron USA is headquartered in Pennsylvania."  Dkt.

25   11-2, 2:1; *see also* Dkt. 11-1 at 2:14-15.  <u>No address in Pennsylvania is provided to support the</u>

26   <u>claim that Boiron USA has a completely separate existence from Boiron, Inc.</u>  *Id.*

27

28

12

*Gallucci v. Boiron, Inc., et al.,* Case No. 11-CV-2039 JAH NLS
PLAINTIFF SALVATORE GALLUCCI'S OPPOSITION TO DEFENDANT BOIRON USA, INC.'S MOTION TO
DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1    Defendant also did not provide the dates of corporate formation as to each entity,

2    including the role Boiron-Borneman, Inc. plays, if any.  Dkt. 11-1 and 11-2.  Defendant did not

3    identify any persons on the Board of Directors of Boiron USA and Boiron, Inc., at all.  *Id.*

4    Plaintiff should be entitled to discover who – other than Thierry and Christian Boiron – serve on

5    these boards, and the names of all corporate officers and directors, present and past.  *See* Exh. 1,

6    p. 40.  Plaintiff should also be allowed to discover the permissible activities of the boards of both

7    companies, per their corporate charters.  *See Harris Rutsky & Co.,* 328 F.3d at 1135.

8    Plaintiff is entitled to investigate all relevant facts that would tend to show that Boiron

9    USA does not now, nor has it ever, exerted control over or used the subsidiary as a marketing

10   conduit (such as providing shared facilities, shared personnel, interest free loans, conducting

11   advertising, or campaigning politically on behalf of the subsidiary, etc.)  *See id.*  Defendant's

12   motion and its attached affidavit consist primarily of legal conclusions.  *See* Dkts. 11-1 and 11-2.

13   Since filing his complaint, plaintiff's attorneys have discovered other facts that

14   demonstrate the distinction between the two companies is blurred.  In Boiron's Organizational

15   Chart, one subsidiary is listed for Boiron USA – Boiron, Inc.  Exh. 2.  But, subsidiaries in other

16   countries are designated with asterisks when those companies are subject to "holding

17   companies."  *Id.*  Boiron USA is not designated with an asterisk.  *Id.*  A reasonable inference is

18   that Boiron USA is not truly a holding company, but rather that Boiron USA is the alter ego of

19   Boiron, Inc.  *See Doe I.*, 248 F.3d at 928.  Plaintiff should be permitted to inquire about the

20   unusual designation prior to any ruling on personal jurisdiction.

21                  (iii)    Fraud or Injustice

22   Alter ego theory also requires the court to consider whether it would "result in fraud or

23   injustice" not to regard the parent corporation and subsidiary as one entity.  *Id.* at 926.  The facts

24   stated in this opposition support a colorable claim that the corporate form of Boiron, Inc. should

25   be disregarded because it is merely a shield to protect Boiron USA from being liable for any

26   sales of Boiron® homeopathic products in the United States.  *See id.* at 928.  Also, fraud and

27   injustice would result from a pre-discovery ruling that Boiron, Inc. is not the alter ego of Boiron

28

1   USA because many of the relevant facts are solely within Boiron USA's custody and control.

2   *E.g., Harris Rutsky & Co.,* 328 F.3d at 1135.

3   **C.    This Court has General In Personam Jurisdiction Over Boiron, Inc. and Can**

4         **Impute the Subsidiary's Ongoing and Substantial Contacts with the Forum to**

5         **Boiron USA**

6         A forum court may assert general jurisdiction when a defendant's contacts within the

7   forum state are "substantial, continuous and systematic."  *Perkins v. Benguet Consolid. Mining*

8   *Co.,* 342 U.S. 437, 446 (1952).  If general jurisdiction exists, the nonresident may be haled to

9   appear in the forum for any of its conduct, even if the suit is not related to the defendant's

10  contact with the forum state.  *Id.*

11        The Ninth District recently clarified the test for applying agency theory for purposes of

12  general in personam jurisdiction.  *Bauman*, 2011 WL 1879210 at *6578-6581.  Even though

13  *Bauman* concerned defendants in Argentina, a foreign defendant for purposes of a personal

14  jurisdiction analysis includes any nonresident of the state in which the district court sits.  *See*

15  Fed.R.Civ.Proc. 4(k)(1)(A).  Further, if general personal jurisdiction could exist over

16  Argentinian defendants (who had never conducted any activities at all within the forum state),

17  simply based upon the in-state conduct of their sole representative, then there is even greater

18  reason for apply general personal jurisdiction over a sister-state defendant such as Boiron USA.

19  *See Bauman,* at *6585 (beginning discussion of "reasonableness" test).

