1  **LAW OFFICES OF RONALD**
   **A. MARRON, APLC**
2  RONALD A. MARRON (SBN 175650)
3  MAGGIE REALIN (SBN 263639)
   SKYE RESENDES (SBN 278511)
4  3636 4th Avenue, Suite 202
   San Diego, California 92103
5  Telephone: (619) 696-9006
6  Facsimile: (619) 564-6665
   *ron.marron@gmail.com*
7  *maggie.realin@yahoo.com*
   *skyer@san.rr.com*
8

**THE WESTON FIRM**
GREGORY S. WESTON (SBN 239944)
JACK FITZGERALD (SBN 257370)
MELANIE PERSINGER (SBN 275423)
COURTLAND CREEKMORE (182018)
1405 Morena Blvd., Suite 201
San Diego, California 92110
Telephone: (619) 798-2006
Facsimile: (480) 247-4553
*greg@westonfirm.com*
*jack@westonfirm.com*
*mel@westonfirm.com*
*courtland@westonfirm.com*

9  ***Attorneys for Plaintiffs***
   ***and the Proposed Classes***
10

11          **UNITED STATES DISTRICT COURT**
12          **SOUTHERN DISTRICT OF CALIFORNIA**

13 SALVATORE GALLUCCI, AMY
   ARONICA, KIM JONES, DORIS PETTY,
14 and JEANNE PRINZIVALLI on behalf of
   themselves, all others similarly situated, and
15 the general public,

16            Plaintiffs,

17 v.

18

19 BOIRON, INC.; and BOIRON USA, INC.,

20            Defendants.

Case No.: 11-cv-02039-JAH-NLS
CLASS ACTION

**FIRST AMENDED COMPLAINT FOR:**

**VIOLATION OF THE CONSUMERS
LEGAL REMEDIES ACT, CAL. CIV. CODE
§§ 1750, *et seq*.;**

**VIOLATION OF THE UNFAIR
COMPETITION LAW, CAL. BUS. & PROF.
CODE §§ 17200, *et seq*.;**

**VIOLATION OF THE FALSE
ADVERTISING LAW, CAL. BUS. & PROF.
CODE §§ 17500, *et seq*.;**

**BREACH OF EXPRESS WARRANTY;**

**BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY; and**

**MONEY HAD AND RECEIVED, MONEY
PAID, AND UNJUST ENRICHMENT**

**DEMAND FOR JURY TRIAL**

21
22
23
24
25
26
27
28

**INTRODUCTION**

1.      Plaintiffs Salvatore Gallucci, Amy Aronica, Kim Jones, Doris Petty, and Jeanne Prinzivalli by and through their attorneys of record, bring this action on behalf of themselves, all others similarly situated, and the general public, against defendants Boiron, Inc., and Boiron USA, Inc. (collectively, "Defendants" or "Boiron").

2.      Defendants are the manufacturers and sellers of homeopathic products that are nothing more than placebos, as set forth herein. This Complaint concerns Boiron homeopathic products and especially those known as Oscillococcinum and Children's Oscillococcinum (collectively "Oscillo"); Arnicare Gel, Arnicare Cream and Arnicare Tablets (collectively "Arnicare"); Chestal Cough Syrup and Children's Chestal Cough Syrup (collectively "Chestal"); Coldcalm and Children's Coldcalm (collectively "Coldcalm"), Quietude, Camilia, and other Boiron homeopathic products, in all sizes and doses.

3.      This amended complaint is being filed pursuant to the stipulation with the Defendants in compliance with Fed. R. Civ. Proc. 15 (a)(2).

**JURISDICTION AND VENUE**

4.      This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2), as amended by the Class Action Fairness Act of 2005, because the matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which some members of the Class of plaintiffs are citizens of states different than defendants. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367, and §1331. Further, greater than two-thirds of the Class members reside in states other than the states in which Defendants are citizens.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because many of the acts and transactions, including the purchases and sales giving rise to this action, occurred in this district and because Defendants (i) are authorized to conduct business in this district and have intentionally availed themselves of the laws and markets within this district through the promotion, marketing, distribution and sale of its products in this district; (ii) do substantial business in this

1  district; (iii) advertise to consumers residing in this district, and (iv) are subject to personal

2  jurisdiction in this district.

3  ### **THE PARTIES**

4      6.    Plaintiff Salvatore Gallucci is a resident of California.

5      7.    Plaintiff Amy Aronica is a resident of Pennsylvania.

6      8.    Plaintiff Kim Jones is a resident of North Carolina.

7      9.    Plaintiff Doris Petty is a resident of California.

8      10.   Plaintiff Jeanne Prinzivalli is a resident of California.

9      11.   Defendants Boiron, Inc. and Boiron USA, Inc. are Pennsylvania corporations that

10 produce, market, and sell over 800 homeopathic products.  Defendants do business in California and

11 throughout the United States.  Boiron has long maintained substantial manufacturing, distribution,

12 marketing, and warehousing operations in Simi Valley, California.

13 ### **FACTS[1]**

14 **A.    Oscillo**



19      12.   During the Class Period defined herein, Plaintiff Gallucci purchased Oscillo 3-dose

20 packages, Oscillo 6-dose packages, and Oscillo 12-dose packages at various stores in San Diego,

21 California, including Trader Joe's, Henry's (presently known as Sprouts), and CVS Pharmacy. Mr.

22 Gallucci's individual Oscillo purchases ranged from approximately $12 to $20.

23      13.   During the Class Period defined herein, Plaintiff Aronica purchased Oscillo on one

24 occasion at Rite Aid pharmacy in either Lake Ariel or Dunmore, Pennsylvania.

25 ----

26 [1] Photographs of Boiron products are included herein for exemplar purposes only, and should not be
construed to allege facts against Boiron solely as to the exemplar product depicted in the photograph.

27 Rather, the product definitions located at ¶2 control, and include all sizes and non-material variations
of each product sold by Boiron.

28

14.     During the Class Period defined herein, Plaintiff Prinzivalli purchased Osciollo on many occasions at various stores in Venice, Los Angeles and Santa Monica, California, including Whole Foods, Co-Op and Santa Monica Homeopathic Pharmacy.

15.     Boiron advertises Oscillo as a treatment and cure for the symptoms of seasonal flu, also known as the common cold. Oscillo's label indicates that Oscillo purportedly relieves "Flu-like Symptoms," "Feeling Run Down," "Headache," "Body Aches," "Chills," and "Fever." Oscillo, however, is composed of nothing more than sugar pellets onto which minute quantities of water have been absorbed. Oscillo thus contains no active ingredients, and has no effect on flus, colds or their symptoms. An extract or preparation of the heart and liver of a duck, purported to be Oscillo's active ingredient, is not present in the sugar that is sold to consumers, who are unwittingly spending tens of millions of dollars each year on worthless "doses" of Oscillo.

