LAW OFFICES OF
**RONALD A. MARRON, APLC**
RONALD A. MARRON (175650)
*ron@consumersadvocates.com*
MAGGIE. K. REALIN (263639)
*maggie@consumersadvocates.com*
BEATRICE SKYE RESENDES (278511)
*skye@consumersadvocates.com*
3636 4th Avenue, Suite 202
San Diego, California 92103
Telephone:    (619) 696-9006
Facsimile:    (619) 564-6665

**Class Counsel**

**THE WESTON FIRM**
GREGORY S. WESTON (239944)
*greg@westonfirm.com*
JACK FITZGERALD (257370)
*jack@westonfirm.com*
COURTLAND CREEKMORE (182018)
*courtland@westonfirm.com*
MELANIE PERSINGER (275423)
*mel@westonfirm.com*
1405 Morena Blvd., Suite 201
San Diego, California 92110
Telephone:    (619) 798 2006
Facsimile:    (480) 247 4553

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

SALVATORE GALLUCCI, AMY ARONICA, KIM JONES, DORIS PETTY, and JEANNE PRINZIVALLI, individually and on behalf of all others similarly situated,

        Plaintiffs,

      v.

BOIRON, INC., a foreign corporation; and BOIRON USA, INC., a foreign corporation,

        Defendants.

Case No. 3:11-CV-2039 JAH NLS
Pleading type: Class Action

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR APPROVAL OF ATTORNEY FEES, COSTS, AND INCENTIVE AWARDS**

Judge:        The Hon. John A. Houston
Hearing:     August 27, 2012
Time:         2:30 p.m.
Location:    Courtroom 11

[Motion date set by the Court, in Preliminary Approval Order (Dkt. No. 89) and Order Rescheduling Final Approval Hearing (Dkt. No. 91)]

# TABLE OF CONTENTS

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ............................................. 1

II.    STANDARD OF REVIEW ............................................................................ 1

III.   ARGUMENT ................................................................................................. 2

    A.    BASES FOR AN AWARD OF ATTORNEY'S FEES AND EXPENSES ..................... 2

    B.    CALIFORNIA LAW PROVIDES FEES FOR SUCCESSFULLY
         PROSECUTING CONSUMER FRAUD CLAIMS ......................................... 2

         1.    Plaintiffs are "Prevailing Plaintiffs," Entitled to Fees and Costs
              under the CLRA ................................................................................. 2

         2.    Plaintiffs are "Successful Parties" Entitled to Fees & Costs Under
              the Private Attorney General Statute .................................................. 5

         3.    There is an Equitable Basis for the Award of Attorney's Fees ............ 6

    C.    THE COURT SHOULD APPLY THE PERCENTAGE OF THE FUND
         METHOD TO DETERMINE CLASS COUNSEL'S REASONABLE FEE .................. 7

    D.    CLASS COUNSEL'S REQUESTED FEE REQUEST OF 30% OF THE
         COMMON FUND IS FAIR AND REASONABLE ....................................... 7

         1.    Fees Totaling 30% of a Common Fund are Often Held Reasonable ........ 7

         2.    An Award of 30% of the Common Fund is Reasonable in this Case ........ 11

             a.    The Exceptional Results Obtained .......................................... 11

             b.    The Effort, Skill, and Experience of Counsel ........................... 13

             c.    The Complexity of the Issues ................................................. 14

             d.    Risk of Non-Payment, Preclusion of Other Employment,
                and Ongoing Work ................................................................ 15

             e.    Reaction of the Class ............................................................. 16

i

f.      Bluetooth Factors ................................................................. 16

g.      The Lodestar/Multiplier Crosscheck.......................................... 18

i.      Class Counsel's Rates Are Reasonable........................................ 18

ii.     Class Counsel's Hours Expended Are Reasonable..................... 20

iii.    A Multiplier of 1.99 is Reasonable .............................................. 21

E.      THE REQUESTED COSTS ARE FAIR AND REASONABLE................................... 22

F.      THE REQUESTED INCENTIVE AWARDS ARE FAIR AND
        REASONABLE ........................................................................... 23

IV.     CONCLUSION................................................................................... 25

# TABLE OF AUTHORITIES

**CASES**

*Antonopulos v. N. Am. Thoroughbreds, Inc.*,
   1991 U.S. Dist. LEXIS 12579 (S.D. Cal. May 6, 1991)...................................... 10

*Barcia v. Contain-A-Way, Inc.*,
   2009 U.S. Dist. LEXIS 17118 (S.D. Cal. Mar. 6, 2009) ..................................... 24

*Bauman v. DaimlerChrysler Corp.*,
   --- F.3d ---, 2011 WL 1879210 (9th Cir. May 18, 2011)..................................... 14

*B-K Lighting, Inc. v. Vision3 Lighting*,
   2009 U.S. Dist. LEXIS 111968 (C.D. Cal. Nov. 16, 2009)................................. 20

*Blum v. Stenson*,
   465 U.S. 886 (1984)................................................................................... 18, 19

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980)............................................................................................ 9

*Brazil v. Dell Inc.*,
   2012 U.S. Dist. LEXIS 47986 (N.D. Cal. Apr. 4, 2012) ................................... 12

*Broughton v. Cigna Healthplans*,
   21 Cal. 4th 1066 (1999) ..................................................................................... 2

*Camacho v. Bridgeport Fin., Inc.*,
   523 F.3d 973 (9th Cir. 2008) ........................................................................... 18

*Champion Produce, Inc. v. Ruby Robinson Co.*,
   342 F.3d 1016 (9th Cir. 2003) ........................................................................... 2

*Chavez v. Netflix, Inc.*,
   162 Cal. App. 4th 43 (2008) .............................................................................. 7

*Cohorst v. BRE Properties, Inc.*,
   2012 WL 153754 (S.D. Cal. Jan. 18, 2012).................................................... 10

*Cook v. Niedert*,
   142 F.3d 1004 (7th Cir. 1998) ......................................................................... 24

*Craft v. County of San Bernardino*,
   624 F. Supp. 2d 1113 (C.D. Cal. 2008) ..................................................... 7, 8, 9

*Delarosa v. Boiron, Inc.*,
   275 F.R.D. 582 (C.D. Cal. 2011) ..................................................................... 14

iii

*Dennis v. Kellogg Co.*,
   2012 U.S. App. LEXIS 14385 (9th Cir. July 13, 2012)...........................................17

*Dunk v. Ford Motor Co.*,
   48 Cal. App. 4th 1794 (1996) ..............................................................................7, 21

*Farmers Ins. Exch. v. Sayas*,
   250 F.3d 1234 (9th Cir. 2001) .....................................................................................2

*Flannery v. Cal. Highway Patrol*,
   61 Cal. App. 4th 629 (1998) ........................................................................................6

*Glendora Cmty. Redevelopment Agency v. Demeter*,
   155 Cal. App. 3d 465 (1984) ...............................................................................11, 22

*Graciano v. Robinson Ford Sales, Inc.*,
   144 Cal. App. 4th 140 (2006) ......................................................................................3

*Grant v. Martinez*,
   973 F.2d 96 (2d Cir. 1992)..........................................................................................20

*Greene v. Dillingham Constr. NA., Inc.*,
   101 Cal. App. 4th 418 (2002) ....................................................................................15

*Hall v. AT&T Mobility LLC*,
   2010 WL 4053547 (D.N.J. Oct. 13, 2010)................................................................10

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ...............................................................................7, 21

*Harris v. Brinkerhoff*,
   No. 90-3100-DT(JRx) (C.D. Cal. Feb. 21, 1995) .....................................................10

*Hartless v. Clorox Co.*,
   273 F.R.D. 630 (S.D. Cal. 2011) ...............................................................................24

*Hensley v. Eckhart*,
   461 U.S. 424, 436 (1983)......................................................................................11, 18

*Heston v. Taser Int'l., Inc.*,
   431 Fed. Appx. 586 (9th Cir. 2011)............................................................................6

*In re Activision Sec. Litig.*,
   723 F. Supp. 1373 (N.D. Cal. 1989) ..................................................................7, 9, 10

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) .............................................................................4, 17, 21

iv

*In re Ferrero Litig.*,
  2012 U.S. Dist. LEXIS 94900 (S.D. Cal. July 9, 2012) ................................ 12, 19

*In re First Fidelity Bancorp. Sec. Litig.*,
  750 F. Supp. 160 (D.N.J. 1990) ................................................................. 8

*In re Heritage Bond Litig. v. U.S. Trust Co. of Tex., N.A.*,
  2005 U.S. Dist. LEXIS 13627 (C.D. Cal. June 10, 2005) ........................... 10, 11

*In re HP Power Plug & Graphic Card Litig.*,
  2008 U.S. Dist. LEXIS 111427 (N.D. Cal. July 8, 2008) ............................ 24

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
  194 F.R.D. 166 (E.D. Pa. 2000) ................................................................. 10

*In re Mego Fin. Corp. Secs. Litig.*,
  213 F.3d 454 (9th Cir. 2000) .................................................................... 8, 10

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ..................................................... 16

*In re Pac. Enters. Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995) ...................................................................... 8

*In re Public Serv. Co. of N.M.*,
  1992 U.S. Dist. LEXIS 16326 (S.D. Cal. July 28, 1992) ............................ 9

*In re Reformulated Gasoline (RFG) Antitrust and Patent Litig.*,
  MDL Case No. 05-1671 CAS (VBK) (C.D. Cal. Nov. 24, 2008) .................. 10

*In re Remeron Direct Purchaser Antitrust Litig.*,
  2005 U.S. Dist. LEXIS 27013 (D.N.J. Nov. 9, 2005) .................................. 8

*In re Rite Aid Corp. Sec. Litig.*,
  396 F.3d 294 (3d Cir. 2005) ...................................................................... 21

*In re TSO Fin. Litig.*,
  1989 U.S. Dist. LEXIS 8253 (E.D. Pa. July 17, 1989) ............................... 8

*In re Warfarin Sodium Antitrust Litig.*,
  212 F.R.D. 231 (D. Del. 2002) .................................................................. 13

*In re Xoma Corp. Sec. Litig.*,
  1992 U.S. Dist. LEXIS 10502 (N.D. Cal. July 10, 1992) ............................ 10

*Jack v. Hartford Fire Ins. Co.*,
  2011 WL 4899942 (S.D. Cal. Oct. 13, 2011) ............................................ 10

v

*Gallucci v. Boiron, Inc., et al.*, Case No. 11-CV-2039 JAH NLS
MEMORANDUM IN SUPPORT OF MOTION FOR APPROVAL OF ATTORNEY FEES AND INCENTIVE AWARDS

*Keating v. Super. Ct.*,
  31 Cal. 3d 584 (1982) ........................................................................................... 6

*Keith v. Volpe*,
  501 F. Supp. 403 (C.D. Cal. 1980) ...................................................................... 22