20        Boiron, Inc. does not challenge that this Court has general in personam jurisdiction over

21  it, even though Boiron, Inc. is headquartered in Pennsylvania and incorporated in California.  *See*

22  Dkt. 11-1.  Boiron, Inc. is subject to general jurisdiction in California because it opened a branch

23  in the state in 1989, built a large facility to manufacture its products in Simi Valley in 2005, and

24  has a registered agent for service of process in the state.  *Id.*; Exh. 3.  This constitutes substantial,

25  continuous and systematic contact with California.  *See Perkins v. Benguet Consolid. Mining*

26  *Co.,* 342 U.S. 437, 446 (1952).  The California registered agent of Boiron, Inc. was served with

27  process on behalf of both defendants. Dkt. 2 and 3.  If this Court determines agency theory

28

14

1  applies, then existing case law permits this Court to exercise general personal jurisdiction over

2  Boiron USA as well as Boiron, Inc.  *See Bauman*, 2011 WL 1879210 at *6578-6581.

3  **D.  Specific In Personam Jurisdiction Exists Over Boiron, Inc. and Should be Imputed**

4  **to Boiron USA**

5      A court acquires specific jurisdiction over a nonresident when the nonresident's forum-

6  related activities give rise to the cause of action before the court.  *Hanson v. Denckla*, 357 U.S.

7  235, 250-253 (1958).  "Even a single contact" can support specific in personam jurisdiction,

8  including a "foreign act having an effect in the forum state."  *Kramer Motors, Inc. v. British*

9  *Leyland, Ltd.*, 628 F.2d 1175, 1178 (9th Cir. 1980) (citing *McGee v. International Life Ins. Co.*,

10  355 U.S. 220 (1957)).

11     California applies a three part test for specific jurisdiction: "(1) the nonresident defendant

12  must purposefully direct [its] activities or consummate some transaction with the forum or

13  resident thereof, *or* perform some act" purposefully availing itself of privileges and benefits of

14  the forum; (2) the claim must has arise out of or relate to those forum-related activities; and (3)

15  exercise of jurisdiction "must be reasonable."  *Harris Rutsky & Co.,* 328 F.3d at 1129 (internal

16  citations omitted).  *See also Kulko v. Superior Court*, 436 U.S. 84, 93-94 (1978);

17  *Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 802-803 (9th Cir. 2004) (stating that

18  California law looks to the purposeful direction test, focusing on the effects of the nonresident's

19  activities, for tort claims).

20          1.    *Boiron, Inc. purposefully availed itself of, and purposeful directed its activities to,*

21                *the California medical community and all California consumers*

22     Boiron, Inc. purposefully availed itself of the benefits of the California consumer market,

23  employing outreach strategies from its Simi Valley, California branch, to network with

24  California doctors in the hopes of tapping into this state's large market of consumers.  Exh. 3.

25  Boiron, Inc. recently targeted Hollywood, California, by giving out free packages of Oscillo® at

26  the 62nd Emmy Awards show.  Exh. 6.  Boiron, Inc. and Boiron-Borneman, Inc. have both

27

28

*Gallucci v. Boiron, Inc., et al.,* Case No. 11-CV-2039 JAH NLS
PLAINTIFF SALVATORE GALLUCCI'S OPPOSITION TO DEFENDANT BOIRON USA, INC.'S MOTION TO
DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1    entered California state and federal courts to defend against various actions, seeking the

2    protections of California law.  See p. 2, *supra*.

3         Boiron employs "a national sales force" in the United States.  Exh. 3.  California

4    consumers can return Oscillo, or any of Boiron's products, to the Boiron headquarters in

5    Newtown Square, Pennsylvania for a refund.  Exh. 5.

6         The above conduct constitutes purposeful direction, intentionally done, to avail itself of

7    the benefits and protections of California and its consumers.  *See Harris Rutsky*, 328 F.3d at

8    1129.  It should be no surprise when a California resident buys Oscillo, finds out it does not work

9    as advertised, and files suit against Boiron in California.  *See id.*  This is true even if all of the

10   defendants' conduct occurred in Pennsylvania, but their sole or joint activities were purposefully

11   directed at attaining large sales within the lucrative California consumer market.  *See*

12   *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (setting forth

13   purposeful direction test).

14        2.    *This claim arises out of Boiron, Inc.'s forum-related activities*

15        California applies a "but for" test in analyzing the second element of specific personal

16   jurisdiction.  *Harris Rutsky & Co.*, 328 F.3d at 1131-32.  Plaintiff has alleged that he bought

17   Oscillo products at various stores in the San Diego, California area.  Dkt. 1, ¶ 5.  Boiron, Inc. has

18   not denied that it maintains a West Coast manufacturing and distribution plant in Simi Valley,

19   California.  *See* Dkt. 11-1; Exh. 3.  But for defendants' distributing Oscillo to these California

20   stores, where a California consumer could view the representations on the packages prior to

21   making a purchase, defendants would not have been enriched out of their Oscillo product

22   representations, and plaintiff would not have suffered monetary damage.  *See* Dkt. 1, ¶¶ 5, 7, 8,

23   10-13, 31-61.  The Oscillo web site can also be viewed by any California resident, and is

24   interactive, containing a link for where people can find stores that sell the Oscillo product.  Exh.