16.     In purchasing Oscillo, Plaintiffs Gallucci, Aronica and Prinzivalli relied upon various representations Defendants made on the label of Oscillo that the product is effective in relieving flu-like symptoms. For example, Plaintiffs read, believed and relied upon Defendants' label claims including "Reduces Severity and Duration of Flu Symptoms," "Take Oscillo at the First Sign of Flu-like Symptoms!," and "recommended by doctors around the world."

17.     The Oscillo label also includes the Internet URLs, www.boiron.com (the "Boiron Website") and www.oscillo.com (the "Oscillo Website"). The Oscillo Website further represents that Oscillo is "medicine for headache, body aches, chills & fever;" that Oscillo will "slow down the spread of germs;" that "[Oscillo] has a long history of efficacy and safety;" and that "[Oscillo] is the first flu medicine recommended by pharmacists."

18.     Oscillo, however, is composed of nothing more than sugar pellets onto which minute quantities of water have been absorbed. Oscillo thus contains no active ingredients, and has no effect on flus, colds or their symptoms. An extract or preparation of the heart and liver of a duck, purported to be Oscillo's active ingredient, is not present in the sugar that is sold to consumers, who are unwittingly spending tens of millions of dollars each year on worthless "doses" of Oscillo.

19.    The United States Center for Disease Control estimates that as many as 49,000 persons may die from flu in years when virulent strains appear.[2] Recently, April 2009 saw the emergence of the virulent pandemic colloquially known as the "swine flu," which spread fear across North America as it swept from Mexico into the United States. In June 2009, the World Health Organization declared the outbreak to be a pandemic. In subsequent years, flu outbreaks have been less devastating, but the public's fear of flu infection has provided fertile ground for quackery.

20.    On the Oscillo Website, Defendants claim that "[f]our clinical studies, including two which have been published in ***peer-reviewed journals*** [emphasis added], show that Oscillo reduces the severity and duration of flu-like symptoms . . . ." However, Defendants provide no references to allow these purported "peer-reviewed" studies to be located.

21.    According to Defendants, Oscillo (a) relieves symptoms of the flu within 48 hours, (b) "Reduces Duration and Severity of Flu Symptoms," (c) is effective "To reduce the duration and severity of flu-like symptoms," (d) "Take Osciollo® at the First Sign of Flu-like Symptoms," (e) is "recommended by doctors around the world," and (f) "temporarily relieves flu-like symptoms."

22.    Absent the misstatements described herein, Plaintiffs Gallucci, Prinzivalli and Aronica would not have purchased Oscillo.

23.    To the detriment of Plaintiffs and similarly situated consumers, the substance *Anas Barbariae Hepatis et Cordis Extractum*, listed as the "active ingredient" in Oscillo, is not active in combating the flu. Moreover, because of enormous dilutions used in its preparation, it is not actually present in the Oscillo preparations sold to the Plaintiff and other consumers.

24.    Since 1925, Oscillococcinum has been prepared as follows. Into a one litre bottle, a mixture of pancreatic juice and glucose is poured. Next a Canard de Barbarie[3] is decapitated and 35 grams of its liver and 15 grams of its heart are put into the bottle. . . . After 40 days in the sterile bottle, liver and heart autolyse (disintegrate) into a kind of goo, which is then "potentized" with the

---

[2] http://www.cdc.gov/flu/about/disease/us_flu-related_deaths.htm#how-many-die

[3] *Canard de Barbarie* is the common muscovy duck, the preferred source for duck breast in French cuisine.

Korsakov method . . . . In preparing Korsakov potencies, distilled water is used . . . Oscillococcinum's manufacturer (Boiron) uses "ultrapure water" from the first step on. Oscillococcinum is designated as "200K"—which means that the original amount is subjected to 200 Korsakov dilutions[4]—and the resulting fluid is used to moisten small 5 milligram balls of milk sugar. Some packages have been labeled "200CK." ("C" is the abbreviation for centesimal, which means 1-to-100 dilution, and "CK" stands for "centesimal Korsakovian.") Other packages have been labeled 200C," which does not specify which dilution method was used.[5]

25.    200CK thus means that that the original extract has been diluted $100^{200}$ times. One milligram, for example, of the original duck heart/liver autolysate, which was itself an impure mixture of thousands of different molecules derived from those organs and from the pancreatic extract used to stimulate autolysis, would ultimately be distributed into $1 \times 10^{400}$ milligrams of water, an amount of water $1.7 \times 10^{369}$ times the mass of the earth.[6] Giving Defendants the benefit (for the sake of argument) of an absurd assumption that Boiron's original duck heart/liver "goo" was a homogenously pure preparation of a single molecule having a molecular mass of 300 (about the size of a penicillin molecule), at a $1 \times 10^{400}$-fold dilution there would be approximately one molecule present in a volume of $5 \times 10^{375}$ liters, which is about $4 \times 10^{354}$ times the volume of the world's oceans.[7]

---

[4] A "Korsakov dilution" would presumably be carried out by simply adding a stock solution of the autolyzed heart/liver mixture to a vessel of convenient size, then emptying it out and adding "100 drops" of additional water without rinsing the vessel. Remarkably, this is arbitrarily assumed to accomplish a dilution of 1:100. *See* Rudi Verspoor and Steven Decker, *The Dynamic Legacy: From Homeopathy to Heilkunst* 57.3.1, available at http://www.heilkunst.com/dose.html.

[5] "The True Story of Oscillococcinum", Jan Willlem Nienhuys, available at http://www.homeowatch.org/history/oscillo.html (visited August 28, 2011) *citing* "Oscillococcinum, le joli grand canard." 202 Science et Pseudo-sciences, Cahiers bimestriels de l'Association Française pour l'Information Scientifique (1993).

[6] The mass of the earth has been estimated to be approximately $6 \times 10^{30}$ mg.

[7] The volume of the world's oceans is estimated to be $1.3 \times 10^{21}$ liters. Assuming that Boiron's autolyzed duck heart/liver ("duck autolysate") is a pure preparation of a single molecule having a molecular weight of 300 grams per mole and that it has a density the same as water's (1 g/ml), it would contain 3.3 moles per liter of a substance with a molecular weight of 300. Multiplication by

26.    The autolyzed duck heart/liver used in Oscillo provides no medical benefit. Moreover, at the stupendously high dilutions used to prepare the Oscillo product, it can have no effect of any kind in humans because the odds are astronomically high that not even a single molecule derived from the original "extract" could be present in the solution used to soak the tiny balls of lactose mixed with sucrose which constitute the product sold to consumers.[8]

27.    "'Strength is a nonissue in homeopathic medicine,' says Boiron spokeswoman Gina Casey. 'Just because we can't detect the molecular activity doesn't mean it doesn't work… .' Boiron's Casey explained when asked if a remedy made from the heart and liver of a duck was safe: 'Of course it is safe. There's nothing in it.' "[9]

28.    Thus Defendants know that there is **no active ingredient** present in Oscillo and therefore must be aware that Oscillo cannot treat or cure any disease.