*Kerr v. Screen Extras Guild, Inc.*,
  526 F.2d 67 (9th Cir. 1975) ................................................................................. 18

*Ketchum v. Moses*,
  24 Cal. 4th 1122 (Cal. 2001) ................................................................... 15, 16, 18

*Kim v. Euromotors West/The Auto Gallery*,
  149 Cal. App. 4th 170 (2007) ............................................................................... 3

*Knight v. Red Door Salons, Inc.*,
  2009 U.S. Dist. LEXIS 11149 (N.D. Cal. 2009) .................................................. 7

*Kona Enters. v. Estate of Bishop*,
  229 F.3d 877 (9th Cir. 2000) ................................................................................. 2

*Lealao v. Beneficial Cal., Inc.*,
  82 Cal. App. 4th 19 (2000) ........................................................................... passim

*Louie v. Kaiser Found. Health Plan, Inc.*,
  2008 U.S. Dist. LEXIS 78314 (S.D. Cal. Oct. 6, 2008) ..................................... 24

*Lyons v. Chinese Hosp. Ass'n*,
  136 Cal. App. 4th 1331 (2006) .............................................................................. 6

*Margolin v. Regional Planning Com.*,
  134 Cal. App. 3d 999 (1982) ............................................................................... 21

*Martin v. AmeriPride Servs.*,
  2011 WL 2313604 (S.D. Cal. June 9, 2011) ....................................................... 16

*Masters v. Wilhelmina Model Agency, Inc.*,
  473 F.3d 423 (2d Cir. 2007) .................................................................................. 9

*Mathis v. Spears*,
  857 F.2d 749 (Fed. Cir. 1988) ............................................................................. 20

*McPhail v. First Command Fin. Planning, Inc.*,
  2009 U.S. Dist. LEXIS 26544 (S.D. Cal. Mar. 30, 2009) ...................... 8, 10, 11

*Meyer v. Sprint Spectrum L.P.*,
  45 Cal. 4th 634 (2009) .......................................................................................... 2

vi

*Nightingale v. Hyundai Motor Am.*,
    31 Cal. App. 4th 99 (1994) ................................................................ 21

*Parkinson v. Hyundai Motor Am.*,
    796 F. Supp. 2d 1160 (C.D. Cal. 2010) ..................................... 6, 22

*Paul, Johnson, Alston & Hunt v. Graulty*,
    886 F.2d 268 (9th Cir. 1989) ............................................................. 6

*Prudential-Bache Energy Income P'ships Sec. Litig.*,
    1994 WL 202394 (E.D. La. May 18, 1994) ................................... 10

*Rader* v. *Thrasher*,
    57 Cal. 2d 244 (1962) ....................................................................... 15

*Razilov v. Nationwide Mut. Ins. Co.*,
    2006 U.S. Dist. LEXIS 82723 (D. Or. Nov. 13, 2006) ................ 24

*Reveles v. Toyota by the Bay*,
    57 Cal. App. 4th 1139 (1997) ............................................................. 3

*Rodriguez v. West Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ........................................................... 23

*Romero v. Producers Dairy Foods, Inc.*,
    2007 U.S. Dist. LEXIS 86270 (E.D. Cal. Nov. 13, 2007) ........ 8, 10

*San Bernardino Valley Audubon Soc'y v. San Bernardino*,
    155 Cal. App. 3d 738 (1984) ........................................................... 21

*Schwarz v. Sec'y of Health & Human Servs.*,
    73 F.3d 895 (9th Cir. 1995) ............................................................. 18

*Science App. Int'l Corp. v. Super. Ct.*,
    39 Cal. App. 4th 1095 (1995) ......................................................... 23

*Serrano v. Priest*,
    20 Cal. 3d 25 (1977) ........................................................... 2, 6, 7, 21

*Sheppard v. Consol. Edison Co. of N.Y., Inc.*,
    2002 U.S. Dist. LEXIS 16314 (E.D.N.Y. Aug. 1, 2002) ............. 23

*Simon v. Toshiba Am.*,
    2010 U.S. Dist. LEXIS 42501 (N.D. Cal. Apr. 30, 2010) ............ 24

*Singer v. Becton Dickinson & Co.*,
    2010 U.S. Dist. LEXIS 53416 (S.D. Cal. June 1, 2010) ............... 24

vii

*Gallucci v. Boiron, Inc., et al.*, Case No. 11-CV-2039 JAH NLS
MEMORANDUM IN SUPPORT OF MOTION FOR APPROVAL OF ATTORNEY FEES AND INCENTIVE AWARDS

*Six Mexican Workers v. Arizona Citrus Growers*,
   904 F.2d 1301 (9th Cir. 1990) ........................................................................... 7

*Steiner v. Am. Broad. Co., Inc.*,
   2007 WL 2460326 (9th Cir. Aug. 29, 2007)..................................................... 22

*Sternwest Corp. v. Ash*,
   183 Cal. App. 3d 74 (1986) ............................................................................. 22

*Tasso Koumoulis v. LPL Fin. Corp.*,
   2010 U.S. Dist. LEXIS 124117 (S.D. Cal. Nov. 19, 2010) .............................. 11

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) ........................................................................ 7, 11

*Touhey v. U.S.*,
   2011 WL 3179036 (C.D. Cal. July 25, 2011) .................................................. 16

*Trustees of Cent. States v. Golden Nugget, Inc.*,
   697 F. Supp. 1538 (C.D. Cal. 1988) ............................................................... 21

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
   896 F.2d 403 (9th Cir. 1990) ........................................................................... 19

*Van Vraken v. Atlantic Richfield Co.*,
   901 F. Supp. 294 (N.D. Cal. 1995) ....................................................... 7, 23, 24

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ...................................................................passim

*Wang v. Massey Chevrolet*,
   97 Cal. App. 4th 856 (2002) .............................................................................. 3

*Weeks v. Kellogg Co.*,
   2011 U.S. Dist. LEXIS 155472 (C.D. Cal. Nov. 23, 2011).............................. 17

*Weinberget v. Great Northern  Nekoosa Corp.*,
   925 F.2d 518 (1st Cir. 1991)............................................................................ 18

*Wershba v. Apple Computer, Inc.*,
   91 Cal. App. 4th 224 (2001) .................................................................. 7, 21, 22

*Williams v. MGM-Pathe Commc'ns Co.*,
   129 F.3d 1026, 1027 (9th Cir. 1997) ................................................................. 9

**STATUTES**

21 U.S.C. § 301, *et seq.*................................................................................4

Cal. Civ. Code § 1021.5..............................................................................2, 5

Cal. Civ. Code § 1750...................................................................................2

Cal. Civ. Code § 1752...................................................................................3

Cal. Civ. Code § 1760...................................................................................2

Cal. Civ. Code § 1780(e)...............................................................................2

**RULES**

Cal. Code Civ. P. § 1033.5...........................................................................22

Cal. Code Civ. P. §§ 384(a)-(b) ....................................................................17

Fed. R. Civ. P. 23(e)(1)..................................................................................1

Fed. R. Civ. P. 23(h) .....................................................................................1

Fed. R. Civ. P. 52(a) .....................................................................................1

Fed. R. Civ. P. 54(d)(2)(C) ...........................................................................1

**OTHER AUTHORITIES**

Conte, Attorney Fee Awards (2d ed. 1993) ..................................................22

Federal Judicial Center, MANUAL FOR COMPLEX LITIGATION (FOURTH) 2004 .............................1, 2, 19

Newberg and Conte, NEWBERG ON CLASS ACTIONS §14.6 (4th ed. 2007) ...............................8

Posner, *Economic Analysis of Law* (4th ed. 1992).......................................15

Silber and Goodrich, *Common Funds and Common Problems: Fee Objections and Class
Counsel's Response*, 17 Rev. Litig. 525 (1998)........................................8, 9

ix

*Gallucci v. Boiron, Inc., et al.,* Case No. 11-CV-2039 JAH NLS
MEMORANDUM IN SUPPORT OF MOTION FOR APPROVAL OF ATTORNEY FEES AND INCENTIVE AWARDS

# I.    INTRODUCTION AND SUMMARY OF ARGUMENT

This Motion is made pursuant to the Court's April 25, 2012 Order Granting Preliminary Approval. Dkt. No. 89. Class Counsel were ordered to move for attorney's fees and costs 37 days before the Final Approval Hearing, currently set for August 27. *See* Dkt. No. 91. For the reasons set forth herein, the Court should, respectfully, award attorney's fees to Class Counsel in the amount of $1.5 million, which represents a modest upward adjustment to 30% from the Ninth Circuit's "benchmark" of 25% in common fund cases. This adjustment is justified based on several factors, especially the exceptional results that Class Counsel achieved for the Class. The fairness of the fee requested is supported by a lodestar cross-check demonstrating a modest multiplier of 1.99, even without including the undeniable value of the injunctive relief obtained, which Boiron has estimated may cost it as much as $7 million. Class Counsel also seek reimbursement of $9,782.96 in costs, as provided by statute and which were otherwise reasonably necessary to successfully prosecute this action. Finally, Plaintiffs respectfully request incentive awards to the Class Representatives in the amount of $3,500 for Salvatore Gallucci, who initiated this action, and $1,000 each for the four remaining Class Representatives, for a total of $7,500 in incentive awards.

# II.    STANDARD OF REVIEW

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The decision to award attorney's fees "is committed to the sound discretion" of the court, and should be based on "the unique contours of the case." Federal Judicial Center, MANUAL FOR COMPLEX LITIGATION (FOURTH) § 14.121 (2004) [hereafter "Manual for Complex Litigation"]. In a class action, the court follows Rule 23(h), and the "fundamental focus is the result actually achieved for class members." *Id.* at § 21.71 (citing Fed. R. Civ. P. 23(h) committee note).

Notice to the Class of an attorney's fee motion is required, which is ordinarily accomplished in a settlement class by including information about the hearing and motion within the class notice itself. *See* Fed. R. Civ. P. 23(e)(1). The court must issue findings of fact and conclusions of law in a ruling on attorney's fees. Fed. R. Civ. P. 52(a), 54(d)(2)(C).

1

*Gallucci v. Boiron, Inc., et al.*, Case No. 11-CV-2039 JAH NLS
MEMORANDUM IN SUPPORT OF MOTION FOR APPROVAL OF ATTORNEY FEES AND INCENTIVE AWARDS

# III.   ARGUMENT

## A.   BASES FOR AN AWARD OF ATTORNEY'S FEES AND EXPENSES

"An award of attorneys' fees incurred in a suit based on state substantive law is generally governed by state law." *Champion Produce, Inc. v. Ruby Robinson Co.*, 342 F.3d 1016, 1024 (9th Cir. 2003); *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Kona Enters. v. Estate of Bishop*, 229 F.3d 877, 883 (9th Cir. 2000). Under California law, the Court awards reasonable attorneys' fees and costs where, as here, a litigant proceeding in a representative capacity secures a "substantial benefit" for a class of persons. *Serrano v. Priest*, 20 Cal. 3d 25, 38 (1977). "The task of a federal court in a diversity action is to approximate state law [regarding attorneys' fee awards] as closely as possible in order to make sure that the vindication of the state right is without discrimination because of the federal forum." *Farmers Ins. Exch. v. Sayas*, 250 F.3d 1234, 1236 (9th Cir. 2001).