25   4 (where you can click on a store locator; learn more about Oscillo; watch a video; contact

26   Boiron; and share the web page with your friends by clicking on Twitter, Facebook, or e-mail

27

28

16

1   links).  Therefore, plaintiff's claim arises out of defendants' forum-related activities.  *See Harris*

2   *Rutsky & Co.,* 328 F.3d at 1135.

3       3.    *Exercise of personal jurisdiction in California is reasonable, and does not violate*
        *the notions of fair play and substantial justice.*

4

5       For the final element – reasonableness – the court should weigh the following factors:  (a)

6   the extent to which a defendant has purposefully availed itself of the forum; (b) the burden to

7   defendant of defending within the forum; (c) any conflict between the forum state's applicable

8   law and the law of defendant's resident state; (d) California's interest in adjudicating the issue;

9   (e) judicial efficiency in resolving the dispute; (f) plaintiff's interest in maintaining suit in a

10  convenient and effective forum; and (g) whether an alternate forum exists.  *Id.* at 1132 (stating

11  no one factor "is dispositive in itself").

12      The facts showing that Boiron, Inc. has extensively sought out the benefits and

13  protections of California are thoroughly set out above.  *See also* Exh. 3.  There is no burden to

14  defending in California because Boiron USA has a subsidiary close by, in Simi Valley,

15  California.  *Id.*  Boiron USA has retained local counsel that jointly represent it and Boiron, Inc.

16  Dkt. 11-1.

17      California has a substantial interest in assuring that its citizens are not spending their

18  money on worthless flu remedies because the ability to regulate on issues that concern the health

19  and consumer safety of its citizens is a historic police power.  *Altria Group, Inc. v. Good*, 129 S.

20  Ct. 538 (2008).  Defendants have not put forth any showing that the consumer protection laws of

21  Pennsylvania are superior to California, nor that there is a conflict between the laws of both

22  states.  *See* Dkt. 11-1.  Plaintiff lives within the forum and the forum is convenient for he and his

23  witnesses, and convenient for purposes of judicial economy.  *See* Dkt. 1, ¶¶ 1 and 29.

24      The Court should find that its exercise of personal jurisdiction over Boiron USA does not

25  violate notions of fair play and substantial justice, but is reasonable, based on all of the foregoing

26  facts.  *See Internat'l Shoe Co. v. State of Wash.,* 326 U.S. 310, 316 (1945); *Harris Rutsky & Co.*,

27  328 F.3d at 1132.

28

*Gallucci v. Boiron, Inc., et al.,* Case No. 11-CV-2039 JAH NLS
PLAINTIFF SALVATORE GALLUCCI'S OPPOSITION TO DEFENDANT BOIRON USA, INC.'S MOTION TO
DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

## V.   PLAINTIFF'S COMPLAINT STATES A PLAUSIBLE CLAIM FOR RELIEF AND IS PLED WITH PARTICULARITY, PER FEDERAL RULES OF CIVIL PROCEDURE 12(b)(6) AND 9(b), RESPECTIVELY

Boiron USA also moves to dismiss, in the alternative, for failure to plead with particularity and failure to state a claim, invoking Federal Rules of Civil Procedure 9(b) and 12(b)(6).  Dkt. 11-1 at 2:8-11.  In support of these motions, Boiron USA incorporates by reference Boiron, Inc.'s motion to dismiss and request for judicial notice.  *Id.*  Accordingly, plaintiff incorporates by reference herein his Opposition to <u>Boiron, Inc.</u>'s Motion to Dismiss on the Grounds of Federal Rules of Civil Procedure 12(b)(6) and 9(b), and his opposition to defendants' request for judicial notice contained therein.

## VI.   CONCLUSION

Plaintiff requests the Court deny defendant Boiron USA's motion to dismiss in its entirety.  The complaint alleges that defendants Boiron USA and Boiron, Inc. are "manufacturers and sellers" of the Oscillo product, and that both defendants have intentionally availed themselves of the benefits and protections of California laws and markets.  *See* Dkt. 1, ¶¶ 2, 6, 8, and 9.  Boiron USA has not countered plaintiff's jurisdictional allegations with any definitive, factual proof, other than to confirm that Boiron USA has its corporate headquarters somewhere in Pennsylvania, and is not engaged in any business but investing in Boiron, Inc.  *See* Dkt. 11-1 and 11-2.  The facts raised herein, plus all inferences from those facts, viewed in the light most favorable to plaintiff, support a denial of Boiron USA's motion to dismiss in its entirety.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

18

1

2          In the alternative, plaintiff requests jurisdictional discovery on the relationship between

3    the two defendants before the Court rules on the motion to dismiss.  Plaintiff also requests an

4    evidentiary hearing on the issue of personal jurisdiction after that discovery occurs.  As a second

5    alternative, plaintiff requests leave to amend his complaint to include these and other

6    discoverable facts on the issue of personal jurisdiction over defendant Boiron USA, after the

7    jurisdictional discovery takes place.

8    Dated:  November 7, 2011                    Respectfully Submitted,

9                                                          /s/ Ronald A. Marron

10                                                         Ronald A. Marron
                                                           *Counsel for Plaintiff & the Proposed Class*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28