29.    Oscillo is nothing more than small balls or pellets of sugar (85% sucrose and 15% lactose) packaged into vials, with no trace therein of the claimed active ingredient *Anas Barbariae Hepatis et Cordis Extractum*. Defendants are selling it for $10 - $24 per package depending on the dosage size either three vials, six vials, or twelve vials, each containing one gram of sugar pellets, which are to be taken "up to three times a day." These unfair and deceptive practices have enriched defendants to the tune of tens of millions of dollars at the expense of thousands of Americans.

---

the "Avogadro constant" gives $2 \times 10^{24}$ molecules per liter of such a hypothetical duck autolysate. Diluting this autolysate by a factor of $10^{400}$ (Boiron's claimed "200CK" dilution) would leave an infinitesimally small $2 \times 10^{-376}$ fraction of a molecule per liter. Therefore, to have even one molecule present would require a volume of $1/ (2 \times 10^{-376})$ liters = $5 \times 10^{375}$ liters.

[8] The final stage in the preparation of Oscillo, as is the case for all homeopathic "medicines", is the infusion of what is essentially ultra-pure water onto the surface of tiny balls of sugar, described on Defendants' packaging as "Quick-Dissolving Pellets". This effectuates an additional "dilution" of the water, imposing another layer of uncertainty upon the indeterminate but undeniably vast "Korsakov dilutions" indicated by Oscillo's designation as "200CK."

[9] "Flu Symptoms? Try Duck — Why sales of homeopathic products are soaring today." U.S. News & U.S. News & World Report, Feb. 9, 1997. Available at http://www.usnews.com/usnews/biztech/articles/970217/archive_006221_2.htm.

30.    Plaintiffs Gallucci, Prinzivalli and Aronica seek justice for themselves and for similarly-situated consumers of Oscillo by means of this action to enjoin the ongoing deceptive practices described herein.

**B.    Arnicare**



31.    During the Class Period defined herein, Plaintiff Prinzivalli purchased Arnicare on many occasions at various stores in Venice, Los Angeles and Santa Monica, California, including Whole Foods, Co-Op and Santa Monica Homeopathic Pharmacy.

32.    Boiron advertises Arnicare as a treatment and cure for "Neck, Back, Shoulder & Leg Muscle Pain & Stiffness," "Swelling from Injuries," and "Bruising."

33.    In purchasing Arnicare, Plaintiff Prinzivalli relied upon various representations Defendants made on the label of Arnicare that the product is effective in relieving pain and related symptoms. Specifically, Plaintiff Prinzivalli read, believed and relied upon Defendants' label claims including "temporarily relieves muscle pain and stiffness due to minor injuries, overexertion and falls," "reduces pain, swelling and discoloration from bruises," "FEEL BETTER FASTER" and "#1 PAIN RELIEVER."

34.    The Arnicare label also includes Internet URLs for the Boiron Website, www.boironusa.com (the "Boiron USA Website"), and www.arnicare.com (the "Arnicare Website"). The Arnicare Website includes further representations such as "Great Relief," "Before pain gets in your way . . . Treat it at the first sign with Arnicare," "Arnicare Saves the Day / Help Heal Sports Injuries," "Heal Skin Faster & Naturally," and "NY Plastic Surgeon Recommends Arnica."

35.     The purportedly active ingredient in Arnicare is *Arnica montana*, also known as mountain tobacco or mountain arnica, a European flower. As with Oscillo, the active ingredient, even if it were otherwise effective, is so greatly diluted as to be effectively non-existent in the product, such that the product is ineffective for its intended uses. Moreover, studies have shown *Arnica montana* to be no more effective than a placebo in healing bruising.

36.     Plaintiff Prinzivalli seeks justice for herself and for similarly-situated consumers of Arnicare by means of this action to enjoin the ongoing deceptive practices described herein.

**C.     Chestal**



37.     During the Class Period defined herein, Plaintiff Aronica purchased Chestal and Children's Chestal on at least two occasions, from Rite Aid pharmacies in Lake Ariel and/or Dunmore, Pennsylvania.

38.     Boiron advertises Chestal for the relief of cough symptoms.

39.     In purchasing Chestal, Plaintiff Aronica relied upon various representations Defendants made on the label of Chestal that the product is effective in addressing the symptoms of Chest Congestion and Dry & Productive Cough. For example, Plaintiff Aronica read, believed and relied upon Defendants' label claims including "Helps loosen thick mucus," "Relieves dry and painful cough," "Relieves cough associated with a tickling in the throat," "Relieves barking cough worse at night," "Relieves cough associated with nausea," "Relieves we cough during the day becoming dry at night," "Relieves dry cough triggered by cold air," "Relieves dry, croupy and barking cough," "Relieves nighttime hacking cough," "temporarily relieves dry cough due to minor throat and bronchial irritation as may occur with a cold," "helps relieve chest congestion by loosening mucus and thinning bronchial secretions to make coughs more productive," "loosens chest

congestion, thereby making coughs more productive for a speedier recovery," and "calms those dry, fitful coughs that prevent sleep."

40.    The Chestal label also includes Internet URLs for the Boiron USA Website, and www.chestal.com (the "Chestal Website"). The Chestal Website further represents that "Chestal Works Naturally," and that "Chestal relieves all types of common coughs."

41.    The purportedly active ingredients in Chestal include *Antimonium tartaricum*, *Bryonia alba*, *Coccus cacti*, *Drosera rotundifolia*, *Ipecacuanha*, *Pulsatilla*, *Rumex crispus*, *Spongia tosta*, and *Sticta pulmonaria*. However, as with Oscillo and Arnicare, the active ingredients, even if they were otherwise effective, are so greatly diluted as to be effectively non-existent in the product, such that the product is ineffective for its intended uses.

42.    Plaintiff Aronica seeks justice for herself and for similarly-situated consumers of Chestal by means of this action to enjoin the ongoing deceptive practices described herein.

**D.    Coldcalm**



43.    During the Class Period defined herein, Plaintiff Aronica purchased Coldcalm on at least one occasion from a Rite Aid in either Lake Ariel or Dunmore, Pennsylvania.

44.    During the Class Period defined herein, Plaintiff Petty purchased Coldcalm on at least one occasion in West Covina, California.