## B.   CALIFORNIA LAW PROVIDES FEES FOR SUCCESSFULLY PROSECUTING CONSUMER FRAUD CLAIMS

"Shifting fees in a statutory-fee case serves the public policy of encouraging private enforcement of statutory or constitutional rights." Manual for Complex Litigation § 14.13. California has two statutes providing for an award of attorney fees here, the Consumer Legal Remedies Act (Civ. Code § 1750, *et seq.*, "CLRA") and the private attorney general statute (Civ. Code § 1021.5).

### 1.   Plaintiffs are "Prevailing Plaintiffs," Entitled to Fees and Costs under the CLRA

The CLRA provides a fee-shifting provision directing that "[t]he court shall award court costs and attorney's fees to a prevailing plaintiff in litigation filed pursuant to this section." Cal. Civ. Code § 1780(e). "[T]he availability of costs and attorney's fees to prevailing plaintiffs is integral to making the CLRA an effective piece of consumer legislation, increasing the financial feasibility of bringing suits under the statute." *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 644 (2009) (quoting *Broughton v. Cigna Healthplans*, 21 Cal. 4th 1066 (1999)).

The CLRA "shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." Cal. Civ. Code § 1760; *see also Wang v. Massey*

2

*Gallucci v. Boiron, Inc., et al.*, Case No. 11-CV-2039 JAH NLS
MEMORANDUM IN SUPPORT OF MOTION FOR APPROVAL OF ATTORNEY FEES AND INCENTIVE AWARDS

1    *Chevrolet*, 97 Cal. App. 4th 856, 869 (2002). An award of attorney fees to "a prevailing plaintiff" in an

2    action brought pursuant to the CLRA is mandatory, even where the litigation is resolved by a pretrial

3    settlement agreement. *Kim v. Euromotors West/The Auto Gallery*, 149 Cal. App. 4th 170, 178-79

4    (2007). In the settlement of a CLRA claim, a plaintiff prevails if there is a "net monetary recovery,"

5    *Reveles v. Toyota by the Bay*, 57 Cal. App. 4th 1139, 1151 (1997), or where she is "denied direct relief"

6    but nonetheless the lawsuit "has otherwise achieved its main litigation objective." *Graciano v.*

7    *Robinson Ford Sales, Inc.*, 144 Cal. App. 4th 140, 151 (2006); *see also Kim*, 149 Cal. App. 4th at 178-

8    81 (discussing *Reveles* and *Graciano* and concluding court may determine if plaintiff prevailed if "he

9    obtained a net monetary recovery or because he achieved most or all of what he wanted by filing the

10   action or a combination of the two"). The remedies under the CLRA are not exclusive. Cal. Civ. Code §

11   1752.

12          While either is sufficient, here, both factors are present. Plaintiffs' First Amended Complaint

13   alleged violation of the CLRA and Plaintiffs obtained a net monetary recovery, achieving "most or all

14   of what" they wanted by filing this action: (1) changes to Boiron's current labeling and advertising—on

15   the Products' packaging, and online; (2) a $5 million fund to provide restitution of up to $100 per Class

16   claimant, with any remaining funds distributed half to class members in a supplemental distribution,

17   and half *cy pres* in a manner designed to benefit the Class; (3) precedents that will assist other

18   consumers in vindicating claims for consumer fraud, in particular, as to the loosely regulated

19   homeopathic Products at issue here; (4) a deterrent to other homeopathic and supplement companies

20   that are tempted to engage in deceptive advertising or make exaggerated effectiveness claims; and (5)

21   achievement of injunctive relief that accomplishes, in effect, what consumer groups have petitioned the

22   Food and Drug Agency ("FDA") to implement, but which the FDA has, to date, not taken any action.

23   *See Kim*, 149 Cal. App. 4th at 178-81; Settlement Agreement (Dkt. No. 64-2, hereafter "Settlement

24   Agreement") at 10-34, 54; Decl. of Ronald A. Marron filed concurrently herewith ("Marron Decl."),

25   Ex. 1 (Citizen Petition requesting that FDA require packaging and advertisements for all homeopathic

26   drugs "to carry a warning label stating: 'WARNING: The FDA has not determined that this product is

27   safe, effective, and not misbranded for its intended use.'"), Ex. 2 (FDA's Response to Citizen Petition).

28

In addition to the significant monetary relief, injunctive relief that is "'socially beneficial' . . . justif[ies] a fee award under" the CLRA. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 944 (9th Cir. 2011). Class Counsel negotiated for two product disclaimers in this case that will provide a significant social benefit. The first set of disclaimers that Class Counsel achieved relate to the dilution level of Defendants' Products. Plaintiffs claimed that Defendants labeled and marketed their homeopathic drugs with misleading and false claims, such as, that the dilution designator of "CK" on Oscillococcinum ("Oscillo") was deceptive because consumers were not aware of the astronomically high level of dilution that "CK" represented. Mot. in Supp. of Prelim. Approval (Dkt. No. 64-1) at 4:13-19. As a condition of settlement, Class Counsel required Boiron to place a detailed dilution disclaimer on the packaging of every one of its Products, directing consumers to investigate homeopathic dilution designations via a link on Boiron's main web page. *Id.* at 4:20-26. Plaintiffs also required, as a settlement condition, that Boiron create a dilution explanation page, using language understandable to the average consumer, on Boiron's main web page and the main web page of every Product web site Boiron owns. *Id.*; *see also* Settlement Agreement, Ex. E (Dkt. 64-2 at p. 54), new Dilution Disclaimer web page.

The second set of disclaimers relates to the fact that the FDA does not review homeopathic drugs, to verify the accuracy of the Products' Indications of Use—a Food, Drug and Cosmetic Act (21 U.S.C. § 301, *et seq.*, "FDCA") term that means what ailment the Product is intended to treat. Class Counsel required Boiron to place, on each of its Products' packaging, and any advertising containing a readable version of a Product label, a disclaimer that the FDA does not review the Products for efficacy, or review or approve Defendants' product labeling. Settlement Agreement ¶ 4.1.2.

Boiron was also required to ensure that a link to the FDA's official web site, containing FDA's policies regarding homeopathic drugs, be maintained as a working link on Boiron's web site. *Id.* ¶ 4.1.4.4. This achieves a significant social benefit, by educating consumers about the loose nature of regulations that apply to over-the-counter ("OTC") homeopathic products versus OTC non-homeopathic products, which are shelved next to each other in stores. As with all health care products, Plaintiffs believed that informed choice is the only proper way to sell OTC drugs and remedies.

4

*Gallucci v. Boiron, Inc., et al.*, Case No. 11-CV-2039 JAH NLS
MEMORANDUM IN SUPPORT OF MOTION FOR APPROVAL OF ATTORNEY FEES AND INCENTIVE AWARDS

1    Without the two disclaimers, and the web site explanation, consumers are making health care decisions

2    without all necessary information to understand the true nature of the Products.

3         The injunctive relief, in the form of disclaimers, achieves a significant social benefit for the

4    Class, by enhancing the amount of accurate information available to consumers, and educating

5    consumers about the true nature of, and level of dilution in, Defendants' homeopathic Products. *See id.*

6    Ex. E (Dkt. 64-2 at p. 54). This injunctive relief accomplishes significant social benefit because health

7    care costs in the United States reached almost $2.6 trillion in 2010, with 10% of that amount spent on

8    retail    and    prescription    drugs.    *See*    http://www.kaiseredu.org/issue-modules/us-health-care-

9    costs/background-brief.aspx. By forcing drug manufacturers to disclose the complete truth to

10   consumers, the injunctive relief in this action will help ensure that consumers make careful decisions

11   about where to spend their limited healthcare dollars.

12        Further, a non-profit group, Center for Public Inquiry, recently petitioned the FDA to require

13   homeopathic drug manufacturers to label their products with a FDA disclaimer that uses language that

14   will, in effect, achieve what Plaintiffs and Class Counsel already achieved. *See* Marron Decl. Ex. 1.

15   Thus, Class Counsel were instrumental in achieving a social benefit for the Class, and accomplished

16   what Center for Public Inquiry believes is necessary with regard to products similar to the Products at

17   issue in this action. *See id.*

18        Finally, the Settlement Agreement helped achieve a significant social benefit because it has had

19   clear effect on the homeopathic industry as a whole, with other manufacturers voluntarily undertaking

20   similar changes in their labeling. *See* Marron Decl. ¶ 6.

21        **2.      Plaintiffs are "Successful Parties" Entitled to Fees & Costs Under the Private**

22                 **Attorney General Statute**

23   California Civil Code § 1021.5 provides for an award of attorneys' fees to a "successful party":

24              in any action which has resulted in the enforcement of an important right

25              affecting the public interest if (a) a significant benefit, whether pecuniary or

26              nonpecuniary, has been conferred on the general public or a large class of

27              persons, (b) the necessity and financial burden of private enforcement, or of

28

5

*Gallucci v. Boiron, Inc., et al.*, Case No. 11-CV-2039 JAH NLS
MEMORANDUM IN SUPPORT OF MOTION FOR APPROVAL OF ATTORNEY FEES AND INCENTIVE AWARDS

1    enforcement . . . are such as to make the award appropriate, and (c) such fees

2    should not in the interest of justice, be paid out of the recovery, if any.

3   *See generally Serrano*, 20 Cal. 3d 25.

4        "Similar to California's fee-shifting statute, the private attorney general statue makes a plaintiff

5   a 'successful party' if it achieves its litigation objectives." *Parkinson v. Hyundai Motor Am.*, 796 F.

6   Supp. 2d 1160, 1170 (C.D. Cal. 2010). The statute applies "when a plaintiff 'acts as a true private

7   attorney general, prosecuting a lawsuit that enforces an important public right and confers a significant

8   benefit, despite the fact that his or her own financial stake in the outcome would not by itself constitute

9   an adequate incentive to litigate.'" *Heston v. Taser Int'l., Inc.*, 431 Fed. Appx. 586, 589 (9th Cir. 2011)

10  (quoting *Flannery v. Cal. Highway Patrol*, 61 Cal. App. 4th 629, 635 (1998)). "The key question is

11  'whether the financial burden placed on the party [claiming fees] is out of proportion to its personal

12  stake in the lawsuit.'" *Id.* (quoting *Lyons v. Chinese Hosp. Ass'n*, 136 Cal. App. 4th 1331, 1351

13  (2006)).[1] Here, the Boiron Products typically retailed for under $20, so buyers could not possibly have

14  a stake adequate to litigate.