45.    During the Class Period defined herein, in or about November 2008, Plaintiff Jones purchased Coldcalm from a Whole Foods Market located in Chapel Hill, North Carolina, paying approximately $9 - $10.

46.    Boiron advertises Coldcalm for the relief of symptoms of the "common cold."

47.    In purchasing Coldcalm, Plaintiffs Aronica, Petty and Jones relied upon various representations Defendants made on the label of Coldcalm that the product is effective in relieving symptoms of the common cold including "Sneezing," "Runny Nose," "Nasal Congestion," and

"Minor Sore Throat." For example, Plaintiffs Aronica, Petty and Jones read, believed and relied upon Defendants' label claims including, "Take at the First Sign," "Relieves sneezing and runny nose," "Relieves nasal congestion," "Relieves colds with a sudden onset," "Relieves sinus pain," "Relieves headaches associated with colds," "Relieves nasal discharge," "Relieves sneezing attacks," "Relieves sore throat associated with colds," "Relieves colds with a loss of taste and smell," and "temporarily relieves cold symptoms such as: sneezing, runny nose, nasal congestion, minor sore throat."

48. The purportedly active ingredients in Coldcalm include *Allium cepai, Apis mellifica*, *Belladonna, Eupatorium perfoliatum, Gelsemium sempervirens*, *Kali bichromicum*, *Nux vomica*, *Phytolacca decandra*, and *Pulsatilla*. However, as with Oscillo, Arnicare, and Chestal, the active ingredients, even if they were otherwise effective, are so greatly diluted as to be effectively non-existent in the product, such that the product is ineffective for its intended uses.

49. Plaintiffs Aronica, Petty and Jones seek justice for themselves and for similarly-situated consumers of Coldcalm by means of this action to enjoin the ongoing deceptive practices described herein.

**E.     Quietude**



50. During the Class Period defined herein, Plaintiff Prinzivalli purchased Quietude on many occasions at various stores in Venice, Los Angeles and Santa Monica, California, including Whole Foods, Co-Op and Santa Monica Homeopathic Pharmacy.

51. Boiron advertises Quietude for the relief of symptoms including Sleeplessness, Restless Sleep and Occasional Awakening.

52. In purchasing Quietude, Plaintiff Prinzivalli relied upon various representations Defendants made on the label of Quietude that the product is effective in relieving symptoms of insomnia. Specifically, Plaintiff Prinzivalli read, believed and relied upon Defendants' label claims

including, "Relieves restless sleep associated with nervousness," "Relieves restless sleep," "Relieves sleeplessness associated with worries and exhaustion," "Relieves sleeplessness with intermittent awakening," and "temporarily relieves occasional sleeplessness and/or restless sleep."

53.    The purportedly active ingredients in Quietude include *Hyoscyamus niger*, *Nux moschata*, *Passiflora incarnate*, and *Stramonium*.  However, as with Oscillo, Arnicare, Chestal and Coldcalm, the active ingredients, even if they were otherwise effective, are so greatly diluted as to be effectively non-existent in the product, such that the product is ineffective for its intended uses.

54.    Plaintiff Prinzivalli seeks justice for herself and for similarly-situated consumers of Quietude by means of this action to enjoin the ongoing deceptive practices described herein.

**F.    Camilia**



55.    During the class period defined herein, Plaintiff Doris Petty purchased Camilia on more than one occasion in California at an approximate price of $4.99 per box.

56.    Boiron advertises Camilia for the relief of symptoms associated with baby teething, such as Painful Gums, Irritability and Minor Digestive Disorders.

57.    In purchasing Camilia, Plaintiff Petty relied upon various representations Defendants made on the label of Camilia that the product is effective in relieving symptoms associated with baby teething.  Specifically, Plaintiff Petty read, believed and relied upon Defendants' label claims including, "Teething Relief," "Painful Gums," "Irritability," and "Relieves minor digestive disorders associated with teething."

58.    The purportedly active ingredients in Camilia include *Chamomilla 9C HPUS* (German chamomile,) *Phytolacca decandra 5C HPUS* (Poke), and *Rheum officinale 5C HPUS* (Chinese rhubarb.)    However, as with Oscillo, Arnicare, Chestal, Coldcalm and Quietude, the active

ingredients, even if they were otherwise effective, are so greatly diluted as to be effectively non-existent in the product, such that the product is ineffective for its intended uses.

59.    Plaintiff Petty seeks justice for herself and for similarly-situated consumers of Camilia by means of this action to enjoin the ongoing deceptive practices described herein.

**G.    Other Boiron Homeopathic Products**

60.    Although the forgoing products—Oscillo, Arnicare, Chestal, Coldcalm, Quietude and Camilia—represent approximately 80% of Boiron's sales of homeopathic products, Boiron in fact offers more than 800 homeopathic products.  Approximately 80 such products are regularly available in health food stores and specialized pharmacies, while the vast majority must be special-ordered from Boiron by a pharmacist or food store.

61.    Plaintiffs have purchased some of these additional homeopathic products in reliance on their claims. For example, Plaintiff Jones purchased 6-7 packs of Sabadil, at a cost of $10.46 per pack, every allergy season (March to September).  Sabadil is a Boiron homeopathic product that is advertised to relieve itchy eyes and nose, sneezing, and running nose. Similarly, Plaintiff Prinzivalli purchased Boiron homeopathic products including Optique eye drops, Byronia, Sinusalia, Graphites, Nux Vomica, Sepia, Silicea, Phosphorus, Urtica, Mercurius Vivus, Lachesis Mutus, Rhus Toxicodendron, Cantharis and Alba.

62.    As with Oscillo, Arnicare, Chestal, Coldcalm, Quietude and Camilia, Boiron's remaining homeopathic products purport to relieve various ailments and symptoms, but in fact are ineffective due to extremely high dilutions, the ineffectiveness of active ingredients in relieving such symptoms, or both.

63.    Plaintiffs seek justice for similarly-situated consumers of Boiron's homeopathic products by means of this action to enjoin the ongoing deceptive practices described herein.

## CLASS ACTION ALLEGATIONS

64.    Plaintiff brings this class action for injunctive relief, and damages (Oscillo only), on behalf of the Class of Boiron homeopathic product purchasers in the United States from January 1,

2007 to the present, comprised of individuals who are members of at least one of the following Subclasses:

    **a.**    **The Oscillo Subclass:** All persons who purchased, in the United States, on or after January 1, 2000, for personal or household use and not for resale, Oscillococcinum or Children's Oscillococcinum manufactured and sold by Boiron.

    **b.**    **The Arnicare Subclass:** All persons who purchased, in the United States, on or after January 1, 2000, for personal or household use and not for resale, Arnicare manufactured and sold by Boiron.

    **c.**    **The Chestal Subclass:** All persons who purchased, in the United States, on or after January 1, 2000, for personal or household use and not for resale, Chestal or Children's Chestal manufactured and sold by Boiron.