15       **3.      There is an Equitable Basis for the Award of Attorney's Fees**

16       Class actions serve the policy goals of efficient judicial management, by setting a procedure

17  whereby one judgment covers all claimants, ensuring that the rights of citizens are exonerated even

18  where their individual claims are relatively small and/or their financial means are lean, such that an

19  attorney would be unlikely to accept the financial risk of individual representation. *Keating v. Super.*

20  *Ct.*, 31 Cal. 3d 584, 609 (1982); *Serrano*, 20 Cal. 3d at 34. Accordingly, "it is well settled that the

21  lawyer who creates a common fund is allowed an *extra* reward, so that he might share the wealth of

22  those upon whom he has conferred a benefit." *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268,

23  271 (9th Cir. 1989); *see also Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977).

24

25

26

27  ---

28  [1] That an action is brought on a contingency basis does not undermine a plaintiff's request for
    attorneys' fees under the statute. *Lyons*, 136 Cal. App. 4th at 1351.

*Gallucci v. Boiron, Inc., et al.*, Case No. 11-CV-2039 JAH NLS
Memorandum in Support of Motion for Approval of Attorney Fees and incentive awards

1 **C. THE COURT SHOULD APPLY THE PERCENTAGE OF THE FUND METHOD TO**

2 **DETERMINE CLASS COUNSEL'S REASONABLE FEE**

3   The Ninth Circuit approves "two separate methods for determining attorneys' fees," *i.e.*, the

4 percentage-of-fund, and lodestar/multiplier methods. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029

5 (9th Cir. 1998). However, federal courts, including the Ninth Circuit, have developed a strong

6 preference for using a percentage of the recovery method. *Six Mexican Workers v. Arizona Citrus*

7 *Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).

8   Likewise, California "[c]ourts recognize two methods for calculating attorney fees in civil class

9 actions: the lodestar/multiplier and the percentage of recovery method." *Wershba v. Apple Computer,*

10 *Inc.*, 91 Cal. App. 4th 224, 254 (2001). *See also Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19, 26,

11 48 (2000) ("Percentage fees have traditionally been allowed in such common fund cases," and

12 percentage of benefit method is result-oriented rather than process-oriented); *Dunk v. Ford Motor Co.*,

13 48 Cal. App. 4th 1794, 1809 (1996) (recognizing that the percentage method is appropriate where "the

14 amount was a 'certain or easily calculable sum of money'") (citing *Serrano*, 20 Cal. 3d at 35; *Chavez v.*

15 *Netflix, Inc.*, 162 Cal. App. 4th 43, 65-66 (2008)). The key advantage of the percentage method is that it

16 focuses on the benefit conferred on the class, resulting from the efforts of counsel.

17 **D. CLASS COUNSEL'S REQUESTED FEE REQUEST OF 30% OF THE COMMON**

18 **FUND IS FAIR AND REASONABLE**

19   **1. Fees Totaling 30% of a Common Fund are Often Held Reasonable**

20   The Ninth Circuit has "established 25% . . . as the 'benchmark' award for attorney fees." *See*,

21 *e.g.*, *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993); *Six Mexican Workers*, 904

22 F.2d at 1311. "However, in most common fund cases, the award exceeds that benchmark.'" *Knight v.*

23 *Red Door Salons, Inc.*, 2009 U.S. Dist. LEXIS 11149, at *17 (N.D. Cal. 2009) (citing *In re Activision*

24 *Sec. Litig.*, 723 F. Supp. 1373, 1377-78 (N.D. Cal. 1989) ("nearly all common fund awards range

25 around 30%")). Additionally, "[c]ases of under $10 Million will often result in result in fees above

26 25%." *Craft v. County of San Bernardino*, 624 F. Supp. 2d 1113, 1127 (C.D. Cal. 2008) (emphasis

27 added) (citing *Van Vraken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 297-98 (N.D. Cal. 1995)). *See*

28

7

*Gallucci v. Boiron, Inc., et al.*, Case No. 11-CV-2039 JAH NLS
MEMORANDUM IN SUPPORT OF MOTION FOR APPROVAL OF ATTORNEY FEES AND INCENTIVE AWARDS

*also In re First Fidelity Bancorp. Sec. Litig.*, 750 F. Supp. 160, 163 (D.N.J. 1990) (citing *In re TSO Fin. Litig.*, 1989 U.S. Dist. LEXIS 8253 (E.D. Pa. July 17, 1989), slip op. at appendix ("cases with total awards below $12 million . . . showed fee awards at percentages of 25% or above")).

Moreover, while 25% is the benchmark, district courts have often granted, and the Ninth Circuit has affirmed, awards of attorneys' fees at or above a 30% fee. *See, e.g., In re Mego Fin. Corp. Secs. Litig.*, 213 F.3d 454, 457, 463 (9th Cir. 2000) (affirming fee award of one third of fund); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (award of 33% of settlement fund as fees affirmed); *McPhail v. First Command Fin. Planning, Inc.*, 2009 U.S. Dist. LEXIS 26544, at *20-21 (S.D. Cal. Mar. 30, 2009) (awarding 30% for first $10 million and 25% for additional $2 million settlement).

"Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery." *Romero v. Producers Dairy Foods, Inc.*, 2007 U.S. Dist. LEXIS 86270, at *10 (E.D. Cal. Nov. 13, 2007) (citing Newberg and Conte, NEWBERG ON CLASS ACTIONS §14.6 (4th ed. 2007)). "One study . . . found that most fee awards in common fund class actions were between 20% and 40% of the gross monetary settlement, [while another study] . . . found that attorneys' fees in these class actions averaged approximately 32% of the recovery . . . and averaged 34.74% when the fees and expenses were added together." *Craft*, 624 F. Supp. 2d at 1124 (citing Silber and Goodrich, *Common Funds and Common Problems: Fee Objections and Class Counsel's Response*, 17 Rev. Litig. 525, 546-49 (1998) [hereafter "Silber and Goodrich"]).

Furthermore, in individual contingency cases, "attorneys 'regularly contract for . . . fees between 30% and 40%.'" *Craft*, 624 F. Supp. 2d at 1124 (quoting *In re Remeron Direct Purchaser Antitrust Litig.*, 2005 U.S. Dist. LEXIS 27013 (D.N.J. Nov. 9, 2005)). And, "[g]iven the unique reliance of our legal system on private litigants to enforce substantive provisions of the law through class . . . actions, attorneys providing the essential enforcement services must be provided incentives roughly comparable to those negotiated . . . in the legal marketplace." *Lealao*, 82 Cal. App. 4th at 47. Accordingly, the trial court has the discretion to use a multiplier as "necessary to ensure that the fee

8

*Gallucci v. Boiron, Inc., et al.*, Case No. 11-CV-2039 JAH NLS
MEMORANDUM IN SUPPORT OF MOTION FOR APPROVAL OF ATTORNEY FEES AND INCENTIVE AWARDS

awarded is within the range of fees freely negotiated in the legal marketplace in comparable litigation." *Id.* at 50. Thus, "a 33% fee award is both reasonable, and in line with the general market for contingent fee work." *Craft*, 624 F. Supp. 2d at 1124 (citing Silber and Goodrich at 546-49). *See also In re Activision Sec. Litig.*, 723 F. Supp. at 1375 ("Adoption of a policy of awarding approximately 30% . . . as attorneys' fees in the ordinary case is well-justified in light of the lengthy line of cases which find such an award appropriate and reasonable.").

Importantly, in determining the amount of the benefit conferred, the appropriate measure is the total recovery available for the class, not the amount actually claimed by class members. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 480-81 (1980); *see also Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997). This method recognizes that the efforts of class counsel established the entire settlement, including nonmonetary benefits, for the benefit of the entire class. *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007) (citing *Williams*, 129 F.3d at 1027); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1049 (9th Cir. 2002) ("Incidental or non-monetary benefits conferred by the litigation are a relevant circumstance."). Here, the cost to Boiron to implement the injunctive relief is estimated at $7 million, which provides a touchstone for the potential benefit to the Class of less deceptive advertising and product labels. *See* Decl. of Mark Land in Supp. of Mot. for Prelim. Approval, Dkt. No. 64-4 ("Land Decl.").

Without taking into account the value of injunctive relief, the common fund in this case is $5 million. *See* Settlement Agreement § 4.2. Class Counsel request a fee award of 30% of the monetary settlement value created by Counsel's efforts. When viewed in light of the cost of injunctive relief to Defendants and therefore a total settlement value of $12 million to the Class, Counsel's requested fees amount to just 12.5%. Further, counsel achieved the Settlement without trial and extended litigation, which would only have increased the costs ultimately borne by the Class. Counsel should be justly rewarded for obtaining relief in a timely and efficient manner.

The requested award is similar to those awarded in class actions by California courts. *See*, *e.g.*, *In re Public Serv. Co. of N.M.*, 1992 U.S. Dist. LEXIS 16326 (S.D. Cal. July 28, 1992) (awarding 33.3%); *Antonopulos v. N. Am. Thoroughbreds, Inc.*, 1991 U.S. Dist. LEXIS 12579 (S.D. Cal. May 6,

9

*Gallucci v. Boiron, Inc., et al.,* Case No. 11-CV-2039 JAH NLS
MEMORANDUM IN SUPPORT OF MOTION FOR APPROVAL OF ATTORNEY FEES AND INCENTIVE AWARDS

1991) (awarding 33.3%); *McPhail*, 2009 U.S. Dist. LEXIS 26544, at *20-21 (awarding 30% for first $10 million and 25% for additional $2 million settlement); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 454 (approving an award of 33.3% plus costs); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373 (awarding 33%); *Romero*, 2007 U.S. Dist. LEXIS 86270 (awarding a fee of 33% plus costs); *In re Xoma Corp. Sec. Litig.*, 1992 U.S. Dist. LEXIS 10502 (N.D. Cal. July 10, 1992) (awarding 30% plus costs); *In re Activision Sec. Litig.*, 723 F. Supp. at 1373 (awarding 32.8% plus costs); *In re Heritage Bond Litig. v. U.S. Trust Co. of Tex., N.A.*, 2005 U.S. Dist. LEXIS 13627 (C.D. Cal. June 10, 2005) (awarding 33.3%); *In re Reformulated Gasoline (RFG) Antitrust and Patent Litig.*, MDL Case No. 05-1671 CAS (VBK) (C.D. Cal. Nov. 24, 2008) (awarding 33.3% plus costs); *Harris v. Brinkerhoff*, No. 90-3100-DT(JRx) (C.D. Cal. Feb. 21, 1995) (awarding 35% plus costs); *Jack v. Hartford Fire Ins. Co.*, 2011 WL 4899942 (S.D. Cal. Oct. 13, 2011) (awarding 30% plus costs); *Cohorst v. BRE Properties, Inc.*, 2012 WL 153754 (S.D. Cal. Jan. 18, 2012) (awarding 28% in fees, and defendant agreed not to contest fee application).