    **d.**    **The Coldcalm Subclass:** All persons who purchased, in the United States, on or after January 1, 2000, for personal or household use and not for resale, Coldcalm or Children's Coldcalm manufactured and sold by Boiron. Excluded from the Subclass are persons who purchased Children's Coldcalm in California.

    **e.**    **The Quietude Subclass:** All persons who purchased, in the United States, on or after January 1, 2000, for personal or household use and not for resale, Quietude manufactured and sold by Boiron.

    **f.**    **The Camilia Subclass:** All persons who purchased, in the United States, on or after January 1, 2000, for personal or household use and not for resale, Camilia manufactured and sold by Boiron.

    **g.**    **The Remaining Boiron Homeopathic Products Subclass:** All persons who purchased, in the United States, on or after January 1, 2000, for personal or household use and not for resale, homeopathic products

1    manufactured and sold by Boiron, other than Oscillo, Arnicare, Chestal,

2    Coldcalm, Quietude or Camilia.

3    65.    Excluded from the Class and all Subclasses are governmental entities, Defendants, any

4    entity in which Defendants have a controlling interest, and Defendants' officers, directors, affiliates,

5    legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns.    Also

6    excluded from the Class is the Court, its staff and officers, and members of their immediate families.

7    66.    The proposed Class is so numerous that individual joinder of all its members is

8    impracticable. Due to the nature of the trade and commerce involved, however, Plaintiffs believe the

9    total number of Class members is at least in the hundreds of thousands and members of the Class are

10    numerous and geographically dispersed across the United States.    While the exact number and

11    identities of the Class members are unknown at this time, such information can be ascertained

12    through appropriate investigation and discovery.  The disposition of the claims of the Class members

13    in a single class action will provide substantial benefits to all parties and to the Court.

14    67.    There is a well-defined community of interest in the questions of law and fact

15    involved affecting the Plaintiff and the Class and these common questions of fact and law include,

16    but are not limited to, the following:

17            a.    Whether Defendants communicated a message that the homeopathic products

18                at issue were effective in treating various maladies and symptoms.

19            b.    Whether Defendants' efficacy claims are accurate;

20            c.    Whether Defendants' efficacy claims are properly substantiated;

21            d.    Whether Defendants' have falsely represented that the Boiron homeopathic

22                products at issue have benefits which they do not have;

23            e.    Whether Defendants knew that the efficacy representations were false;

24            f.    Whether Defendants' conduct constitutes the violations of law alleged herein;

25            g.    Whether Defendants acted willfully recklessly or with gross negligence in the

26                violations of the law alleged herein;

27

28

---

h.    Whether Plaintiffs and Class members have sustained monetary loss and the proper measure of that loss;

i.    Whether Plaintiffs and Class members are entitled to an award of punitive damages, and;

j.    Whether Plaintiffs and Class members are entitled to declaratory and injunctive relief.

68.    Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiffs and all members of the Class have been similarly affected by Defendants' common course of conduct since they all relied on Defendants' representations concerning the homeopathic products at issue and purchased the products based on those representations.

69.    Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel with substantial experience in handling complex class action litigation in general and scientific claims in particular. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so.

70.    Plaintiffs and the members of the Class suffered, and will continue to suffer, harm as a result of the Defendants' unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the present controversy. Individual joinder of all members of the class impracticable. Even if individual class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendants' common course of conduct. The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and efficient handling of all class members' claims in a single forum. The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of the class members. Furthermore, for many, if not most, a class action is the only feasible mechanism that allows an opportunity for legal redress and justice.

71.     Adjudication of individual class members' claims with respect to Defendants would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication, and could substantially impair or impede the ability of other class members to protect their interests.

**FIRST CAUSE OF ACTION**

**VIOLATION OF CALIFORNIA'S CONSUMERS LEGAL REMEDIES ACT**

**(By Plaintiffs and on Behalf of the Class as Against All Defendants)**

72.     Plaintiffs incorporate by this reference the allegations contained in the paragraphs above as if fully set forth herein.

73.     This cause of action is brought pursuant to California's Consumers Legal Remedies Act ("CLRA"), California Civil Code § 1750, *et seq.* (the "Act").  Plaintiffs are consumers as defined by California Civil Code § 1761(d).  The Boiron homeopathic products at issue are goods within the meaning of the Act.

74.     Plaintiffs have standing to pursue this claim as they suffered injury in fact as a result of Defendants' actions as set forth herein.  Specifically, prior to the filing of this action, Plaintiffs purchased Boiron homeopathic products in reliance upon Defendants' marketing claims.  Plaintiffs used the products as directed, but the products have not worked as advertised, nor provide any of the promised benefits.

75.     Pursuant to § 1782 *et seq.* of the Act, Plaintiff Gallucci notified Defendants in writing by certified mail of the particular violations of § 1770 of the Act as to the Oscillo products, and demanded that Defendants rectify the problems associated with the actions detailed above and give notice to all affected consumers of its intent to so act.  Defendants' wrongful business practices regarding Oscillo constituted, and constitute, a continuing course of conduct in violation of the California's Consumers Legal Remedies Act since Defendants are still representing that their Oscillo products have characteristics, uses, benefits, and abilities which are false and misleading, and have injured Plaintiffs and the Class.  A copy of Plaintiff Gallucci's letter is attached as Exhibit A hereto.

76.     Defendants violated the Act by representing through its advertisements the homeopathic products as described above, when it knew, or should have known, that the representations and advertisements were unsubstantiated, false, and misleading.

77.     Plaintiffs and other members of the Class reasonably relied upon the Defendants' representations as to the quality and attributes of the homeopathic products.

78.     Plaintiffs and other members of the Class were deceived by Defendants' representations about the quality and attributes of the Boiron homeopathic products. Plaintiff and other class members would not have purchased the products had they known Defendants' claims were either unfounded or untrue, and the true nature of the products.

79.     Pursuant to California Civil Code Section 1780(a), Plaintiffs and the Class seek an order of this court enjoining Defendants from continuing to engage in unlawful, unfair, or deceptive business practices and any other act prohibited by law, and awarding Plaintiffs and the Class restitution and disgorgement and, with respect to Oscillo, awarding Plaintiffs and the Oscillo Subclass damages and punitive damages.

**SECOND CAUSE OF ACTION**

**VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS**

**CODE SECTIONS 17200 *ET SEQ.***

**(By Plaintiffs and on Behalf of the Class as Against All Defendants)**

80.     Plaintiffs incorporate by this reference the allegations contained in the paragraphs above as if fully set forth herein.