In addition, a 30% fee based on the percentage of recovery method is consistent with negotiated fees in the private marketplace where contingent fee attorneys typically negotiate percentage fees with their clients. *See, e.g.*, *Hall v. AT&T Mobility LLC*, 2010 WL 4053547, at *21 (D.N.J. Oct. 13, 2010) ("The requested fee of 33 1/3% is also consistent with a privately negotiated contingent fee in the marketplace."); *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("[I]n private contingency fee cases, particularly in tort matters, [Lead Counsel] routinely negotiate agreements providing for between thirty and forty percent of any recovery."); *Blum v. Stenson*, 465 U.S. 886, 904 (1984) ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery." (concurring opinion)); *Prudential-Bache Energy Income P'ships Sec. Litig.*, 1994 WL 202394, at *2 (E.D. La. May 18, 1994) ("Were this not a class action, attorney's fees would range between 30% and 40%, the percentages commonly contracted for in contingency cases.").

10

*Gallucci v. Boiron, Inc., et al.*, Case No. 11-CV-2039 JAH NLS
MEMORANDUM IN SUPPORT OF MOTION FOR APPROVAL OF ATTORNEY FEES AND INCENTIVE AWARDS

## 2.      An Award of 30% of the Common Fund is Reasonable in this Case

"The 'benchmark percentage should be adjusted . . . when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors.'" *McPhail*, 2009 U.S. Dist. LEXIS 26544, at *19-20 (alterations in original) (quoting *Torrisi*, 8 F.3d at 1376). In adjusting the 25% benchmark sometimes used in class actions, courts consider all relevant factors, including: "(1) the result obtained for the class; (2) the effort expended by counsel; (3) counsel's experience; (4) the skill of counsel; (5) the complexity of the issues; (6) the risks of non-payment assumed by counsel; (7) the reaction of the class; and (8) comparison with counsel's lodestar." *In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13627, at *26. Courts also often consider the awards of attorney fees in similar cases. *E.g.*, *Tasso Koumoulis v. LPL Fin. Corp.*, 2010 U.S. Dist. LEXIS 124117 (S.D. Cal. Nov. 19, 2010) (citing *Vizcaino*, 290 F.3d at 1048-50).

Plaintiffs have already shown that an award of 30% is reasonable in light of awards in similar cases. *See*, *supra*, Part III.D.1. Consideration of the other factors also confirms an award of 30% is reasonable. For example, the Court may consider the $7 million financial commitment required of Boiron to effect the injunctive relief. The cost of labeling changes of the sort required, and revising web content, were estimated by Boiron's Vice President of Operations and Regulatory Affairs, Mark Land, to be up to $7 million. *See* Land Decl. Adding the $5 million in monetary relief to the Class yields $12 million. Thus, if the Court were to view the total value of the settlement to the Class at $12 million, Class Counsel only seek 12.5% as fees.

### a.      The Exceptional Results Obtained

In determining the reasonableness of attorney fees, "the most critical factor is the degree of success obtained." *Hensley v. Eckhart*, 461 U.S. 424, 436 (1983); *Glendora Cmty. Redevelopment Agency v. Demeter*, 155 Cal. App. 3d 465, 475 (1984); *Lealao*, 82 Cal. App. 4th at 40. In the legal marketplace, law firms that obtain exceptional results for their clients can and do expect that those exceptional results will be reflected in their fees.

Here, the resolution of this case represents an excellent result for consumers nationwide. In less than a year, Plaintiffs aggressively litigated this case, thereby obtaining Boiron's commitment to

11

*Gallucci v. Boiron, Inc., et al.*, Case No. 11-CV-2039 JAH NLS
MEMORANDUM IN SUPPORT OF MOTION FOR APPROVAL OF ATTORNEY FEES AND INCENTIVE AWARDS

effecting wide-ranging changes in the way it labels and advertises its products, a circumstance that will improve public knowledge. Class Counsel achieved refunds of up to $100 per household for purchasers with proof of purchase, and $50 for households without proof of purchase but signing claim forms under penalty of perjury. Settlement Agreement, ¶¶ 4.3.1, 4.3.2. Further, a supplemental payment to claimants is provided by the Settlement Agreement, if sufficient funds remain after payment of costs and fees. *Id.* ¶ 4.3.5. No monies revert to Defendants. *Id. See In re Ferrero Litig.*, 2012 U.S. Dist. LEXIS 94900, at *11-12 (S.D. Cal. July 9, 2012) (noting that Class Counsel obtained "excellent results . . . for the Class" where defendant agreed to "create[] a settlement fund of $550,000, against which California consumers can make claims . . . . modify the product label to address the fundamental claim raised in Plaintiffs' complaint. . . . [and] modify its television commercials and the marketing phrases at issue in the complaint.").

Class Counsel also achieved not one but two disclaimers. In fact, one of the disclaimers is strikingly similar to that recently requested by a non-profit citizen group in a petition to the FDA. *See* Marron Decl. Ex. 1. Thus, Class Counsel achieved what the FDA has been requested to consider, but has not taken action on yet. *Id.* Ex. 2. In addition, significant web site changes were made that will heighten consumer awareness, requiring Boiron to create a dilution explanation, in a language understandable to the average consumer, and to place the link to that page on the home page of every web site it owns. *See* Settlement Agreement, Ex. E. These disclaimers will have, and are already having, reverberating effects on other manufacturers of homeopathic drugs. *See* Marron Decl. ¶ 6.

Although injunctive relief of the type provided in the Settlement Agreement may be difficult to monetize, it undoubtedly has value for the Class. *See Brazil v. Dell Inc.*, 2012 U.S. Dist. LEXIS 47986, at *4 (N.D. Cal. Apr. 4, 2012) ("The structural changes to Dell's marketing practices resulting from this litigation, particularly Dell's elimination of allegedly false representations . . . conferred a benefit on both the class members and the public at large.") (citing *Vizcaino*, 290 F.3d at 1049 ("[i]ncidental or nonmonetary benefits conferred by the litigation" are factors in a fee application)). Indeed, there is intrinsic value to truth in advertising. *See id.*

12

*Gallucci v. Boiron, Inc., et al.*, Case No. 11-CV-2039 JAH NLS
MEMORANDUM IN SUPPORT OF MOTION FOR APPROVAL OF ATTORNEY FEES AND INCENTIVE AWARDS

### b.       The Effort, Skill, and Experience of Counsel

Class Counsel has extensive experience handling complex consumer class actions. Decl. of Ronald A. Marron in Supp. of Mot. for Prelim. App. ("Prelim. App. Marron Decl.," Dkt. No. 64-2), ¶¶ 15-26; Decl. of Jack Fitzgerald filed concurrently herewith ("Fitzgerald Decl.") ¶¶ 7-10. Further, Plaintiffs respectfully suggest that their track record in this case, as well as past cases, demonstrates the skill of their counsel. *See* Marron Decl. ¶¶ 10-18; Prelim. App. Marron Decl. ¶¶ 15-26; Decl. of Jack Fitzgerald in Support of Mot. to Consolidate & Appoint Interim Class Counsel, Dkt. No. 12-4 ¶¶ 2-20.

Class Counsel has already devoted more than 1,600 attorney and staff hours, and substantial costs, to litigating this class action. Marron Decl. ¶¶ 30, 32-33; Fitzgerald Decl. ¶¶ 25, 31. This included substantial discovery, reviewing more than 400,000 pages of documents. Prelim. App. Marron Decl. ¶ 11; Fitzgerald Decl. ¶ 2. Plaintiffs also engaged in significant motion practice; filed dozens of documents, and engaged in lengthy settlement negotiations over a period of five months, consisting of at least 13 mediation sessions. Mem. in Supp. of Mot. for Prelim. App., Dkt. No. 64-1, at 3. Moreover, Class Counsel was extremely efficient, bringing this action from filing to preliminary approval of a classwide settlement in only seven months. Finally, Class Counsel was forced to address  a slew of accusations and motions by a competing litigant intent on disrupting the Class's settlement.

Additionally, Class Counsel was able to achieve a substantial Settlement against a skilled defense team and deep-pocketed adversary. *See In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 261 (D. Del. 2002), *aff'd*, 391 F.3d 516 (3d Cir. 2004) (class counsel "showed their effectiveness . . . through the favorable class settlement they were able to obtain"). Boiron is the largest foreign-based seller of OTC homeopathic drugs in the United States. Opposing defense counsel are accomplished and respected attorneys at Patton Boggs LLP. Boiron's primary counsel, Christina Sarchio, is co-chair of the Firm's Government Investigations and Litigation practice group and has won several awards, including George Washington University's Belva Lockwood 2008 Woman of the Year award. *See* http://www.pattonboggs.com/csarchio/.

Boiron's other primary counsel, Vickie E. Turner, is a highly respected litigator. In addition to 30 years of experience as defense counsel, she has won numerous awards, including being named as

13

*Gallucci v. Boiron, Inc., et al.*, Case No. 11-CV-2039 JAH NLS
MEMORANDUM IN SUPPORT OF MOTION FOR APPROVAL OF ATTORNEY FEES AND INCENTIVE AWARDS

one of California's Top 25 Outstanding Lawyers by the Daily Journal's California Law Business; one of San Diego's top five product liability attorneys by San Diego Super Lawyers® in 2007, 2008, 2009, 2010 and 2011; named to The Best Lawyers in America® 2010 and 2011 in the area of product liability; and Defendants' Lawyer of the Year in the category, Best Lawyers' 2012 San Diego Product Liability Litigation. *See* http://www.wilsonturnerkosmo.com/attorneys/vickieturner/.

### c.    The Complexity of the Issues

This was not a simple case, involving many products and claims. Moreover, the Food, Drug, and Cosmetic Act is very long, has been frequently amended, and has lengthy and technical implementing regulations promulgated by the FDA, which were at issue in this case. The case was also complicated by issues of personal jurisdiction over foreign defendants under the then-recent Ninth Circuit decision in *Bauman v. DaimlerChrysler Corp.*, --- F.3d ---, 2011 WL 1879210 (9th Cir. May 18, 2011), as well as the scientific properties of Defendants' homeopathic products.

The complexity of the issues presented is demonstrated by the parties' briefings in the Motions to Dismiss brought by each Defendant. Dkt. Nos. 9, 11, 20-21. After Plaintiffs' Oppositions to both Motions were filed, Defendants filed an Emergency Motion to Reset Hearing Date, asking the Court for more time to respond, "due to the weighty matters raised in Defendants' motions to dismiss and Plaintiffs' oppositions thereto." Dkt. No. 23 at ¶ 7. Defendants then opted to withdraw their Motions and file an Answer. The complexity is also demonstrated by the five months it took to negotiate a settlement in this action. *See* Marron Decl. ¶ 31.