81.     Plaintiffs have standing to pursue this claim as Plaintiffs have suffered injury in fact and lost money as a result of Defendants' actions as set forth herein. Specifically, prior to the filing of this action, Plaintiffs purchased Boiron homeopathic products in reliance upon Defendants' marketing claims. Plaintiffs used the products as directed, but the products have not worked as advertised, nor provide any of the promised benefits.

82.     Defendants' actions as alleged in this complaint constitute an unfair or deceptive business practice within the meaning of California Business and Professions Code section 17200 in that Defendants' actions are unfair, unlawful, and fraudulent.

83.     Defendants' business practices, as alleged herein, are unfair because they offend established public policy and/or are immoral, unethical, oppressive, unscrupulous and/or substantially injurious to consumers who are misled by the claims made with respect to the Boiron homeopathic products as set forth herein.

84.     Defendants' wrongful business practices constituted, and constitute, a continuing course of conduct of unfair competition since Defendants are marketing and selling their products in a manner likely to deceive the public.

85.     Defendants' business practices as alleged herein are unlawful because the conduct constitutes violates the CLRA and False Advertising Law as set forth herein. Plaintiffs and the Class reserve the right to allege other violations of law which constitute other unlawful business acts or practices.

86.     Defendants' business practices as alleged herein are fraudulent because they are likely to deceive customers into believing that the Boiron homeopathic products have properties that they in fact do not have.

87.     Pursuant to section 17203 of the California Business and Professions Code, Plaintiffs and the Class seek an order of this court enjoining Defendants from continuing to engage in unlawful, unfair, or deceptive business practices and any other act prohibited by law, including those set forth in the complaint.

88.     Plaintiffs also seeks an order for the disgorgement and restitution of all monies from the sale of the Boiron homeopathic products, which were unjustly acquired through acts of unlawful, unfair, and/or fraudulent competition.

### THIRD CAUSE OF ACTION

### VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS

### CODE SECTIONS 17500 *ET SEQ.*

**(By Plaintiffs and on Behalf of the Class as Against All Defendants)**

89.    Plaintiffs incorporate by this reference the allegations contained in the paragraphs above as if fully set forth herein.

90.    Plaintiffs have standing to pursue this claim as Plaintiffs have suffered injury in fact and lost money as a result of Defendants' actions as set forth herein. Specifically, prior to the filing of this action, Plaintiffs purchased Boiron homeopathic products in reliance upon Defendants' marketing claims. Plaintiffs used the products as directed, but the products have not worked as advertised, nor provide any of the promised benefits.

91.    Defendants' business practices as alleged herein constitute unfair, deceptive, untrue, and misleading advertising pursuant to California Business and Professions Code section 17500, *et seq.* because Defendants have advertised the Boiron homeopathic products, including over the internet, in a manner that is untrue and misleading, and that is known to be untrue or misleading.

92.    Defendants' wrongful business practices have caused injury to Plaintiff and the Class.

93.    Pursuant to section 17535 of the California Business and Professions Code, Plaintiff and the Class seek an order of this court enjoining Defendants from continuing to engage in deceptive business practices, false advertising, and any other act prohibited by law, including those set forth in the complaint.

94.    Plaintiff also seeks an order for the disgorgement and restitution of all monies from the sale of the Boiron homeopathic products, which were unjustly acquired through acts of unlawful, unfair, and/or fraudulent competition.

**FOURTH CAUSE OF ACTION**

**BREACH OF EXPRESS WARRANTY**

**(By Plaintiffs and on Behalf of the Class as Against All Defendants)**

95.    Plaintiffs incorporate by this reference the allegations contained in the paragraphs above as if fully set forth herein.

96.    Beginning at an exact date unknown to Plaintiffs, but at least since four years prior to the filing date of this action, and as set forth hereinabove, Defendants made representations to the

public, including Plaintiffs, by its advertising, packaging and other means, that Oscillo relieves "Flu-like Symptoms," "Feeling Run Down," "Headache," "Body Aches," "Chills," and "Fever;" that Oscillo is "medicine for headache, body aches, chills & fever;" that Oscillo will "slow down the spread of germs," among other representations. That promise and related promises became part of the basis of the bargain between the parties and thus constituted an express warranty.

97.    Beginning at an exact date unknown to Plaintiffs, but at least since four years prior to the filing date of this action, and as set forth hereinabove, Defendants made representations to the public, including Plaintiffs, by its advertising, packaging and other means, that Arnicare treats and cures "Neck, Back, Shoulder & Leg Muscle Pain & Stiffness," "Swelling from Injuries," and "Bruising" and that Arnicare "temporarily relieves muscle pain and stiffness due to minor injuries, overexertion and falls," "reduces pain, swelling and discoloration from bruises," that Arnicare provides "Great Relief," "Before pain gets in your way and makes consumer "FEEL BETTER FASTER," "#1 PAIN RELIEVER, "Saves the Day / Help Heal Sports Injuries," "Heal Skin Faster & Naturally," and "NY Plastic Surgeon Recommends Arnica," among other representations.

98.    Beginning at an exact date unknown to Plaintiffs, but at least since four years prior to the filing date of this action, and as set forth hereinabove, Defendants made representations to the public, including Plaintiffs, by its advertising, packaging and other means, that Chestal is effective in addressing the symptoms of Chest Congestion and Dry & Productive Cough, that it "Helps loosen thick mucus," "helps relieve chest congestion by loosening mucus and thinning bronchial secretions to make coughs more productive," "loosens chest congestion, thereby making coughs more productive for a speedier recovery," "calms those dry, fitful coughs that prevent sleep," and "relieves all types of common coughs," among other representations.

99.    Beginning at an exact date unknown to Plaintiffs, but at least since four years prior to the filing date of this action, and as set forth hereinabove, Defendants made representations to the public, including Plaintiffs, by its advertising, packaging and other means, that Coldcalm is effective in relieving symptoms of the common cold including "Sneezing," "Runny Nose," "Nasal Congestion," and "Minor Sore Throat," that Coldcalm "Relieves sinus pain," "Relieves headaches

associated with colds," "Relieves nasal discharge," and "temporarily relieves cold symptoms such as: sneezing, runny nose, nasal congestion, minor sore throat, " among other representations.

100.    Beginning at an exact date unknown to Plaintiffs, but at least since four years prior to the filing date of this action, and as set forth hereinabove, Defendants made representations to the public, including Plaintiffs, by its advertising, packaging and other means, that Quietude is "Relieves restless sleep associated with nervousness," "Relieves restless sleep," "Relieves sleeplessness associated with worries and exhaustion," "Relieves sleeplessness with intermittent awakening," and "temporarily relieves occasional sleeplessness and/or restless sleep, " among other representations.