The issues in this case were not just complex, but were also novel, as there is scant authority on the requirements of OTC homeopathic drug manufacturers. *See Delarosa v. Boiron, Inc.*, 275 F.R.D. 582, 590 n.4 (C.D. Cal. 2011) (regarding CLRA, UCL and FAL claims about OTC homeopathic drug, and observing that "this action concerns novel legal theories in a specialized area of law"). Class Counsel are experienced in a specialized field of analyzing the FDCA and its implementing regulations, including the legislative history behind the statute and its many amendments over the years. *See*, *e.g.*, Dkt. No. 20. Resolution of the settlement terms required three joint, and ten separate mediation caucuses with defense counsel and the Honorable Leo S. Papas (Ret.), plus numerous follow-up

14

*Gallucci v. Boiron, Inc., et al.*, Case No. 11-CV-2039 JAH NLS
MEMORANDUM IN SUPPORT OF MOTION FOR APPROVAL OF ATTORNEY FEES AND INCENTIVE AWARDS

conferences between Class Counsel and defense counsel over the course of five months. Prelim. App. Marron Decl., ¶¶ 6-8, 12; Marron Decl. ¶ 31.

### d.    Risk of Non-Payment, Preclusion of Other Employment, and Ongoing Work

Devoting more than 1,760 attorney and staff hours and substantial costs to this action (e.g., including Class Counsel's estimated 150 post-filing hours, *see* App. 1 n.1.),[2] necessarily precluded other employment for Class Counsel. There was significant risk that Class Counsel, despite committing these resources, would not have received any compensation for its services. And Class Counsel's ability to collect compensation was entirely contingent upon it prevailing. The substantial risk of non-recovery inherent in class action litigation is well-documented. *See* Fitzgerald Decl. ¶¶ 28-30.

When attorneys undertake litigation on a contingent basis, a fee that is limited to the hourly fee that would have been paid by a fee-paying client, win or lose, is not a reasonable fee by market standards. *Greene v. Dillingham Constr. NA., Inc.*, 101 Cal. App. 4th 418, 428-29 (2002). Without the incentives of a premium for risk, most attorneys will not accept cases on a contingency basis.

A contingent fee must be higher than a fee for the same legal services paid as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services. The implicit interest rate on such a loan is higher because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much higher than that of conventional loans.

*Ketchum v. Moses*, 24 Cal. 4th 1122, 1132-33 (2001) (quoting the Hon. Richard Posner's *Economic Analysis of Law* (4th ed. 1992)); s*ee also Rader* v. *Thrasher*, 57 Cal. 2d 244, 253 (1962). Risk multipliers, therefore, are "intended to approximate market level compensation for . . . services, which

---

[2] Class Counsel's work is not yet done. Class Counsel still need to: (1) prepare for and attend the final approval hearing, including responses to objectors, if any (and from the history of this case, it seems nearly certain that Henry Gonzales and his counsel will file an objection); (2) oversee the claims administration process, including addressing any claim review issues and monitoring payments to the Settlement Class; (3) monitor the distribution of any *cy pres* funds remaining after all claims have been paid; (4) handle any appeals; and (5) disburse incentive awards and Class Counsel's fees and expenses.

typically includes a premium for risk of nonpayment or delay in payment of attorney fees." *Ketchum*, 24 Cal. 4th at 1138.

From the outset of this litigation to the present, Class Counsel litigated this matter on a contingent basis and placed their own resources at risk to do so. Because the fee in this matter was entirely contingent, the only certainty was that Class Counsel would not get paid unless they obtained a successful result. *See id.* Absent the Settlement, there was a sizeable risk that Plaintiffs, the Settlement Class, and their counsel would obtain no recovery at all. Indeed, there was no guarantee that Plaintiffs would succeed on class certification, summary judgment, trial or appeal. At no time has Boiron conceded liability, the appropriateness of class certification, or the availability of relief. Despite this uncertainty, Class Counsel obtained an excellent result on behalf of the Class.

In addition, the Settlement Agreement does not contain a "clear sailing" agreement and permits Defendants to contest the motion for attorney's fees. Thus, Class Counsel not only took a novel an difficult contingent case and spent their own resources pursuing it, but then settled the case with their fee still being contingent, representing additional risk.

### e.    Reaction of the Class

To date, no member of the Class has objected to the Settlement, and only one Class member has requested exclusion. Marron Decl. ¶ 8. Although Plaintiffs acknowledge that objections are not due until July 27, "[t]he absence of any objector" thus far "strongly supports the fairness, reasonableness, and adequacy of the settlement." *Martin v. AmeriPride Servs.*, 2011 WL 2313604, at *7 (S.D. Cal. June 9, 2011); *see also In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007) ("By any standard, the lack of objection of the Class Members favors approval of the Settlement."); *Touhey v. U.S.*, 2011 WL 3179036, at *8 (C.D. Cal. July 25, 2011) (same). In sum, the reaction of the Class to the Settlement, including its fee provisions, is overwhelmingly positive and supports a finding that the requested fees are fair, reasonable, and adequate.

### f.    Bluetooth Factors

In addition to the above factors, are the three factors articulated in *Bluetooth* going to the fairness of a fee request: (1) whether the lawyers' fees are disproportionate to the class recovery; (2)

16

*Gallucci v. Boiron, Inc., et al.*, Case No. 11-CV-2039 JAH NLS
MEMORANDUM IN SUPPORT OF MOTION FOR APPROVAL OF ATTORNEY FEES AND INCENTIVE AWARDS

whether the settlement includes a "clear sailing" agreement for fees; and (3) whether any unclaimed recovery amounts revert to the defendant. 654 F.3d at 944.[3] All three factors are absent in this case, supporting the reasonableness of the fee requested. Members of the Class can attain up to $100 per claimant with receipts, and up to $50 for claimants who no longer have receipts but sign a claim form under penalty of perjury. Class Counsel requests only 30% of the fund, leaving the class with $3.5 million, and therefore its fees are not disproportionate to the Class's recovery. In addition, the Settlement Agreement does not include a "clear sailing" provision. Rather, Boiron may challenge any part of the fee requested. Settlement Agreement ¶ 9.1. Finally, unclaimed funds do not revert to Defendants. Instead, the Agreement provides that unclaimed funds, if any, shall be distributed 50% to the Class in a supplemental distribution and 50% for *cy pres* relief.[4] *Id.* ¶ 4.3.5. *See generally Weeks v. Kellogg Co.*, 2011 U.S. Dist. LEXIS 155472, at *84-85 (C.D. Cal. Nov. 23, 2011) (

> At least one of the suspect type of provisions noted by the *Bluetooth* court is not present here. The parties' settlement does not provide that any attorneys' fees not awarded by the court will revert to defendants instead of being distributed to members of the class. Indeed, the parties did not agree on the amount of fees that counsel could seek without objection. In addition, this is not a situation where the class is not receiving any monetary

---

[3] Notably, even where one or more of these factors are present in a settlement, the Ninth Circuit did not suggest that such settlements are *per se* inappropriate and indeed "express[ed] no opinion on the ultimate fairness of what the parties have negotiated." *Id.* at 950. Rather, in those circumstances, the Ninth Circuit cautioned district courts to take special care and "assure itself that the fees awarded in the agreement [are] not unreasonably high." *Id.* at 947 (citation omitted).

[4] In the event of a *cy pres* distribution, the parties have agreed that, pursuant to Ninth Circuit precedent in *Bluetooth* and the recent case of *Dennis v. Kellogg Co.*, 2012 U.S. App. LEXIS 14385 (9th Cir. July 13, 2012), funds should be distributed to Consumers Union. Marron Decl. ¶ 34. Consumers Union is an "expert, independent, nonprofit organization whose mission is to work for a fair, just and safe marketplace for all consumers and to empower consumers to protect themselves." The organization exists to provide consumers with reliable information, including through its ubiquitous publication, *Consumer Reports*. Consumer Union also engages in pro-consumer lobbying. *See generally* "About Consumers Union," *at* http://www.consumersunion.org/about/. If for some reason the Court determined that Consumers Union were an inappropriate *cy pres* recipient, the parties have agreed to distribute any *cy pres* funds in the manner provided by Cal. Code Civ. P. 384, e.g., "to child advocacy programs, or to nonprofit organizations providing civil legal services to the indigent," which "[t]he Legislature [has] f[ound] . . . is in the public interest, is a proper use of the funds, and is consistent with essential public and governmental purposes." Cal. Code Civ. P. §§ 384(a)-(b). *See* Marron Decl. ¶ 34.

compensation - $2.5 million has been set aside to compensate individual class claimants and pay class counsel's attorneys' fees. . . . Here, while defendants agreed that "Class Counsel [could] apply for an award of attorneys' fees and reasonable, actual out-of-pocket expenses from the Settlement Fund," the settlement agreement does not contain the typical markets of a clear sailing agreement. Generally, such agreements indicate that "the party paying the fee agrees not to contest the amount to be awarded by the fee-setting court so long as the award falls beneath a negotiated ceiling." *Weinberget v. Great Northern  Nekoosa Corp.*, 925 F.2d 518, 520 n.1 (1st Cir. 1991). (internal record citation omitted)).

### g.  *The Lodestar/Multiplier Crosscheck*

Under the two-step lodestar/multiplier crosscheck, trial courts first calculate the lodestar, consisting of "all the hours reasonably spent, including those relating solely to the fee," times reasonable hourly rates. *Ketchum*, 24 Cal. 4th at 1133; *see also Hensley*, 461 U.S. at 433. That figure is then augmented or multiplied to reflect additional factors that must be considered in determining a reasonable attorney fee award. *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975); *Ketchum*, 24 Cal. 4th at 1138 ("the unadorned lodestar reflects the general local hourly rate for a fee bearing case; it does not include any compensation for contingent risk, extraordinary skill, or any other factors a trial court may consider").

In this case, Counsel's lodestar is $753,444, based on 1,762.2 hours of work (1,366.6 attorney hours, 245.6 paralegal and law clerk hours, and 150 blended, post-application hours. The lodestar is summarized in Appendix 1, and is supported by fair and reasonable rates and hours.

### i.  Class Counsel's Rates Are Reasonable

Class Counsel's rates are reasonable because they are in line with hourly rates charged by attorneys of comparable experience, reputation and ability for similar litigation. *See Ketchum*, 24 Cal. 4th at 1133; *see also Blum v. Stenson*, 465 U.S. 886, 895 (1984). Courts look to prevailing market rates in the community in which the court sits. *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 906 (9th Cir. 1995); *see also Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008).