101.    Beginning at an exact date unknown to Plaintiffs, but at least since four years prior to the filing date of this action, and as set forth hereinabove, Defendants made representations to the public, including Plaintiffs, by its advertising, packaging and other means, that Camilia provides "Teething Relief" to symptoms experienced by teething babies such as "Painful Gums," "Irritability," and digestive relief, among other representations.  Thereon, Defendants sold the goods to Plaintiffs and other consumers, who bought the goods from Defendants.

102.    However, Defendants breached the express warranty in that the goods in fact did not relieve any of the symptoms as set forth in detail hereinabove. As a result of this breach, Plaintiffs and other consumers in fact did not receive goods as warrantied by Defendants.

103.    As a proximate result of this breach of warranty by Defendants, Plaintiffs and the Class members have been damaged in the amount of the purchase price of the products they purchased.

### FIFTH CAUSE OF ACTION

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

### (By Plaintiffs and on Behalf of the Class as Against All Defendants)

104.    Plaintiffs incorporate by this reference the allegations contained in the paragraphs above as if fully set forth herein.

105.    Beginning at an exact date unknown to Plaintiffs, but at least since four years prior to the filing date of this action, and as set forth above, Defendants made representations to the public,

including Plaintiffs, by their advertising, packaging and other means that Oscillo relieves "Flu-like Symptoms," "Feeling Run Down," "Headache," "Body Aches," "Chills," and "Fever;" that Oscillo is "medicine for headache, body aches, chills & fever;" that Oscillo will "slow down the spread of germs," among other representations. Plaintiffs and other consumers bought those goods from Defendants.

106.   Beginning at an exact date unknown to Plaintiffs, but at least since four years prior to the filing date of this action, and as set forth hereinabove, Defendants made representations to the public, including Plaintiffs, by its advertising, packaging and other means, that Arnicare treats and cures "Neck, Back, Shoulder & Leg Muscle Pain & Stiffness," "Swelling from Injuries," and "Bruising" and that Arnicare "temporarily relieves muscle pain and stiffness due to minor injuries, overexertion and falls," "reduces pain, swelling and discoloration from bruises," that Arnicare provides "Great Relief," "Before pain gets in your way and makes consumer "FEEL BETTER FASTER," "#1 PAIN RELIEVER," "Saves the Day / Help Heal Sports Injuries," "Heal Skin Faster & Naturally," and "NY Plastic Surgeon Recommends Arnica," among other representations.

107.   Beginning at an exact date unknown to Plaintiffs, but at least since four years prior to the filing date of this action, and as set forth hereinabove, Defendants made representations to the public, including Plaintiffs, by its advertising, packaging and other means, that Chestal is effective in addressing the symptoms of Chest Congestion and Dry & Productive Cough, that it "Helps loosen thick mucus," "helps relieve chest congestion by loosening mucus and thinning bronchial secretions to make coughs more productive," "loosens chest congestion, thereby making coughs more productive for a speedier recovery," "calms those dry, fitful coughs that prevent sleep," and "relieves all types of common coughs," among other representations.

108.   Beginning at an exact date unknown to Plaintiffs, but at least since four years prior to the filing date of this action, and as set forth hereinabove, Defendants made representations to the public, including Plaintiffs, by its advertising, packaging and other means, that Coldcalm is effective in relieving symptoms of the common cold including "Sneezing," "Runny Nose," "Nasal Congestion," and "Minor Sore Throat," that Coldcalm "Relieves sinus pain," "Relieves headaches

associated with colds," "Relieves nasal discharge," and "temporarily relieves cold symptoms such as: sneezing, runny nose, nasal congestion, minor sore throat, " among other representations.

109.   Beginning at an exact date unknown to Plaintiffs, but at least since four years prior to the filing date of this action, and as set forth hereinabove, Defendants made representations to the public, including Plaintiffs, by its advertising, packaging and other means, that Quietude is "Relieves restless sleep associated with nervousness," "Relieves restless sleep," "Relieves sleeplessness associated with worries and exhaustion," "Relieves sleeplessness with intermittent awakening," and "temporarily relieves occasional sleeplessness and/or restless sleep, " among other representations.

110.   Beginning at an exact date unknown to Plaintiffs, but at least since four years prior to the filing date of this action, and as set forth hereinabove, Defendants made representations to the public, including Plaintiffs, by its advertising, packaging and other means, that Camilia provides "Teething Relief" to symptoms experienced by teething babies such as "Painful Gums," "Irritability," and digestive relief, among other representations.

111.   Defendants were merchants with respect to goods of this kind which were sold to Plaintiffs and other consumers, and there was in the sale to Plaintiffs and other consumers an implied warranty that those goods were merchantable.

112.   However, Defendants breached that warranty implied in the contract for the sale of goods in that the goods in fact did not relieve any of the symptoms as set forth in detail hereinabove.

113.   As a result of Defendants' conduct, Plaintiffs and other consumers did not receive goods as impliedly warranted by Defendants to be merchantable.

114.   As a proximate result of this breach of warranty by the Defendants, Plaintiffs and other consumers have been damaged in the amount of the purchase price of the products they purchased.

**<u>SIXTH CAUSE OF ACTION</u>**

**Money Had and Received, Money Paid and Unjust Enrichment**

**(By Plaintiffs and on Behalf of the Class as Against All Defendants)**

115.    Plaintiffs incorporate by reference the allegations contained in the paragraphs above as if fully set forth here.

116.    As a result of Defendants' false and deceptive advertising, unfair, deceptive untrue or misleading business practices and misrepresentations and in consideration thereof, during the relevant time period set forth above, the class members paid money to and conferred a benefit upon Defendants in connection with Defendants' products sold to class members, which monies were originally in the class members' possession.

117.    Defendants received, retained or appropriated these benefits under such circumstances that it would be inequitable and unjust to permit Defendants to retain such monies at the expense of the class members. Defendants, as a result of such conduct, became indebted to the class members for the sums paid to Defendants by class members as set forth in detail above, with interest thereon. No such sums have been paid to the class members.

118.    In fairness, all such monies, including all interest Defendants have earned on such monies while in wrongful possession thereof, should be disgorged by Defendants and paid to members of the class under principles of unjust enrichment. No violation of law or public policy would be promoted by such relief.