18

*Gallucci v. Boiron, Inc., et al.*, Case No. 11-CV-2039 JAH NLS
MEMORANDUM IN SUPPORT OF MOTION FOR APPROVAL OF ATTORNEY FEES AND INCENTIVE AWARDS

Accordingly, Class Counsel's rates are reasonable if they are in line with the prevailing rates for other attorneys practicing complex litigation in San Diego. *See* Manual For Complex Litigation at § 14.122 ("The rate should reflect what the attorney would normally command in the relevant marketplace.").

Here, Class Counsel's requested rates are as follows:

| Attorney | Position | Hourly Rate |
|---|---|---|
| Ronald A. Marron | Partner (MF) | $650 |
| Gregory S. Weston | Partner (WF) | $525 |
| Jack Fitzgerald | Partner (WF) | $525 |
| Courtland Creekmore | Associate (WF) | $500 |
| Margarita Salazar | Associate (MF) | $450 |
| Skye Resendes | Associate (MF) | $385 |
| Maggie Realin | Associate (MF) | $375 |
| Melanie Persinger | Associate (WF) | $300 |
| Paralegals (MF) | | $215 |
| Paralegals (WF) | | $195 |

To assist the court in calculating the lodestar, a plaintiff must submit "satisfactory evidence . . . that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 896 n.11. Here, Class Counsel's requested rates fall within the prevailing market rates within the community.

**Rates Other Courts Have Awarded.** "[R]ate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

Less than two weeks ago, on July 9, 2012, this District's Honorable Marilyn L. Huff approved these exact rates for Class Counsel. Marron Decl. ¶ 20; Fitzgerald Decl. ¶ 12. Judge Huff specifically found these rates "justified by prior awards in similar litigation and the evidence presented with [plaintiffs'] motion showing these rates are in line with prevailing rates in this District." *In re Ferrero Litig.*, 2012 U.S. Dist. LEXIS 94900, at *11; *see also* Fitzgerald Decl. Ex. 1. Class Counsel's rates are also supported by other court decisions. *See* Marron Decl. ¶¶ 22-24; Fitzgerald Decl. ¶¶ 15-19.

19

*Gallucci v. Boiron, Inc., et al.*, Case No. 11-CV-2039 JAH NLS
MEMORANDUM IN SUPPORT OF MOTION FOR APPROVAL OF ATTORNEY FEES AND INCENTIVE AWARDS

1    In addition, Class Counsel's rates are reasonable and consistent with the rates charged by both

2    plaintiff and defense firms in San Diego, California, and around the country. *See* Marron Decl. ¶¶ 25-

3    26; Fitzgerald Decl. ¶¶ 20-22.

4    **Survey Data.** "Courts also frequently use survey data in evaluating the reasonableness of

5    attorneys' fees." *B-K Lighting, Inc. v. Vision3 Lighting*, 2009 U.S. Dist. LEXIS 111968, at *18 (C.D.

6    Cal. Nov. 16, 2009) (citing *Mathis v. Spears*, 857 F.2d 749, 755-56 (Fed. Cir. 1988)). A National Law

7    Journal survey confirms that the rates charged by Class Counsel are reasonable. *See* Fitzgerald Decl. ¶¶

8    20-22 & Ex. 2 (summary of 2010-2011 surveys, listing only Southern California firms); Marron Decl. ¶

9    25.

10   **Blended Rate.** The reasonableness of Class Counsel's rates is also shown by its blended

11   lodestar, calculated by taking the total lodestar and dividing it by the total hours of all timekeepers

12   (attorneys, paralegals, etc.). The blended rate in this case is $435.21 for the Marron firm and $433.53

13   for the Weston Firm. Marron Decl. ¶ 27; Fitzgerald Decl. ¶ 23. This compares favorably to blended

14   lodestar rates approved in other actions. *See* Marron Decl. ¶ 27; Fitzgerald Decl. ¶ 23.

15                    ii.    Class Counsel's Hours Expended Are Reasonable

16   Class Counsel are entitled to be compensated for reasonable time spent at all points in the

17   litigation. Courts should avoid engaging in an "ex post facto determination of whether attorney hours

18   were necessary to the relief obtained." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992). The issue "is

19   not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was

20   performed, a reasonable attorney would have engaged in similar time expenditures." *Id.*

21   Here, Class Counsel expended a total of 1,366.6 attorney hours and 245.6 paralegal and law

22   clerk hours through July 19, 2012. *See* Marron Decl. ¶ 30; Fitzgerald Decl. ¶ 25; App. 1. This includes

23   time billed for investigating the claims and drafting pleadings; extensive law and motion practice

24   relative to the time the case was litigated; drafting discovery, reviewing documents and researching

25   legal authorities; preparing for and participating in meetings, settlement conferences and mediations;

26   and communications and meetings among parties and counsel. Counsel should be compensated for all

27

28

1    hours claimed, which are documented and based on contemporaneous time records.[5] *See* Marron Decl.

2    ¶¶ 29-31; Fitzgerald Decl. ¶¶ 24-27.

3        The three senior attorneys collaborating on this action, Messrs. Marron, Weston and Fitzgerald,

4    have over thirty years' combined experience in complex civil litigation, false advertising, and class

5    actions. Their experience has been fully detailed in supporting declarations. Cumulatively, these

6    attorneys have performed 506.8 hours of work on this case, or approximately 37% of the total attorney

7    time: Mr. Marron (330.7), Mr. Fitzgerald (127.2), and Mr. Weston (48.9). *See* App. 1.

8                        iii.    A Multiplier of 1.99 is Reasonable

9        In determining an appropriate multiplier, courts consider "a host of 'reasonableness' factors,

10   'including the quality of representation, the benefit obtained for the class, the complexity and novelty

11   of the issues presented, and the risk of nonpayment.'" *Bluetooth*, 654 F.3d at 941-42 (quoting *Hanlon*,

12   150 F.3d at 1029). The purpose of using the lodestar/multiplier method is to mirror the legal

13   marketplace: counsel will not handle cases on straight hourly fees that are payable only if they win, so

14   an enhancement helps determine a fee that is commensurate with what attorneys could expect to be

15   compensated for similar services under these circumstances. *See San Bernardino Valley Audubon Soc'y*

16   *v. San Bernardino*, 155 Cal. App. 3d 738, 755 (1984) (award must be large enough "to entice

17   competent counsel to undertake difficult public interest cases"); *Lealao*, 82 Cal. App. 4th at 50

18

19   ───────────────

     [5] Class Counsel's detailed time sheets are not necessary for this motion because the Court need only be
20   provided enough information to assess the reasonableness of the fees claim, and Class Counsel's
     declarations provide this. *Margolin v. Regional Planning Com.*, 134 Cal. App. 3d 999, 1006-1007
21   (1982) (attorney declaration as to number of hours worked by firm members was sufficient); *Trustees
     of Cent. States v. Golden Nugget, Inc.*, 697 F. Supp. 1538, 1558-59 (C.D. Cal. 1988). Moreover, the
22   lodestar analysis—which is solely for purposes of cross checking the percentage-of-fund request—
     requires "neither mathematical precision nor bean-counting," and allows the Court to "rely on
23   summaries submitted by the attorneys and . . . not review actual billing records," *In re Rite Aid Corp.
     Sec. Litig.*, 396 F.3d 294, 306-307 (3d Cir. 2005). California authorities likewise "permit[] fee awards
24   in the absence of detailed time sheets," since "[a]n experienced trial judge is in a position to assess the
     value of the professional services rendered in his or her court." *Wershba*, 91 Cal. App. 4th at 255
25   (citing *Serrano*, 20 Cal. 3d at 49 ; *Dunk*, 48 Cal. App. 4th at 1810; *Nightingale v. Hyundai Motor Am.*,
     31 Cal. App. 4th 99, 103 (1994)). Here, the extent of the discovery and law and motion practice, as
26   reflected on the Court's docket and summarized in the Motion for Preliminary Approval and here, and
     supporting declarations, demonstrates the time expended was reasonable and necessary to obtain this
27   substantial Settlement for the Class. Nevertheless, Class Counsel's detailed time records can and will
28   be provided to the Court immediately upon its request should it desire a more detailed review.

1  (adjusted lodestar should not be significantly different from the percentage fee freely negotiated in

2  comparable litigation).

3       "Multipliers can range from 2 to 4, or even higher." *Wershba*, 91 Cal. App. 4th at 255. The

4  court in *Glendora*, 155 Cal. App. 3d at 479 , approved a multiplier of 12. *See also Natural Gas Anti-*

5  *Trust Cases*, 2006 WL 5377849, at *4 (Cal. Super. Ct. Dec. 11, 2006) ("This Court and numerous cases

6  have applied multipliers of between 4 and 12 to counsel's lodestar in awarding fees."); *Stern west Corp.*

7  *v. Ash*, 183 Cal. App. 3d 74, 76 (1986) (case remanded with directions "to enhance the lodestar award

8  by such factor (two, three, four or otherwise) that the court, in its discretion shall deem proper");

9  *Vizcaino*, 290 F.3d at 1051 (multiplier of 3.65); *Steiner v. Am. Broad. Co., Inc.*, 2007 WL 2460326, at

10  *2 (9th Cir. Aug. 29, 2007) (multiplier of 6.85); *Keith v. Volpe*, 501 F. Supp. 403, 414 (C.D. Cal. 1980)

11  (multiplier of 3.5). In cases where, as here, "a large common fund has been recovered and the hours are

12  relatively small, some courts reach a reasonable fee determination based on large multiples of 5 or 10

13  times the lodestar." Conte, ATTORNEY FEE AWARDS (2d ed. 1993), § 2.06 at 39.

14       Here, Class Counsel request a total fee award of $1.5 million, resulting in a multiplier of

15  approximately 1.99 of their $753,444 lodestar. The modest multiplier is well justified here and within

16  the range of those approved in other cases. In light of the exceptional results obtained, the efficiency

17  with which the case was litigated, the experience and reputation of counsel, the risks associated with

18  litigating this action, the complexity and novelty of the issues presented, the substantial benefit to the

19  class achieved, and the work on the final approval reply papers and hearing, settlement administration,

20  and potential appeals still to be performed, the requested fee is fair and reasonable. *See*, *supra*, Parts

21  III.D.2.a-g.

22  **E.       THE REQUESTED COSTS ARE FAIR AND REASONABLE**

23       Under California Code of Civil Procedure §§ 1033.5(a)(1), (3), (4), and (7), the Court must

24  award costs for court fees; deposition costs for transcribing, recording and travel; service of process

25  fees; and witness fees. In addition, § 1033.5(c) provides discretion to award reimbursement of other

26  costs if they are "reasonably necessary to the conduct of the litigation, rather than merely convenient or

27  beneficial to its preparation." *Parkinson*, 796 F. Supp. 2d at 1176 (quoting *Science App. Int'l Corp. v.*

28

22

*Gallucci v. Boiron, Inc., et al.*, Case No. 11-CV-2039 JAH NLS
MEMORANDUM IN SUPPORT OF MOTION FOR APPROVAL OF ATTORNEY FEES AND INCENTIVE AWARDS

*Super. Ct.*, 39 Cal. App. 4th 1095, 1103 (1995)). Class Counsel has incurred $9,782.96 in recoverable costs and those that that were reasonably necessary to conduct the litigation, which are summarized in Appendix 2.[6] This includes $3,450 to Judicate West for mediation services; the Court should note, however, that Class Counsel negotiated for Defendants to pay the lion's share of the mediation fees in this action, amounting to $29,850 from September 1, 2011 to March 30, 2012. This presented a benefit to the Class and further demonstrates the hard-fought but thoroughly-negotiated nature of the Settlement. *See* Marron Decl. ¶ 32.