119.    As a direct and proximate result of Defendants' conduct resulting in their unjust enrichment, Plaintiffs and class members suffered injury, and therefore seek an order directing Defendants to return the amount each of them were improperly induced to pay to Defendants, plus interest thereon, as well as imposing a constructive trust over such monies.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff and members of the Class pray for judgment against all Defendants as to each and every cause of action, including:

1.    An order declaring this action to be a proper Class Action and requiring Defendants to bear the costs of class notice;

2.    An order declaring that Defendants have engaged in the conduct alleged herein;

1    3.    An order awarding Plaintiffs and the proposed Class members damages in the amount

2        to be determined at trial;

3    4.    An order awarding restitution and disgorgement of Boiron, Inc. and Boiron USA,

4        Inc.'s revenues to Plaintiffs and the proposed Class members;

5    5.    An injunction ordering Defendants to cease and desist from engaging in the unfair,

6        unlawful, and/or fraudulent practices alleged in the Complaint;

7    6.    An order compelling Defendants to engage in a corrective advertising campaign;

8    7.    An award of punitive damages;

9    8.    An order awarding attorneys' fees and costs; and

10    9.    Any and all such other and further relief that this Court may deem just and proper.

11    Dated: February 6, 2012                    /s/ Ronald A. Marron
                                            By: Ronald A. Marron
12                                          **LAW OFFICES OF RONALD A. MARRON, APLC**
                                            Maggie Realin
13                                          Skye Resendes
                                            3636 4ᵗʰ Avenue, Suite 202
14                                          San Diego, California 92103
                                            Telephone: (619) 696-9006
15                                          Facsimile: (619) 564-6665

16                                          **THE WESTON FIRM**
                                            Jack Fitzgerald
17                                          2811 Sykes Court
                                            Santa Clara, California 95051
18                                          Telephone: (408) 459-0305
                                            Facsimile: (480) 247.4553
19
                                            Gregory S. Weston
20                                          Melanie Persinger
                                            Courtland Creekmore
21                                          1405 Morena Blvd., Suite 201
                                            San Diego, CA 92110
22                                          Telephone: (619) 798-2006
                                            Facsimile: (480) 247-4553
23

24
                                            *Attorneys for Plaintiffs and the Proposed Class*
25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit A

Law Offices of

# Ronald A. Marron

A Professional Law Corporation

3636 Fourth Avenue, Ste 202
San Diego, CA 92103

Tel: 619.696.9006
Fax: 619.564.6665

November 10, 2011

<u>**Via: Certified Mail; (receipt acknowledgment with signature requested)**</u>

Candida Rodriguez
As Agent for Service of Process for Boiron, Inc.
Entity # C1640732
4145 Guardian Street
Simi Valley, CA 93063

Boiron, Inc.
Boiron USA, Inc.
Attn:  President and CEO
6 Campus Blvd.
Newton Square, PA 19073

Christina Sarchio
Patton Boggs LLP
2550 M Street, NW
Washington, DC 20037
Attorney for Boiron Inc. and Boiron USA, Inc.

John Thomas Gilbert
Patton Boggs LLP
2000 McKinney Avenue
Suite 1700
Dallas, TX 75201
Attorney for Boiron Inc. and Boiron USA, Inc.

**RE:** *Violations of the California Consumer Legal Remedies Act*

Dear Sir or Madam:

As you know, this firm represents Salvatore Gallucci, plaintiff in the action pending in the United States District Court for the Southern District of Califonia, styled *Gallucci v. Boiron, Inc. et al.,* Case No.3:11-cv-02039-JAH-NLS.

This letter supplements previous correspondence sent on behalf of our client, Salvatore Gallucci, alleging violations of the California Consumer Legal Remedies Act, as follows:

PLEASE TAKE NOTICE that this letter constitutes notice under the California Consumer Legal Remedies Act, ("CLRA"), California Civil Code Section 1750, *et seq.*, (the "ACT") — pursuant specifically to Civil Code Section 1782 — notifying **BOIRON INC. AND BOIRON USA, INC.** ("YOU") of violations of the Act and of our demand that YOU remedy such violation within thirty (30) days from your receipt of this letter.

At various times over the past ten (10) years, my client, Salvatore Gallucci, repeatedly purchased your Oscillococcinum products from various California stores (including Trader Joe's and CVS Pharmacy) that were and still are deceptively marketed by your company.

YOU market and sell products known as "Oscillococcinum" and "Children's Oscillococcinum" (collectively "Oscillo"). YOU market this product as a remedy for flu and flu-like symptoms, including "Feeling Run Down, Headache, Body Aches, Chills, and Fever." You also market this product as: "Reduces Duration and Severity of Flu Symptoms."

Oscillo is a microdosage of duck liver and heart. Diluted to a dosage of 200C (1 x $10^{400}$), the product contains no active ingredients and is of no medical value.

In conclusion, YOUR material misrepresentations are deceiving customers into purchasing Oscillo under the representation that they provide significant health benefits, when in fact they do not.

A reasonable consumer would have relied on the deceptive and false claims made on the packaging of your products, and through the exercise of reasonable diligence would not have discovered the violations alleged herein because YOU actively and purposefully concealed the truth regarding your products.

In conclusion, your material misrepresentations are deceiving customers into purchasing your products under the representation that they are part of a healthy lifestyle, when in fact they have a negative impact on the health of your consumers.

Please be advised that the alleged unfair methods of competition or unfair or deceptive acts or practices in violation of the CLRA include, but are not necessarily limited to:

§ 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have.

§ 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another.

§ 1770(a)(9): advertising goods with intent not to sell them as advertised.

§ 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

YOU have failed to honor your consumer protection obligations. Based upon the above, demand is hereby made that YOU conduct a corrective advertising campaign, destroy all misleading and deceptive advertising materials and products, and refund all monies paid over the past 10 (ten) years by Salvatore Gallucci and all other similarly-situated U.S. residents, for the purchase of Oscillo.

Please be advised that your failure to comply with this request within thirty (30) days may subject YOU to the following remedies, available for violations of the CLRA, which will be requested in a subsequent class action complaint against YOU in the United States District Court:

(1) The actual damages suffered;

(2) An order enjoining you for such methods, acts or practices;

(3) Restitution of property (when applicable);

(4) Punitive damages;

(5) Any other relief which the court deems proper; and

(6) Court costs and attorneys' fees.

Also, I remind you of your legal duty to preserve all records relevant to such litigation. *See, e.g., Convolve, Inc. v. Compaq Computer Corp.*, 223 F.R.D. 162, 175 (S.D.N.Y. 2004); *Computer Assoc. Int'l v. American Fundware, Inc.*, 133 F.R.D. 166, 168-169 (D. Colo. 1990). We anticipate that all e-mails, letters, reports, internal corporate instant messages, and laboratory records that relate to the formulation and marketing of Oscillo products will be sought in the forthcoming discovery process. You therefore must inform any employees, contractors, and third-party agents (for example product consultants and advertising agencies handling your product accounts) to preserve all such relevant information.

/ / /

/ / /

/ / /

/ / /

I look forward to YOU taking corrective action. Thank you for your time and consideration in this matter.

Sincerely,

THE LAW OFFICES OF RONALD A. MARRON APLC

Ronald A. Marron
Attorneys for Salvatore Gallucci
and all others similarly situated