Accordingly, the Court should grant Class Counsel's request for $9,782.96 in costs.

**F.    THE REQUESTED INCENTIVE AWARDS ARE FAIR AND REASONABLE**

Incentive awards "are fairly typical in class action cases," *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009), and "serve an important function in promoting class action settlements," *Sheppard v. Consol. Edison Co. of N.Y., Inc.*, 2002 U.S. Dist. LEXIS 16314, at *16 (E.D.N.Y. Aug. 1, 2002). Such awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958-59. Service awards are committed to the sound discretion of the trial court and should be awarded based upon the court's consideration of, *inter alia*, the amount of time and effort spent on the litigation, the duration of the litigation and the degree of personal gain obtained as a result of the litigation. *See Van Vranken*, 901 F. Supp. at 299. Here, Plaintiffs respectfully request modest service awards of $3,500 for Salvatore Gallucci and $1,000 each for Kim Jones, Doris Petty, Amy Aronica and Jeanne Prinzivalli, in recognition of their contributions toward the successful prosecution of this case.

Mr. Gallucci originated this action and was instrumental in bringing this homeopathic deceptive labeling case to light. *See* Declaration of Salvatore Gallucci filed concurrently herewith ("Gallucci Decl."). He was significantly involved in this action from its inception to inclusion, for approximately seven months longer than the other class representatives. *See id.* All of the Class Representatives were

---

[6] Because the itemized list of costs is voluminous (for example because of the itemization of Pacer, photocopying and legal research charges), we do not attach the records to this Motion, but they will be provided for the Court's review immediately upon request.

23

*Gallucci v. Boiron, Inc., et al.*, Case No. 11-CV-2039 JAH NLS
MEMORANDUM IN SUPPORT OF MOTION FOR APPROVAL OF ATTORNEY FEES AND INCENTIVE AWARDS

1   involved in this action, including reviewing court filings and rulings; having continuous meetings and

2   communications with Class Counsel throughout the litigation; searching for and producing documents

3   upon request; and being on-call to attend court hearings and mediation. *See* Marron Decl. ¶ 9; Gallucci

4   Decl., Decls. of Kim Jones, Doris Petty, Amy Aronica and Jeanne Prinzivalli, filed concurrently

5   herewith. Thus, the proposed awards are justified in this case. *See*, *e.g.*, *In re HP Power Plug &*

6   *Graphic Card Litig.*, 2008 U.S. Dist. LEXIS 111427, at *14-15 (N.D. Cal. July 8, 2008) (approving

7   $500 award where plaintiff merely responded to counsel's communications and was "ready and willing

8   to participate" in the case); *Hartless v. Clorox Co.*, 273 F.R.D. 630, 647 (S.D. Cal. 2011) (approving

9   $2,000 award where plaintiff met with counsel, participated in discovery and efforts leading to

10   settlement, and approved the amount and type of settlement proposed for the class).

11   The proposed awards are well below the $5,000 which is presumptively reasonable according to

12   some California courts, *Simon v. Toshiba Am.*, 2010 U.S. Dist. LEXIS 42501, at *12 (N.D. Cal. Apr.

13   30, 2010) ("incentive payments of $5,000 are presumptively reasonable"), and well within the range

14   approved by other Courts in this Circuit, s*ee*, *e.g.*, *Singer v. Becton Dickinson & Co.*, 2010 U.S. Dist.

15   LEXIS 53416 (S.D. Cal. June 1, 2010) ($25,000 award); *Van Vranken*, 901 F. Supp. at 300 ($50,000

16   award); *Louie v. Kaiser Found. Health Plan, Inc.*, 2008 U.S. Dist. LEXIS 78314, at *18-19 (S.D. Cal.

17   Oct. 6, 2008) ($25,000 award); *Barcia v. Contain-A-Way, Inc.*, 2009 U.S. Dist. LEXIS 17118 (S.D.

18   Cal. Mar. 6, 2009) ($12,000 award). *Accord Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)

19   (affirming $25,000 award).

20   Moreover, incentive awards are appropriate when a class representative will not benefit beyond

21   ordinary class members. For example, where a class representative's claim makes up "only a tiny

22   fraction of the common fund," an incentive award is justified. *Van Vraken*, 901 F. Supp. at 299. Here,

23   Plaintiffs have not received any unusual or extraordinary benefit, justifying their requested awards. *See*

24   *Razilov v. Nationwide Mut. Ins. Co.*, 2006 U.S. Dist. LEXIS 82723, at *12 (D. Or. Nov. 13, 2006)

25   (approving $10,000 incentive award for representative whose "only personal benefit . . . from a

26   successful result in this litigation is the . . . entitlement of any class member . . . together with the

27   likelihood that any further [statutory] violations . . . would cease").

28

24

*Gallucci v. Boiron, Inc., et al.*, Case No. 11-CV-2039 JAH NLS
MEMORANDUM IN SUPPORT OF MOTION FOR APPROVAL OF ATTORNEY FEES AND INCENTIVE AWARDS

## IV.     <u>CONCLUSION</u>

Plaintiffs' Motion should, respectfully, be granted.[7]

Dated: July 20, 2012                              Respectfully Submitted,

                                                  /s/ Ronald A. Marron
                                                  *ron@consumersadvocates.com*

                                                  **LAW OFFICES OF**
                                                  **RONALD A. MARRON, APLC**
                                                  MAGGIE. K. REALIN (263639)
                                                  *maggie@consumersadvocates.com*
                                                  BEATRICE SKYE RESENDES (278511)
                                                  *skye@consumersadvocates.com*
                                                  3636 4th Avenue, Suite 202
                                                  San Diego, California 92103
                                                  Telephone:     (619) 696-9006
                                                  Facsimile:     (619) 564-6665

                                                  **THE WESTON FIRM**
                                                  GREGORY S. WESTON (239944)
                                                  *greg@westonfirm.com*
                                                  JACK FITZGERALD (257370)
                                                  *jack@westonfirm.com*
                                                  COURTLAND CREEKMORE (182018)
                                                  *courtland@westonfirm.com*
                                                  MELANIE PERSINGER (275423)
                                                  *mel@westonfirm.com*
                                                  1405 Morena Blvd., Suite 201
                                                  San Diego, California 92110
                                                  Telephone: (619) 798 2006
                                                  Facsimile: (480) 247 4553

                                                  **<u>Class Counsel</u>**

---

[7] Plaintiffs will file a single [Proposed] Order and Judgment along with their Motion for Final Approval, which addresses both final approval of the Settlement Agreement and this application for fees, costs and incentive awards.

## APPENDIX 1: CLASS COUNSEL'S LODESTAR

**FEE LODESTAR (through July 17, 2012):**

| Firm and Attorney | Hours | Hourly Rate | Lodestar |
|---|---|---|---|
| Law Offices of Ronald A. Marron, APLC: | | | |
| Ronald A. Marron | 330.7 | $650 | $214,955.00 |
| Margarita Salazar | 54.2 | $450 | $24,390.00 |
| Skye Resendes | 511.6 | $385 | $196,966.00 |
| Maggie Realin | 117.9 | $375 | $44,212.50 |
| Law Clerks | 39.3 | $215 | $8,449.50 |
| Paralegals | 138 | $215 | $29,670.00 |
| | | Subtotal: | $518,643.00 |
| The Weston Firm: | | | |
| Gregory S. Weston | 48.9 | $525 | $25,672.50 |
| Jack Fitzgerald | 127.2 | $525 | $66,780.00 |
| Courtland Creekmore | 118.5 | $500 | $59,250.00 |
| Melanie Persinger | 57.6 | $300 | $17,280.00 |
| Paralegals | 68.3 | $195 | $13,318.50 |
| | | Subtotal: | $182,301.00 |
| Post-Application Hours (Est.)[1] | 150 | $350 | $52,500.00 |
| | | Subtotal: | $52,500.00 |
| | | **TOTAL:** | **$753,444.00** |

**LITIGATION EXPENSE LODESTAR**

| | | |
|---|---|---|
| Law Offices of Ronald A. Marron & Weston Firm | **TOTAL:** | **$9,782.96** |

---

[1] Class Counsel will perform substantial additional work after this application is filed, including completing and filing the Motion for Final Approval; attending the August 27, 2012 Final Approval Hearing; coordinating with Boiron, its counsel and the Class Administrator on final claims processing (for example, creating a set of procedures and rules to audit and de-duplicate the claims); and moving the Court for approval of a supplemental distribution and *cy pres* award if necessary. Class Counsel may also be required to respond to objections. In fact, given the history of Henry Gonzales' motion practice in this action, this is a near certainty. To account for the known additional work and the possibility of more if there are objections, Class Counsel estimates 150 post-application hours, which Class Counsel believes does not significantly overstate additional hours if there are no objections, or understate additional hours if there are objections. Moreover, in an exercise of discretion and in recognition that such work may be performed by various attorneys and staff, Class Counsel value these additional hours at a modest $350 per hour, representing the approximate average billing rate of all timekeepers ($341.56).

I

*Gallucci v. Boiron, Inc., et al.*, Case No. 11-CV-2039 JAH NLS
MEMORANDUM IN SUPPORT OF MOTION FOR APPROVAL OF ATTORNEY FEES AND INCENTIVE AWARDS

## APPENDIX 2: SUMMARY OF CLASS COUNSEL'S COSTS

| Product/Service | Total Amount |
|---|---|
| Postage | $155.14 |
| Process Server | $102.00 |
| Filing Fee | $350.00 |
| Pacer | $340.10 |
| Parking/Mileage | $50.52 |
| Calendar/Notification Service | $249.00 |
| Mediation | $3,450.00 |
| Photocopies | $3,463.25 |
| Legal Research | $1,622.95 |
| Scientific Consulting | No Charge |
| **Total:** | **$9,782.96** |

II

*Gallucci v. Boiron, Inc., et al.,* Case No. 11-CV-2039 JAH NLS
MEMORANDUM IN SUPPORT OF MOTION FOR APPROVAL OF ATTORNEY FEES AND INCENTIVE AWARDS