1
2
3
4
5
6
7
8
9

**LAW OFFICES OF**
**RONALD A. MARRON, APLC**
RONALD A. MARRON (175650)
*ron@consumersadvocates.com*
MAGGIE. K. REALIN (263639)
*maggie@consumersadvocates.com*
BEATRICE SKYE RESENDES (278511)
*skye@consumersadvocates.com*
3636 4ᵗʰ Avenue, Suite 202
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

*Class Counsel*

**THE WESTON FIRM**
GREGORY S. WESTON (239944)
*greg@westonfirm.com*
JACK FITZGERALD (257370)
*jack@westonfirm.com*
COURTLAND CREEKMORE (182018)
*courtland@westonfirm.com*
MELANIE PERSINGER (275423)
*mel@westonfirm.com*
1405 Morena Blvd., Suite 201
San Diego, California 92110
Telephone: (619) 798 2006
Facsimile: (480) 247 4553

10

**UNITED STATES DISTRICT COURT**

11

**SOUTHERN DISTRICT OF CALIFORNIA**

12
13
14
15
16
17
18
19
20
21
22

| | |
|---|---|
| SALVATORE GALLUCCI, KIM JONES, DORIS PETTY, AMY ARONICA, JEANNE PRINZIVALLI individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br>v. <br><br>BOIRON, INC.; and BOIRON USA, INC., <br><br> Defendants. <br>─────────────────────────── <br><br>AND ALL RELATED ACTIONS | CASE NO. 11-CV-2039 JAH NLS <br>CLASS ACTION <br><br>**DECLARATION OF MARKHAM SHERWOOD IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT** <br><br>Date:　　　August 27, 2012 <br>Judge:　　 Hon. John A. Houston <br>Time:　　　2:30 p.m. <br>Location:　 Courtroom 11 |

23

I, Markham Sherwood, declare as follows:

24

　　　1.　　I am over twenty-one years of age and am authorized to make this declaration.  The

25

following facts are within my personal knowledge and, if called to testify, I could and would

26

competently testify thereto.

27

　　　2.　　I am employed as a Case Manager by Gilardi & Co., LLC ("Gilardi").  On April 25,

28

2012, this Court appointed Gilardi to serve as the Class Administrator for this settlement.  Gilardi

1

*Gallucci, et al. v. Boiron, Inc., et al.*, Case No. 11-CV-2039 JAH NLS
DECLARATION OF MARKHAM SHERWOOD IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT

1   was formed in 1984 to assist attorneys with securities, antitrust, consumer protection class actions,

2   and other similar matters.  Gilardi specializes in designing, developing, analyzing, and implementing

3   claims administration that supports due process.  During the past 28 years Gilardi has administered

4   class notice and class settlements in over 3,500 class actions, and has distributed more than $20

5   billion in assets.

6         3.     Gilardi has executed the administrative items as defined in the Settlement Agreement

7   in this action and worked with its sister company, Larkspur Design Group ("LDG"), to implement

8   the print publication and online Notice efforts.  For more than a quarter-century, LDG has

9   specialized in designing, developing, and implementing unbiased legal notification plans.  As such,

10   LDG is familiar with and guided by Constitutional due process provisions, rules of states and local

11   jurisdictions, and the relevant case law relating to legal notification.

12         4.     LDG has conducted media campaigns ranging from a single local newspaper to multi-

13   lingual, nationwide saturation efforts involving nearly 100 newspapers and magazines.  Our

14   international notice campaigns have included extensive print and online media in numerous foreign

15   languages.  LDG's capacity and experience extends to every segment of business, industry,

16   governmental, and consumer activity.  Prior LDG notification and advertising programs include, but

17   are not limited to, cases related to antitrust, consumer products, government (FTC, SEC, DOJ and

18   many state Attorneys General), insurance, pharmaceutical products, product liability, and securities,

19   and have involved apparel, automotive, computers, consumer fraud, communications, entertainment,

20   environment, financial services, healthcare, insurance, internet shopping, labor, railroad, real estate,

21   restaurants, securities fraud, technology, tobacco, and utilities.  For a list of Notice programs

22   implemented by LDG, please refer to Exhibit A.

23       **NOTICE PLAN**

24         5.     LDG crafted this Notice Plan to ensure that the best practicable notice of the

25   settlement of this class action is provided to the settlement class, which is defined as follows:

26           "All persons in the United States who purchased the Boiron Products as

27           defined in the Settlement Agreement, within the Class Period. The Class

28           expressly excludes Defendants and their officers, directors, employees and

2

immediate families; and the Court, its officers and their immediate families. The Class also excludes claims for Children's ColdCalm made by members of the Class certified in the matter of *Delarosa v. Boiron, Inc. et al.*, No. 10-cv-1569-JST (C.D. Cal.) ("all persons who are domiciled or reside in California, who purchased Children's Coldcalm for personal use at any time during the four years preceding the filing" of the Complaint in that action. *See Delarosa v. Boiron, Inc.*, 275 F.R.D. 582 (C.D. Cal. Aug. 24, 2011)) ("*Delarosa* Class Members"), but does not exclude claims made by *Delarosa* Class Members as to all other Products."

6.     In order to select media vehicles appropriate for the Class, LDG utilized the Summer 2011 Adult Full Year Simmons[1] National Consumer Survey ("NCS") to define a Target Audience ("TA") inclusive of the defined Class.  The Target Audience was defined as:

"U.S. Adults who Trust Homeopathic Remedies," a profile of approximately 45 million U.S. adults."

7.     To evaluate the most appropriate media vehicles to reach this Target Audience, LDG used Quintile analysis of the Simmons National Consumer Survey data.  In Quintile Analysis, consumers (TA) are divided into five groups based on the amount of usage of the medium.  To illustrate the effective media vehicles for this Target Audience, we examined Quintile 1, the highest usage Quintile, for five alternative media vehicles that could be used to reach the Class members.  Those vehicles and their corresponding popularity Index[2] are as follows:

(i)     Internet - 125

(ii)     Magazines – 117

(iii)     Newspapers - 95

---

[1] For over 50 years, Simmons National Consumer Studies has supplied leading advertisers, agencies and media companies with the most timely, single-source consumer research insights available. Simmons surveys over 30,000 consumers annually, continuously measuring and updating consumer attitudes, product and brand preferences, media consumption habits and demographic, and lifestyle characteristics.

[2] The index column indicates the Target Audience's relation to a base of average U.S. Adults and an index number of greater than 100 indicates a higher propensity than the average U.S. Adult in the respective survey category.  For example, the TA above is 25% more likely than the average U.S. Adult for internet use at home or work, excluding email.

3

(iv)    Television – 93

(v)    Radio - 85

8.    As you can see from the Index numbers, the internet is a preferred medium for this TA to get information and therefore a good medium to reach the class members included in that TA.

9.    In addition to Quintile analysis, LDG examined general internet usage and online behavior of the defined TA to confirm the results of the Quintile analysis that a plan utilizing internet and magazine advertising would be the most effective.  LDG studied statistics related to computer ownership, internet access, and website popularity as well as the most often used search engines.  The table below illustrates the statistics used to determine that the best approach to reach the Class was through online advertising.

### Internet Behavior Profile

**Defined TA:  US Adults who Trust Homeopathic Medicine (approximately 45 million U.S. Adults)**
**SOURCE: Fall 2011 Simmons NCS Adult Survey 6 mos**

| Survey Question/Information | Sample Size | Weighted Sample Size (000) | Vertical | Index |
|---|---|---|---|---|
| **Internet Usage in General** | | | | |
| Do you use on Online Service Provider? = Yes | 2,064 | 39,944 | 88% | 104 |
| Have you used an Online Service Provider in last 30 days? = Yes | 2,064 | 39,944 | 88% | 104 |
| Does your household have a PC? = Yes | 2,064 | 39,944 | 88% | 104 |
| Do you personally own a PC? = Yes | 2,064 | 39,944 | 88% | 104 |
| Do you use your PC more than 2 hrs per week? = Yes | 1,534 | 30,824 | 68% | 110 |
| Do you use Google's Search Engine the most? = Yes | 1,324 | 27,282 | 60% | 110 |
| Do you use Social Media? = Yes | 1,351 | 27,172 | 60% | 110 |
| Do you use Yahoo's Search Engine the most? = Yes | 304 | 5,412 | 12% | 89 |
| Do you own a Tablet Computer? = YES | 230 | 4,687 | 10% | 151 |
| Do you use Bing's Search Engine the most? = Yes | 104 | 1,616 | 4% | 77 |
| **Websites Visited In Last 30 Days** | | | | |
| FACEBOOK.COM | 1,034 | 22,911 | 51% | 112 |
| GOOGLE.COM | 1,074 | 21,844 | 48% | 114 |
| YAHOO.COM | 636 | 13,577 | 30% | 105 |
| BING.COM | 214 | 4,195 | 9% | 109 |

**READ THIS CHART:**  88% of the target audience uses an internet service provider and with an index of 104, those individuals are more likely than the average U.S. adult to do so.  An index of 100 indicates the average U.S. adult's response to the survey question.  An index greater than 100 indicates that this particular audience is more likely than the average U.S. adult to fit within the survey category.

**KEY:**
Sample Size - The number of individuals answering the survey question
Weighted Sample - The extrapolated number of indivuals based on the sample size
Vertical - The percentage of the Target Audience that fits within the survey question profile (ex. 10% of the target audience owns a tablet)
Index - measures the relationship between the target audience and the national population as a base.  In other words, an index of 100 indicates the target audience is on par with the national population with respect to the question while an index greater than 100 indicates a higher percentage of the target audience answered this question (the same answer), in relation to the national average.

10.    As you can see in the Table, eighty-eight percent of the target audience lives in a household with a personal computer, uses an online service provider, and has accessed the internet at least once in the last 30 days.  60% of the TA uses Google as their most preferred Search Engine

4

while also using social media.  With an Index rating of 151, this TA is 50% more likely to own a tablet computer than the average U.S. Adult which implies a very tech savvy audience and leads to the approach of a Notice campaign with significant online Notice.  Based on this information, LDG crafted the Notice Plan submitted to this Court on March 6, 2012.  *See* Dkt. 64-2, Ex. A (Settlement Agreement, Ex F).

11.    The Notice Plan ultimately included:

(a)    Direct notice through first-class postal mail to all settlement class members whose addresses were obtained through reasonable efforts as required under FCCP Rule 23;

(b)    mailing the notice to the appropriate governmental agencies pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 ("CAFA");

(c)    publishing the Summary Notice in two national magazines;

(d)    publishing a Summary Notice 4 times in the National edition of USA Today;

(e)    issuing a press release;

(f)    implementing electronic notice through:

(i)    sponsored link advertising;

(ii)    banner display advertising;

(iii)    a Facebook settlement page; and

(iv)    a dedicated interactive Internet website.

**CAFA NOTICE**

12.    On March 16, 2012, pursuant to CAFA, which requires that notice be served on the appropriate state and federal officials no later than 10 days after a proposed settlement of class claims is filed in federal court, Gilardi served 52 notices of the settlement, via Certified Mail return receipt requested, upon all States' Attorneys General and the U.S. Attorney General.  The notice of the settlement contained a cover letter and a CD that included the following case-related documents:

1.) Class Action Initial Complaint

2.) First Amended Complaint

3.) Application to File Under Seal

4.) Class Action Settlement Agreement

5.) Motion for Settlement

6.) Memorandum in Support of Motion

7.) Declaration of Ronald A. Marron in Support of Motion (including, as exhibits: Class Action Settlement Agreement, Draft Publication Notice, and Draft Claim Form)

8.) Declaration of Christina G. Sarchio in Support of Motion

9.) Declaration of Mark Land in Support of Motion

10.) Proof of Service: Motion for Settlement

11.) Proof of Service: Order Preliminarily Approving Settlement

12.) State Breakdown/Percentage Table of Class Members

A true and correct copy of the cover letter to the CAFA Notice is attached hereto as Exhibit B.  Gilardi has received the return receipt confirming deliver to each of the States' Attorneys General and the U.S. Attorney General.  No Attorney General has submitted a response to Gilardi regarding the CAFA notice.

**DIRECT NOTICE TO CLASS MEMBERS**

13.      Direct notice was provided to 362 potential class members, as follows:  On May 9, 2012, counsel for the Defendant provided Gilardi with a list of 103 Settlement Class Members' names and mailing addresses.  Gilardi formatted the list for mailing purposes, removed 4 duplicate records, and processed the names and addresses through the National Change of Address ("NCOA") Database to update any addresses on file with the United States Postal Service ("USPS").

14.      On May 25, 2012, Gilardi caused the Notice of Proposed Class Action Settlement and Class Action Settlement Claim Form (collectively "Notice Packet") to be printed in both English and Spanish and mailed to the 99 remaining names on the class list.  Gilardi delivered the Notice Packets to the United States Post Office located in San Rafael, California.  A true and correct copy of the Notice Packet is attached hereto as Exhibit C.

15.      On May 25, 2012, counsel for the Defendant provided Gilardi with a supplemental list containing 263 records containing address information.  Gilardi formatted the list for mailing

1   purposes and processed the names and addresses through the NCOA Database to update any

2   addresses on file with the USPS.

3          16.    On May 31, 2012, Gilardi caused the Notice Packet to be printed in both English and

4   Spanish and mailed to these 263 additional names.  Gilardi delivered the Notice Packets to the

5   United States Post Office located in San Rafael, California.

6          **PRINT PUBLICATION**

7          17.    Gilardi, through its in-house advertising agency, LDG, caused the Summary Notice to

8   be published in the May 21, May 29, June 4, and June 11, 2012 national editions of USA Today, and

9   the July/August issues of Natural Health and Health Magazine.  USA Today's national daily

10  circulation is 1,728,413, Natural Health's circulation is 307,565, and Health Magazine's circulation

11  is 1,375,473, as audited and verified by the Audit Bureau of Circulations.  Although the four

12  Summary Notice publications in USA Today were not contemplated in the initial Notice Plan, the

13  parties agreed to the additional cost to provide the best practicable Notice of the Settlement to the

14  Class above and beyond that which the Court directed in the Order preliminarily approving the

15  Settlement.  True and correct copies of the Summary Notice, as printed in each publication, are

16  attached hereto as Exhibit D.

17         **PRESS RELEASE**

18         18.    LDG crafted a neutral informational press release, as it remains one of the most cost

19  effective and powerful methods of notice.  The press release focused to media outlets that write

20  about the health and generated significant earned media coverage.

21         19.    On May 25, 2012, LDG released a party-neutral press release over PR Newswire's

22  US1 National Newsline.  The US1 National Newsline provides the press release to thousands of

23  media outlets across the country, including national and local newspapers, websites, and television

24  and radio stations.  A true and correct copy of the press release is attached hereto as Exhibit E.   A

25  summary report of outlets that picked up the release is attached as Exhibit F.

26         **ELECTRONIC NOTICE**

27         20.    As mentioned in paragraph 9, based on its research LDG determined that the best

28  practicable notice should include a targeted online advertising campaign.  LDG firmly believes that

7

*Gallucci, et al. v. Boiron, Inc., et al.*, Case No. 11-CV-2039 JAH NLS
DECLARATION OF MARKHAM SHERWOOD IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT

1   the best Notice practicable should include a substantial online campaign and this is particularly true

2   for a class that is widespread nationally in addition to being part of a broadly defined Target

3   Audience.  While nearly every business actively uses the internet to communicate and serve its

4   customers, the internet has traditionally been utilized in legal notification as a supplement, ignoring

5   the fact that class members are getting younger and more apt to get their news and other information

6   online.  Nonetheless, given that Rule 23(c)(2) of the Federal Rules of Civil Procedure explicitly

7   requires the best notice practicable under the circumstances, LDG implemented a comprehensive

8   notice campaign that offered many advantages to the Class, including the ability to be directed

9   immediately to the case website, the flexibility to adjust the message during the campaign, tracking

10  ability of the traffic to the case site, and cost efficiency.

11      21.   To ensure an effective online campaign, LDG utilized display advertising, sponsored

12  links, content advertising, and social network advertising on general and specialized websites.  LDG

13  also maintained an interactive website to provide class members information about the settlement.

14      22.   On or before May 23, 2012, LDG began its online advertising campaign.  The online

15  advertising campaign included Google AdWords Sponsored Links which have as of July 19, 2012

16  generated 1,206,465 impressions, Google AdWords Display Network advertising which has, as of

17  July 19, 2012, generated 8,507,199 impressions, and PulsePoint Contextual Banner Display Ads

18  which have as of July 19, 2012 generated 22,514,056 impressions.  An impression (in the context of

19  online advertising) is the number of times an ad was displayed on any given site, giving an

20  individual the opportunity to click and be directed to the case website for more information.  In

21  advertising, "Reach" is defined as the opportunity to be exposed to an advertising message over a

22  given period of time.  One does not have to click the ad to be reached, but rather if the ad was

23  viewable, the individual had the opportunity to be directed to the website and was therefore reached

24  under the industry-accepted definition.  Each time an ad is displayed to a visitor it is counted as one

25  impression.  For an overview of the various online vehicles used in this notice campaign, please refer

26  to Exhibit G.

27      23.   LDG used the display network and contextual banner display ads to place website

28  links on pages with content related to the case, a highly effective way to generate interest from those

individuals who may not be looking for the case website, but who may be potential class members nonetheless.  In addition to the websites anticipated by the Notice Plan, LDG also arranged for ads to be placed on other sites likely to be frequented by potential class members, including www.runnersworld.com; www.yogajournal.com; and www.wholeliving.com, based on recommendations from Boiron.

24.     On or before May 23, 2012, LDG established a case-dedicated Facebook page to provide information to potential class members and others seeking information about the proposed settlement. The Facebook page, which is routinely updated to add new or changed information, provides: (i) basic information about the Settlement; (ii) a link to the Settlement Website; (iii) an abbreviated list of answers to frequently asked questions; (iv) a copy of the Notice of Proposed Class Action Settlement (in English); and (v) contact information for Gilardi & Co. LLC including the case-dedicated mailing address, toll free telephone number, and email address.

25.     On or before May 10, 2012, Gilardi established an interactive website, www.gilardi.com/boironsettlement, to provide information to potential class members and others seeking information about the proposed settlement and to facilitate the filing of online claims.  As of August 13, 2012, the settlement website has registered 422,915 total hits.

26.     The website, which is routinely updated to add new or changed information, provides: (i) a list of Boiron products addressed in this litigation; (ii) an online-claims filing feature which allows class members to file a claim online and upload supporting documentation where applicable; (iii) answers to frequently-asked questions; (iv) important dates; (v) contact information for Gilardi, including the case-dedicated mailing address, toll-free telephone number, and email address; and (vi) full and complete copies of the following documents:

(a)     Notice of Proposed Class Action Settlement (in English and Spanish);

(b)     Claim Form (in English and Spanish);

(c)     Settlement Agreement;

(d)     Preliminary Approval Order;

(e)     Order Resetting Fairness Hearing (posted the same day the Order was issued by the Court);

9

(f)    Motion for Attorney's Fees, Expenses, and Incentive Awards and related Declarations of Ronald A. Marron and Jack Fitzgerald (posted on July 23, 2012); and

(g)    First Amended Complaint.

**TOLL-FREE TELEPHONE NUMBER**

27.    On May 10, 2012, Gilardi activated a toll-free telephone number, 1-877-256-3879, through which callers are able to connect with a live customer service representative Monday through Friday from 7:00 a.m. to 5:00 p.m. Pacific Time. As of August 13, 2012, Gilardi has received 259 calls to the Toll-Free Telephone Number.

**<u>SUMMARY</u>**

28.    In order to evaluate the overall strength and efficiency of the proposed Notice Plan, it is important to analyze how each of the media vehicles works together to direct legal notice to the Class. Although there is no way to calculate the unduplicated reach of the class members over the various vehicles used, LDG believes the plan was calculated to provide efficient Notice to a large percentage of the class. In many large nationwide consumer class actions, a participation rate of 1% is acceptable in the absence of a complete direct mailing list.

29.    The Notice Plan satisfies the due process obligation and ensures that the holdings of the critical Supreme Court decisions related to notice are satisfied, namely: a) that the Notice Plan actually informs the class, and b) that the Notice Plan was reasonably calculated to provide such information and notification.

30.    The postmark deadline for requests for exclusion was July 27, 2012. As of August 10, 2012, Gilardi has received two (2) requests for exclusion from the Settlement. A true and copy of the list of class members who have requested exclusion is attached hereto as Exhibit H.

31.    The postmark and filing deadline for objections was also July 27, 2012. As of August 10, 2012, Gilardi has received three (3) objections to the Settlement. A true and correct copy of the list of class members who have submitted objections is attached hereto as Exhibit I.

32.    As of May 24, 2012, Gilardi has incurred costs and fees for services rendered in the amount of $241,233.00, which includes the additional, four-week newspaper notice in USA Today

10

*Gallucci, et al. v. Boiron, Inc., et al.*, Case No. 11-CV-2039 JAH NLS
DECLARATION OF MARKHAM SHERWOOD IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT

1   that was not included in the original Notice Plan.  A true and correct copy of the invoice circulated

2   by Gilardi is attached hereto as Exhibit J.  After the claims filing deadline has passed, Gilardi will

3   prepare and circulate for approval an invoice for the costs of processing submitted claims,

4   distributing settlement funds and other duties related to the finalization of the settlement

5   administration.

6       I declare under penalty of perjury that the foregoing is true and correct to the best of my

7   knowledge and that this declaration was executed this 13th day of August, 2012 at San Rafael,

8   California.

9

MARKHAM SHERWOOD

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

11

## Table of Exhibits

| EXHIBIT LETTER | EXHIBIT DESCRIPTION | PAGE NUMBERS |
|---|---|---|
| Exhibit A | List of Notice Programs Implemented by LDG | 1 |
| Exhibit B | Cover Letter to the CAFA Notice | 2 |
| Exhibit C | Notice Packet | 3-20 |
| Exhibit D | Summary Notice | 21-23 |
| Exhibit E | LDG's Party-Neutral Press Release over PR Newswire's US1 National Newsline | 24-25 |
| Exhibit F | Summary Report of Outlets that Picked Up the Release | 26-47 |
| Exhibit G | Overview of the Various Online Vehicles Used in this Notice Campaign | 48 |
| Exhibit H | List of Class Members Who Have Requested Exclusion | 49 |
| Exhibit I | List of Class Members Who Have Submitted Objections | 50 |
| Exhibit J | Invoice Circulated by Gilardi | 51 |

# EXHIBIT A

**Larkspur Design Group**
**Representative Cases**

**Apparel**
  *Raygoza et al. v. Ross Stores* , No. RCV-41444 (San Bernadino County Sup. Ct., CA)
**Automotive**
  *Automobile Antitrust Coses I and ll* , No. JCCP 4298 and 4303 (San Francisco Sup. Ct., CA)
  *Howard v. Ford Motor Company* ,  No. 763785-2 (Alameda County Sup. Ct., CA)
  *New Motor Vehicles Canadian Export Antitrust Litigatio n* , No. MDL 03-1532 (Dist. Court of Maine) & *New Motor
  Vehicles Canadian Export Antitrust Litigation* , No. 2:03-MD-1532-DBH (Dist. Court of Maine)
**Communications**
  *Guyette et al. v. Viacom, Inc. et al.* , No. 828165-0 (Alameda County Sup. Ct., CA)
**Computers**
  *Schwartz v. Compaq Computer Corporation,* No. 97-55962 (295th Dist. Ct. Harris Cty, TX)
**Consumer Fraud**
  *Fields v. Crystal Geyser Waters* , No. 302774 (San Francisco Sup. Ct., CA)
**Entertainment**
  *Herbert et al. v. Endemol USA, Inc. et al.* , Case No. 2:07-cv-03537-JHN-VBKx (C.D. Cal.)
  *McDonald v. RealNetworks, Inc.* , No. 816666 (Orange County Sup. Ct., CA)
  *Pecover et al. v. Electronic Arts Inc.* , No. 08-cv-02820 CW (N.D. Cal.)
**Environment**
  *Koepf et al. v. Hanjin Shipping, Co. et al.* , No. CGC-07-469379 (San Francisco County Sup. Ct., CA)
  *Loretz et al. v. Regal Stone Limited et al.* , No. 07-5800-SC (N.D. Cal.)
  *Slaven et al. v. BP America, Inc. et al.* , No. CV 90-0722 RJK (W.D., Cal.)
  *Tarantino et al. v. Regal Stone et al.* , No. CGC-07-469379 (San Francisco County Sup. Ct., CA)
**Financial Services**
  *Seaman v. Wells Fargo Bank,* No.984497 (San Francisco Sup. Ct., CA)
**Funeral**
  *California Consumers v. SCI California Funeral Services, Inc. ,*  No. 35035 (Lake County Sup. Ct., CA)
**Government**
  *McKesson Governmental Entities Average Wholesale Price Litigation* , No. 1:08-cv-10843-PBS (D. Mass.)
**Internet Shopping**
  *Toys 'R' Us, Inc. Privacy Litigation* , No. C-00-2746-MMC (N.D. Cal.)
**Insurance**
  *L.A. Airline, Inc. v. Republic Indemnity Company of California* , No. BC 156891 (Los Angeles Sup. Ct., CA)
  *Patrick v. California Physicians' Service dba Blue Shield of California* , No. 953338 (San Francisco Sup. Ct., CA)
**Labor**
  *Aguardo et al. v. Pizza Hut, Inc. et al.* , No. 994947 (San Francisco Sup. Ct., CA)
**Product Liability**
  *Lifescan Consumer Litigation,* No. C-98-20321-JF (N.D. Cal.)
  *Mattel, Inc., Toy Lead Paint Products Liability Litigation* , No. 2:07-ML-01897-DSF-AJW (S.D. Cal.)
**Railroad**
  *Bryna Stepak v. Drew Lewis et al. (Derivative Action of Bassman v. Union Pacific Corporation)* , No. 342-175282-98
  (342nd Dist. Ct., Tarrant Cty, TX)
**Restaurants**
  *Weaver v. Wendy's International Inc.* , No. CV 788560 (Santa Clara County Sup. Ct., CA)
**Securities**
  *Lucent Technologies* , Civil Action No. 00-621(AJL) (D. New Jersey)
**Technology**
  *Barrood v. IBM,* No. MER-L-843-98 (Mercer County Sup. Ct., NJ)
  *SRAM Antitrust Litigation* , No. 4:07-MD-01819-CW (N.D. Cal) & *SRAM Antitrust Litigation* , No. 4:07-md-1819 CW,
  MDL No. 1819 (N.D. Cal)
**Telecommunications**
  *White v. Cellco Partnership* , No. RG04-137699 (Alameda County Sup. Ct., CA)
**Tobacco**
  *Philip Morris v. Daniels* , No. 719446 (San Diego Sup. Ct., CA)
**Utilities**
  *Klein v. Southwest Gas Corporation, et al.* ,  No. 99evl891-L (S.D. Cal.)

**EXHIBIT A PAGE 1**

# EXHIBIT B

# PATTON BOGGS LLP

2550 M Street, NW
Washington, DC 20037
202-457-6000
Facsimile 202-457-6315
www.pattonboggs.com

March 16, 2012

**VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED**

Re:      Gallucci v. Boiron, No. 3:11-CV-2039 JAH NLS (S.D. Cal.)

Dear Attorney General:

This is a notice of a proposed settlement of a class action lawsuit. SALVATORE GALLUCCI v. BOIRON, INC. and BOIRON USA, INC., ("Boiron"), the Defendant in the above-referenced action, through Gilardi & Co. LLC, hereby provides the following Notice pursuant to the requirements of Section 1715 of the Class Action Fairness Act (28 U.S.C. § 1715). Enclosed is a CD containing documents related to the proposed settlement of the above-named matter, which is pending in the United States District Court for the Southern District of California. The contents of the CD are:

1.) Class Action Initial Complaint
2.) First Amended Complaint
3.) Application to File Under Seal
4.) Class Action Settlement Agreement
5.) Motion for Settlement
6.) Memorandum in Support of Motion
7.) Declaration of Ronald A. Marron in Support of Motion (including, as exhibits: Class Action
         Settlement Agreement, Draft Publication Notice, and Draft Claim Form)
8.) Declaration of Christina G. Sarchio in Support of Motion
9.) Declaration of Mark Land in Support of Motion
10.) Proof of Service: Motion for Settlement
11.) Proof of Service: Order Preliminarily Approving Settlement
12.) State Breakdown/Percentage Table of Class Members

Christina Guerola Sarchio, Esquire, of Patton Boggs LLP and Vickie E. Turner, Esquire, of Wilson, Turner and Kosmo LLP are co-counsel for the Defendants. Should you have any questions regarding this Notice or the enclosed information, Mrs. Sarchio can be reached at 202-457-7527 and Ms. Turner can be reached at 619-236-9600, or you may also contact Gilardi at 415-458-3044.

Sincerely,

Christina Guerola Sarchio
Partner

**EXHIBIT B PAGE 2**

# EXHIBIT C

**DETAILED NOTICE OF PROPOSED CLASS ACTION SETTLEMENT**

*Gallucci v. Boiron, Inc. et al.*

**Case No. 11-cv-2039-JAH-NLS**

**If you purchased a homeopathic product manufactured by Boiron, such as Oscillococcinum, Children's Oscillococcinum, Arnicare, Quietude, Camilia, Coldcalm and others, you may be entitled to a cash refund from a class action settlement.**

A federal court authorized notice of this settlement.  This is not a solicitation from a lawyer.

IMPORTANT: PLEASE READ THIS NOTICE CAREFULLY

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
| --- | --- |
| SUBMIT THE CLAIM FORM | The only way to get a cash refund. |
| EXCLUDE YOURSELF | Get out of the lawsuit and the settlement.  Get no cash refund. |
| COMMENT OR OBJECT | Write the Court about why you do, or do not, like the Settlement. |
| DO NOTHING | You will get no cash refund and you give up your rights. |

Your rights and options – and the deadlines to exercise them – are explained in this notice.

*Para una notificación en Español, llamar (877) 256-3879 o visitor www.gilardi.com/boironsettlement*

| **1.    What is this notice and why should I read it?** |
| --- |

This Detailed Notice advises you of a proposed class action settlement entitled *Gallucci et al. v. Boiron, Inc. et al.,* No. 11-cv-2039-JAH-NLS (the "Action"), brought on behalf of the Class, and pending in the United States District Court for the Southern District of California. You need not live in California to get a benefit under the Settlement.  The Settlement resolves a lawsuit over whether Boiron Inc. and Boiron USA, Inc. ("Defendants") falsely advertised that its Oscillococcinum and Children's Oscillococcinum ("Oscillo"), Arnicare, Quietude, Camilia, Coldcalm and other homeopathic products manufactured by Boiron and sold in the United States (collectively, the "Products") relieve the symptoms they are advertised to relieve.  Boiron stands by its advertising and denies it did anything wrong.  You should read this entire Detailed Notice carefully because your legal rights are affected whether you act or not.  A complete listing of the Products involved in this lawsuit is available at www.gilardi.com/boironsettlement.

The Court has granted preliminary approval of the Settlement and has set a final hearing to take place on August 13, 2012 at 2:30 p.m. in the Courtroom of the Honorable John A. Houston, United States District Court for the Southern District of California, to determine if the Settlement is fair, reasonable and adequate, and to consider the request by Class Counsel for attorneys' fees and expenses, and incentive awards for the class representatives.

| **2.    What is a class action lawsuit and what is this lawsuit about?** |
| --- |

A class action is a lawsuit in which one or more plaintiffs sue on behalf of themselves and other people who may have similar claims. In this case, Plaintiffs are Salvatore Gallucci, Kim Jones, Doris Petty, Amy Aronica, and Jeanne Prinzivalli.  The Defendants are Boiron Inc. and Boiron USA, Inc. (collectively, "Defendants" or "Boiron").  Together, Plaintiffs and Defendants are referred to in this notice as the "Parties".  Defendants are the manufacturers of multiple homeopathic drugs that are advertised to provide relief for the symptoms of common ailments including but not limited to the seasonal flu, muscle pain and stiffness, cough, the common cold, sleeplessness, restless sleep, occasional awakening, and relief of symptoms associated with baby teething, such as painful gums, irritability and minor digestive disorders.  This Settlement involves all current homeopathic products manufactured by Boiron and sold in the United States, including all generic or other-named products, in any variation, format, dosage, dilution or package, with certain exceptions (collectively, the "Products").  A complete listing of the Products involved in this lawsuit is available at www.gilardi.com/boironsettlement.

Plaintiffs have decided to settle the claims against the Defendants on behalf of all members of the Class by entering into a written settlement agreement called the "Settlement Agreement."  The individuals on whose behalf the Settlement has been made are called "Class Members."  The individuals who make up the Class (i.e. the Class Members) are described in Question No. 4 below.

The Settlement has already been preliminarily approved by the Court.  Nevertheless, because the settlement of a class action determines the rights of all members of the proposed class, the Court in which this lawsuit is pending must give final approval to the Settlement before it can take effect.

The Court has conditionally certified the Class for settlement purposes only, so that members of the Class can be given notice and the opportunity to (i) exclude themselves from the Class, (ii) voice their support or opposition to final approval of the Settlement, and (iii) learn how to submit a Claim Form to get the relief offered by the Settlement.  If the Settlement is not given final approval by the Court, or the Parties terminate it, the Settlement will be void, and the lawsuit will continue as if there had been no Settlement and no certification of the Class.

| **3.    Why is there a settlement?** |
| --- |

The Court has not decided in favor of either side in the case.  Defendants deny all allegations of wrongdoing or liability against them and assert that their conduct was lawful.  Defendants are settling to avoid the expense, inconvenience, and inherent risk and disruption of litigation.  Plaintiffs and their attorneys believe that the Settlement is in the best interests of the Class because it provides an appropriate recovery for Class Members now while avoiding the risk, expense, and delay of pursuing the case through trial and any appeals.

**EXHIBIT C PAGE 3**

**4.   Who is included in the settlement?**

The Class covered by the Settlement is defined as follows: All persons in the United States who purchased the Products from January 1, 2000 through Final Judgment in the Litigation ("the Class Period"). The Class expressly excludes Defendants, their officers, directors, employees and immediate families; and the Court, its officers and their immediate families.  The class also excludes claims for Children's ColdCalm made by members of the class certified in the matter of *Delarosa v. Boiron, Inc. et al.,* No. 10-cv-1569-JST (C.D. Cal.) (the "Delarosa Class Members"), e.g., "all persons who are domiciled or reside in California, who purchased Children's Coldcalm for personal use at any time during the four years preceding the filing" of the complaint in that action, *see Delarosa v. Boiron, Inc.*, 275 F.R.D. 582 (C.D. Cal. Aug. 24, 2011), but does not exclude claims made by Delarosa Class Members as to all other Products.

**5.   What does the settlement provide?**

   **A.   Payments to Class Members.**

   Boiron will pay a sum total of $5,000,000 for (i) valid claims submitted by Class Members, (ii) Class Counsel's attorneys' fees and expenses, (iii) incentive awards to Plaintiffs for their effort in bringing the Action, (iv) costs of notice and claims administration, and (v) any applicable taxes.  Any of the $5,000,000 remaining after payment of all claims, attorneys' fees and expenses, the incentive awards, administrative costs, and taxes will be distributed fifty (50) percent to a Court-approved non-profit pro-consumer organization or organizations dedicated to food and drug labeling concerns; and fifty (50) percent to Claimants as a supplemental distribution.

   If you are a member of the Class (defined in the answer to Question No. 4 above), and you do not exclude yourself from the Class, you can submit a claim to receive a cash payment.

   **Claims Submitted With Proof of Purchase**: If you are able to provide proof of purchase from any retailer in the United States (e.g., receipt or packaging) ("Proof of Purchase"), you may submit a claim which will entitle you to a refund of the amount(s) shown on the receipt, or the suggested retail price of the Product as determined by information on the packaging, such as bar or SKU code, subject to a cap of $100.00 per household.

   **Claims Submitted Without Proof of Purchase**: If you are unable to provide Proof of Purchase but swears or affirm under penalty of perjury that you purchased a Product during the Class Period, you may submit a claim for $10.00 per Product, with a cap of $50.00 per household.

   **Process:** To be eligible for a payment pursuant to the Settlement, a Class Member must submit a claim that (i) is postmarked (or dated, if submitted online) by the Claim Filing Deadline, which will be forty-five (45) days after the date the Court enters the judgment, and (ii) contains all of the required information and documentation set forth in the claim form.

   You can file a claim online or download a claim form by going to www.gilardi.com/boironsettlement and following the instructions provided on the website.   You can also get a claim form by writing to the Settlement Administrator at Boiron Settlement Administrator, c/o Gilardi & Co. LLC, P.O. Box 8060, San Rafael, CA 94912-8060 or calling toll-free (877) 256-3879.

   If the aggregate number of claims exceeds the Net Settlement Fund, payments to Class Members may be subject to pro rata reduction.

   **B.   Injunctive Relief.**

   If the Settlement is approved at the Final Approval Hearing, the Defendants will modify the labels and packaging for the Products and the Defendants' web pages as described below on a rolling basis to be completed within twenty-four (24) months of the date the Settlement becomes Final (the "Effective Date").

   **Packaging Modifications:** (i)FDA Disclaimer: Defendants will include the following language on the same outer label or package panel that bears the Drug Facts box: "These 'Uses' have not been evaluated by the Food and Drug Administration,"; (ii)Dilution Disclaimer:  The back panel of each Product's outer label or package shall be modified to include the following language in close proximity to the Drug Facts: "C, K, CK, and X are homeopathic dilutions: see www. [link created pursuant to Paragraph 4.1.4] for details."

   **Web Page Modifications:** Defendants will modify the www.boironusa.com web page, and all web pages that Defendants own as to each of the Products (i.e., www.chestal.com, www.childrenschestal.com, www.oscillo.com, www.childrensoscillo.com, www.arnicare.com, and www.camiliateething.com, the "Individual Product Web Sites), as follows: (i)The Homeopathic Dilution Page currently on www.boironusa.com at http://www.boironusa.com/homeopathy/homeopathic-dilution.php shall be moved so that it is accessible from the Home page, instead of its current placement underneath the Homeopathy tab ("Homeopathic Dilution Page"); (ii)The Homeopathic Dilution Page shall also appear as a direct link on the Home page of each of the Individual Product Web Sites and on every other one of Defendants' individual product web site now existing or in development; (iii)The Homeopathic Dilution Page shall provide an explanation of the K, CK and X dilutions that substantially conform to the explanations provided by the HPUS and homeopathic literature, and shall include a question and answer format, explaining the level of dilution or method, as provided in Exhibit E of the Settlement Agreement. (iv)The link to the FDA web site for the CPG § 400.400 document, located at http://www.boironusa.com/homeopathy/what-is-homeopathy.php, shall be fixed so that it is a working link. Defendants shall take reasonable steps to ensure that the link remains working in future.

**6.   Who represents the Class?**

   **A.   Class Representatives.**  For purposes of the Settlement, the Court has appointed Plaintiffs Salvatore Gallucci, Kim Jones, Doris Petty, Amy Aronica, and Jeanne Prinzivalli to serve as the class representatives.   The Class Representatives are entitled to seek incentive awards, subject to Court approval.   Defendants shall have the option of responding to any such incentive award application, including by contesting the amount of the incentive awards requested.

**EXHIBIT C PAGE 4**

**B.   Class Counsel.**   The Court has approved the appointment of The Law Offices of Ronald A. Marron and The Weston Firm as Class Counsel.  You will not be charged for these lawyers.  If you want to be represented by your own lawyer, you may hire one at your own expense.

From the beginning of the case on September 2, 2011 to the present, Class Counsel have not received any payment for their services in prosecuting the case or obtaining the Settlement, nor have they been reimbursed for any out-of-pocket expenses they have incurred.  Class Counsel will apply to the Court for an award of attorneys' fees plus actual expenses (including their court costs), subject to Court approval.  Defendants shall have the option of responding to any such application, including by contesting any fees and expenses requested. If the Court approves the attorneys' fee and expense application, it will be paid from the Settlement Fund.  The Class Members will not have to pay anything toward the fees or expenses of Class Counsel.  Class Counsel will seek final approval of the Settlement on behalf of all Class Members.  You may hire your own lawyer to represent you in this case if you wish, but it will be at your own expense.

## 7.   How can I exclude myself from the Class?

You can get out of the Settlement and the Class by "excluding" yourself (also called "opting-out").  If you exclude yourself, you will not be able to submit a claim form, and you will not be entitled to claim any of the relief offered by the Settlement.  If you choose to exclude yourself from the Class, you may pursue whatever legal rights you may have in any separate proceeding if you choose to do so, but you will have to do so at your own expense.

To request exclusion from the Class, you must send a letter saying that you want to be excluded from the class in *Gallucci v. Boiron, Inc. et al.*, No. 11-cv-2039-JAH-NLS.  **"Mass," or "class"** opt-outs shall not be accepted.  Your exclusion request must include your name, address, telephone number, signature, and a signed statement to the effect that: "I hereby request to be excluded from the proposed Class in *Gallucci v. Boiron, Inc. et al.,* No. 11-cv-2039-JAH-NLS."  **Your exclusion request must be postmarked no later than July 14, 2012, and sent via first class mail to the Settlement Administrator at the following address: Boiron Settlement Administrator, c/o Gilardi & Co. LLC, P.O. Box 8090, San Rafael, CA 94912-8090.**

A request for exclusion that does not include all the above information, that is sent to an address other than the one listed above, or that is not received on time, will not be valid and the person(s) asking to be excluded will be considered a member(s) of the Class, and will be bound as a Class Member(s) by the Settlement.

If you elect to opt-out, you will (i) <u>not</u> have any rights as a Class Member pursuant to the Settlement, (ii) <u>not</u> be able to receive any payments as provided in the Settlement, (iii) <u>not</u> be bound by any further orders or judgments in this case, and (iv) remain able to pursue the claims alleged in the case against Defendants by filing your own lawsuit at your own expense.  If you proceed on an individual basis, you might receive more, or less, of a benefit than you would otherwise receive under this Settlement or no benefit at all.

## 8.   How can I tell the Court what I think about the Settlement?

If you do not exclude yourself from the Class, you or your attorney can comment in support of or opposition to the Settlement and have the right to appear before the Court to do so.  **Your objection to or comment on the Settlement must be submitted in writing to the Settlement Administrator at the following address: Boiron Settlement Administrator, c/o Gilardi & Co. LLC, P.O. Box 8060, San Rafael, CA 94912-8060, by July 14, 2012.**  You must also send copies of your comment or objection to the Court and the attorneys for the Parties at the following addresses:

| Clerk of the Court | Class Counsel | Defendants' Counsel |
|---|---|---|
| United States District Court | Ronald A. Marron | Christina Guerola Sarchio |
| Southern District of California | Law Offices of Ronald A. Marron, APLC | Patton Boggs LLP |
| 880 Front Street, Suite 4290 | 3636 Fourth Avenue, Ste. 202 | 2550 M St, NW |
| San Diego, CA 92101-8900 | San Diego, CA 92103 | Washington, DC 20037 |

The objection or comment must be in writing and include the case name *Gallucci v. Boiron, Inc. et al.,* No. 11-cv-2039-JAH-NLS, and (a) the Class Member's full name and current address; (b) a signed declaration that he or she is a Class Member; (c) the factual basis and legal grounds for the objection, including any documents sufficient to establish the basis for their standing as a Class Member such as verification under oath as to the approximate date(s) and location(s) of their purchase(s) of the Products; (d) identification of the case name, case number, and court for any prior class action lawsuit in which the objector has objected to a proposed class action settlement, the general nature of such prior objection(s), and the outcome of said prior objection(s); (e) identification of the case name, case number, and court for any prior class action lawsuit in which the objector and the objector's attorney (if applicable) has objected to a proposed class action settlement, the general nature of such prior objection(s), and the outcome of said prior objection(s); (f) the payment terms of any fee agreement between the objector and the objector's attorney with respect to the objection; and (g) any attorneys' fee sharing agreement or referral fee agreement between or among the objector, the objector's attorney, and/or any third party, including any other attorney or law firm, with respect to the objection.

If you wish to appear at the hearing, you will need to file a notice of intention to appear, either in person or through an attorney, with the Court and list the name, address and telephone number of the attorney, if any, who will appear. This notice of intention to appear will need to be filed no later than July 14, 2012.

If you do not submit a written comment on the proposed Settlement or the applications of the Class Representative and Class Counsel for an incentive award and attorneys' fees and expenses, respectively, in accordance with the deadline and procedure set forth above, and you are not granted relief by the Court, you will waive your right to be heard at the fairness hearing.

If you do not object as described above, and you do not exclude yourself from the Class, you will be deemed to have consented to the Court's certification of, and jurisdiction over, the Class, and to have released the Released Claims (defined in the Settlement Agreement).

3

**EXHIBIT C PAGE 5**

| 9. | What is the effect of final settlement approval? |
|---|---|

If the Court grants final approval of the Settlement, the Court will enter a final order and judgment, and dismiss the case. The release by Class Members will then take effect. All Class Members will release, with the exception of claims for personal injury, any and all claims, demands, rights, suits, liabilities, and causes of action of every nature and description whatsoever, known or unknown, matured or unmatured, at law or in equity, existing under federal and/or state law, contingent or non-contingent, suspected or unsuspected, against Defendants and the Released Persons (as defined in Section 1.29 of the Settlement Agreement) and which arise out of or are related in any way to statements made in or in connection with Defendants' advertising, marketing, packaging, labeling, promotion, manufacture, sale and distribution of the Products, that have been brought, could have been brought, or are currently pending, in any forum in the United States (including their territories and Puerto Rico), up to the Effective Date. Class Members and Plaintiffs will also release any claims that are alleged or could have been alleged in the Action. Please refer to Section 6 of the Settlement Agreement for a full description of the claims and persons that will be released upon final approval of the Settlement.

There is a certain amount of time to appeal the final order and judgment. Once that time has expired with no appeal having been filed, or when any appeal(s) that has been filed is conclusively resolved, claim forms and payments under the Settlement will then be processed, and claim payments will then be distributed.

Whether you consider the Settlement favorable or unfavorable, any and all Class Members who do not exclude themselves from the Class will <u>not</u> be permitted to continue to assert released claims in any other litigation against Defendants or other persons and entities covered by the release. You can obtain a copy of the Settlement Agreement from the Clerk of the Court, online at www.gilardi.com/boironsettlement, or by writing to the Settlement Administrator at Boiron Settlement Administrator, c/o Gilardi & Co. LLC, P.O. Box 8060, San Rafael, CA 94912-8060. If you do not wish to be a Class Member, you must exclude yourself from the Class (see Question No. 7 above).

If the Settlement is not approved, the case will proceed as if no settlement had been attempted or reached. There can be no assurance that if the Settlement is not approved and the case resumes, the Class will recover more than is provided for under the Settlement, or will recover anything at all.

| 10. | When and where will the Court hold a hearing on the fairness of the Settlement? |
|---|---|

A fairness hearing has been set for August 13, 2012 at 2:30 p.m., before Judge John A. Houston in his courtroom at the United States District Court for the Southern District of California, 940 Front Street, San Diego, California, 92101. At the hearing, the Court will hear any properly submitted comments, objections, and arguments concerning the fairness of the proposed settlement, including the amount requested by Class Counsel for attorneys' fees and expenses and incentive awards for the Class Representatives. If you have filed an objection to the Settlement, you or your own lawyer need to attend this hearing to have the objection considered by the Court.

<u>Note:</u> The date and time of the fairness hearing are subject to change by Court Order.

| 11. | Do I have to come to the fairness hearing?  May I speak at the hearing? |
|---|---|

You do not need to attend the fairness hearing to remain a Class Member or submit a claim for a cash payment. You or your own lawyer may attend the hearing if you wish, at your own expense.

If you do not exclude yourself from the Class, you may ask the Court for permission to speak at the hearing concerning the proposed Settlement or the application of Class Counsel for attorneys' fees and expenses and incentive awards for the Class Representatives by following the instructions in Question No. 8 above.

| 12. | How do I receive my share of the Settlement? |
|---|---|

If you do not exclude yourself from the Class, and would like to receive money, you must submit a timely and valid claim form as set forth in the answer to Question No. 5 above. **Claim forms must be submitted online or postmarked by the Claim Filing Deadline, which will be forty-five (45) days after the date the Court enters the judgment.** You can file a claim online or download a copy of the claim form at www.gilardi.com/boironsettlement, or obtain a copy of the claim form by writing to the Settlement Administrator at Boiron Settlement Administrator, c/o Gilardi & Co. LLC, P.O. Box P.O. Box 8060, San Rafael, CA 94912-8060 or calling toll-free (877) 256-3879.

| 13. | What happens if I do nothing at all? |
|---|---|

If you do nothing, you will receive no payment from the Settlement. You will still be part of the Class, however, and subject to the release described in Section 6 of the Settlement Agreement and Question No. 9 above. This means you will not be permitted to continue to assert released claims in any other case against Defendants or other persons or entities covered by the release. Please refer to Section 6 of the Settlement Agreement for a full description of the claims and persons who will be released upon final approval of the Settlement.

| 14. | Where do I get additional information? |
|---|---|

This notice provides only a summary of the matters relating to the Settlement. For more detailed information, you may wish to review the Settlement Agreement. You can view the Settlement Agreement and get more information at www.gilardi.com/boironsettlement. You can also get more information by calling toll-free (877) 256-3879. The Settlement Agreement and all other pleadings and papers filed in the case are available for inspection and copying during regular business hours at the office of the Clerk of the United States District Court for the Southern District of California, 880 Front Street, Suite 4290, San Diego, CA 92101-8900.

If you would like additional information, you can also write to Class Counsel at the address listed in Question No. 8 above.

**PLEASE DO <u>NOT</u> CONTACT THE COURT, THE JUDGE, OR THE DEFENDANTS WITH QUESTIONS ABOUT THE SETTLEMENT**

4

EXHIBIT C PAGE 6

**AVISO DETALLADO DE LA CONCILIACIÓN PROPUESTA PARA LA DEMANDA COLECTIVA**

*Gallucci vs. Boiron, Inc. et al.*

**Caso Nº 11-cv-2039-JAH-NLS**

**Si adquirió un producto homeopático fabricado por Boiron como Oscillococcinum, Oscillococcinum para niños, Arnicare, Quietude, Camilia o Coldcalm y otros, es posible que tenga derecho a un reembolso en efectivo de la conciliación de una demanda colectiva.**

Un tribunal federal autorizó el aviso de esta conciliación. Ésta no es una solicitud de un abogado.

IMPORTANTE: LEA ESTE AVISO CUIDADOSAMENTE

| SUS DERECHOS LEGALES Y OPCIONES EN ESTA CONCILIACIÓN | |
|---|---|
| **PRESENTE EL FORMULARIO DE RECLAMACIÓN** | La única forma de obtener un reembolso en efectivo. |
| **EXCLÚYASE** | Salga de la demanda y de la conciliación. No obtendrá reembolso de efectivo. |
| **COMENTAR U OBJETAR** | Escriba al Tribunal explicando por qué le gusta o no la Conciliación. |
| **NO HACER NADA** | No obtendrá ningún reembolso en efectivo y renunciará a sus derechos. |

Sus derechos y opciones, y las fechas límite para ejercerlos, se explican en este aviso.

***Para obtener una notificación en español, llamar (877) 256-3879 o visitar www.gilardi.com/boironsettlement***

**1.  ¿Qué es este aviso y por qué debería leerlo?**

Este Aviso Detallado le informa de una conciliación propuesta para la demanda colectiva titulada *Gallucci et al. vs. Boiron, Inc. et al.*, Nº 11-cv-2039 -JAH-NLS (la "Demanda"), presentada en nombre del colectivo y pendiente en el Tribunal de Distrito de los Estados Unidos para el Distrito Sur de California. No tiene que vivir California para obtener un beneficio según la conciliación. La Conciliación resuelve una demanda acerca de si Boiron Inc. y Boiron USA, Inc. ("Demandados") anunciaron falsamente que su Oscillococcinum y Oscillococcinum para niños ("Oscillo"), Arnicare, Quietude, Camilia, Coldcalm y otros productos homeopáticos fabricados por Boiron y vendidos en los Estados Unidos (colectivamente, los "Productos") alivian los síntomas que anuncian que pueden aliviar. Boiron respalda su publicidad y niega haber hecho nada mal. Debe leer cuidadosamente este Aviso Detallado en su totalidad, porque sus derechos se verán afectados ya sea que actúe o que no lo haga. Una lista completa de los Productos involucrados en esta demanda está disponible en www.gilardi.com/boironsettlement.

El Tribunal ha concedido la aprobación preliminar de la Conciliación y ha fijado una audiencia final que tendrá lugar el 13 de agosto de 2012 a las 2:30 p.m. en la sala del Honorable John A. Houston, del Tribunal de Distrito de los Estados Unidos para el Distrito Sur de California, para determinar si la conciliación es justa, razonable y adecuada, y para someter a consideración la solicitud del Abogado del Colectivo de honorarios y gastos de abogados, y adjudicación de incentivos para los representantes del colectivo.

**2.  ¿Qué es una demanda colectiva y de qué trata esta demanda?**

Una demanda colectiva es una demanda en la que uno o más demandantes demandan en su nombre y el de otras personas que puedan tener reclamaciones similares. En este caso, los demandantes son Salvatore Gallucci, Kim Jones, Doris Petty, Amy Aronica y Jeanne Prinzivalli. Los Demandados son Boiron Inc. y Boiron USA, Inc. (colectivamente, "Demandados" o "Boiron"). Juntos, los Demandantes y los Demandados se mencionan en el presente aviso como las "Partes". Los Demandados son los fabricantes de varios medicamentos homeopáticos que se anuncian que proporcionan alivio para los síntomas de enfermedades comunes incluyendo, entre otras, la gripe estacional, el dolor y rigidez musculares, la tos, el resfriado común, el insomnio, el sueño inquieto y el despertar ocasional, y alivio de los síntomas asociados con la dentición del bebé, tales como dolor de encías, irritabilidad y trastornos digestivos leves. Esta Conciliación incluye a todos los productos homeopáticos actuales fabricados por Boiron y vendidos en los Estados Unidos, incluyendo todos los productos genéricos o de otro nombre, en cualquier variación, formato, dosis, dilución o empaque, con ciertas excepciones (colectivamente, los "Productos"). Una lista completa de los Productos involucrados en esta demanda está disponible en www.gilardi.com/boironsettlement.

Los Demandantes han decidido resolver las reclamaciones contra los Demandados en nombre de todos los miembros del Colectivo presentando un acuerdo por escrito denominado "Acuerdo de conciliación". Las personas en cuyo

**EXHIBIT C PAGE 7**

nombre se hace la Conciliación se llaman "Miembros del colectivo". Los individuos que componen el Colectivo (es decir, los Miembros del Colectivo) se describen en la pregunta N° 4 abajo.

La Conciliación ya ha sido aprobada de manera preliminar por el Tribunal. Sin embargo, dado que la Conciliación de una demanda colectiva determina los derechos de todos los Miembros del Colectivo propuesto, el Tribunal ante el cual está pendiente esta demanda debe dar su aprobación definitiva a la Conciliación antes de que pueda entrar en vigor.

El Tribunal ha certificado condicionalmente al Colectivo únicamente para fines de la conciliación, de modo que se pueda dar a los miembros del Colectivo el aviso y la oportunidad de (i) excluirse del Colectivo, (ii) expresar su apoyo u oposición a la aprobación final de la Conciliación, y (iii) saber cómo presentar un formulario de solicitud para obtener la reparación ofrecida por la Conciliación. Si la Conciliación no recibe la aprobación definitiva del Tribunal o las Partes la dan por terminada, la Conciliación será nula y la demanda continuará como si no hubiera habido ninguna Conciliación ni se hubiera certificado el Colectivo.

## 3.  ¿Por qué hay una conciliación?

El Tribunal no ha decidido a favor de ninguna de las partes del caso. Los Demandados niegan todas las denuncias de irregularidades o responsabilidad contra ellos, y afirman que su conducta fue lícita. Los Demandados están conciliando para evitar el gasto, las molestias y el riesgo inherente a la perturbación que implica un litigio. Los Demandantes y sus abogados creen que la Conciliación es lo más conveniente para el Colectivo porque proporciona una recuperación adecuada para los Miembros del Colectivo ahora al tiempo que evita el riesgo, los gastos y el retraso de llevar el caso a través del juicio y las apelaciones.

## 4.  ¿Quién está incluido en la conciliación?

El Colectivo cubierto por la Conciliación se define como sigue: Todas las personas en los Estados Unidos que compraron los Productos desde el 1° de enero de 2000 hasta la sentencia definitiva en el litigio ("el Período del Colectivo"). El Colectivo excluye expresamente a los Demandados, sus funcionarios, directores, empleados y familiares inmediatos, y al Tribunal, sus funcionarios y sus familias inmediatas. El colectivo también excluye las reclamaciones para ColdCalm para niños formuladas por miembros del colectivo certificados en el caso de *Delarosa vs. Boiron, Inc. et al.*, No. 10-cv-1569-JST (C.D. Cal.) (los "Miembros del Colectivo Delarosa"), por ejemplo, "todas las personas que están domiciliadas o residen en California, que compraron Coldcalm para niños para uso personal en cualquier momento durante los cuatro años anteriores a la presentación" de la queja en esa demanda, *ver Delarosa vs. Boiron, Inc.*, 275 F.R.D. 582 (C.D. Cal. 24 de agosto de 2011), pero no excluye las reclamaciones formuladas por los Miembros del Colectivo Delarosa en lo referente a todos los demás productos.

## 5.  ¿Qué proporciona la conciliación?

### A.  Pagos a los Miembros del Colectivo .

Boiron pagará un suma total de $5,000,000 de dólares por (i) reclamaciones válidas presentadas por los Miembros del Colectivo, (ii) honorarios y gastos del Abogado del Colectivo, (iii) la adjudicación de incentivos a los Demandantes por su esfuerzo al interponer la demanda, (iv) los costos de administración de avisos y reclamaciones, y (v) cualesquiera impuestos aplicables. Cualquier parte de los $5,000,000 de dólares restantes después del pago de todas las reclamaciones, honorarios y gastos de abogados, asignaciones de incentivos, costos administrativos e impuestos se distribuirá un cincuenta (50) por ciento a una organización sin fines de lucro en favor de los consumidores u organizaciones dedicadas a temas de etiquetado de comidas y medicamentos aprobadas por el Tribunal, y el otro cincuenta (50) por ciento a los Demandantes como reparto complementario.

Si usted es miembro del Colectivo (definido en la respuesta a la pregunta N° 4 arriba) y no se ha excluido del mismo, puede enviar una solicitud para recibir un pago en efectivo.

**Reclamaciones presentadas con comprobante de compra**: Si usted puede proporcionar una prueba de compra de cualquier minorista en los Estados Unidos (por ejemplo, recibo o envases) ("Comprobante de compra"), podrá presentar una reclamación que le da derecho al reembolso de la cantidad mostrada en el recibo o el precio de venta sugerido del Producto según lo determina la información del empaque, como serían el código de barras o el SKU, sujeto a un tope de $100.00 dólares por hogar.

2

**EXHIBIT C PAGE 8**

**Reclamaciones presentadas sin comprobante de compra**: Si no puede proporcionar comprobante de compra pero jura o afirma bajo pena de perjurio que compró un producto durante el Período del Colectivo, podrá presentar una reclamación de $10.00 dólares por Producto, con un tope de $50.00 dólares por cada hogar.

**Proceso:** A fin de ser elegible para un pago con arreglo a la Conciliación, los Miembros del Colectivo deben presentar una reclamación que (i) tenga matasellos (o fecha, si se presenta en línea) a más tardar con la Fecha Límite de Presentación de Reclamaciones, que será de cuarenta y cinco (45) días después de la fecha en que el Tribunal dicte sentencia, y (ii) contenga toda la información requerida y la documentación establecidas en el formulario de reclamación.

Puede presentar una reclamación en línea o descargar un formulario de reclamación visitando www.gilardi.com/boironsettlement y siguiendo las instrucciones proporcionadas en el sitio web.  También puede obtener un formulario de reclamación comunicándose por escrito con el Administrador de la Conciliación en Administrador de la Conciliación de Boiron, c/o Gilardi & Co. LLC, P.O. Box 8060, San Rafael, CA 94912-8060 o llamando sin costo al (877) 256-3879.

Si el número total de solicitudes supera el fondo de liquidación neto, los pagos a los Miembros del Colectivo pueden verse sujetos a una reducción prorrateada.

**B.   Medidas cautelares.**

Si se aprueba la conciliación en la Audiencia Final de Aprobación, los Demandados modificarán las etiquetas y los empaques de los productos y sus páginas web como se describe a continuación en forma progresiva a completarse en un plazo de veinticuatro (24) meses a partir de la fecha en que la Conciliación se vuelva definitiva (la "Fecha de vigencia").

**Modificaciones de los empaques:** (i)Descargo de la FDA: Los Demandados incluirán el siguiente texto en la misma etiqueta externa o panel del paquete que tiene el cuadro de datos del medicamento: "Estos 'usos' no han sido evaluados por la Agencia de Alimentos y Medicamentos", (ii)Descarga de la dilución: El panel posterior de la etiqueta exterior o empaque de cada Producto se modificará para incluir el siguiente texto cercano a los datos del medicamento: "C, K, CK y X son diluciones homeopáticas: consulte www. [vínculo creado con arreglo al párrafo 4.1.4] para obtener más información".

**Modificaciones de la página Web:** Los Demandados modificarán la página web www.boironusa.com y todas las páginas web que posean en lo referente a cada uno de los productos (es decir, www.chestal.com, www.childrenschestal.com, www.oscillo.com, www.childrensoscillo.com, www.arnicare.com y www.camiliateething.com, las "Páginas web de los productos individuales"), como sigue: (i) La página de dilución homeopática actualmente en www.boironusa.com en http://www.boironusa.com/homeopathy/homeopathic-dilution.php se moverá para que sea accesible desde la página de inicio, en lugar de su ubicación actual debajo de la ficha de Homeopatía ("Página de dilución homeopática"); (ii)La página de dilución homeopática figurará también como enlace directo en la página de inicio de cada una de las páginas web de los productos individuales y en cada una de las páginas web de productos individuales de los Demandados que actualmente existan o que estén en desarrollo; (iii)la página de dilución homeopática deberá dar una explicación de las diluciones K, CK y X que se ajuste sustancialmente a las explicaciones proporcionadas por la HPUS y la literatura homeopática, e incluirá un formato de preguntas y respuestas, explicando el nivel o método de dilución, tal como se prevé en la exposición E de la Conciliación. (iv)El enlace al sitio web de la FDA para el documento § 400.400 CPG, ubicado en http://www.boironusa.com/homeopathy/what-is-homeopathy.php se reparará para que sea un vínculo que funcione. Los Demandados adoptarán medidas razonables para garantizar que el enlace siga funcionando en el futuro.

**6.   ¿Quién representa al Colectivo?**

**A.   Los Representantes del Colectivo.**   A efectos de la Conciliación, el Tribunal ha nombrado a los Demandantes Salvatore Gallucci, Kim Jones, Doris Petty, Amy Aronica y Jeanne Prinzivalli para actuar como Representantes del Colectivo.  Los Representantes del Colectivo tienen derecho a buscar asignaciones de incentivos, sujetas a la aprobación del Tribunal.  Los Demandados tendrán la opción de responder a cualquier solicitud de asignación de incentivos de esta índole, incluso a impugnar el monto de las asignaciones de incentivos solicitadas.

**EXHIBIT C PAGE 9**

**B.  Abogados del Colectivo**  El Tribunal ha aprobado el nombramiento de la oficina legal de Ronald A. Marron y de The Weston Firm como Abogado del Colectivo.  No se le cobrará por estos abogados.  Si desea ser representado por su propio abogado, puede contratar uno a su cargo.

Desde el comienzo del caso el 2 de septiembre de 2011 hasta el presente, el Abogado del Colectivo no ha recibido ningún pago por sus servicios llevando el caso o por la obtención de la Conciliación, ni se le ha reembolsado ninguno de los gastos de su bolsillo en que haya incurrido.  El Abogado del Colectivo solicitará al Tribunal una asignación de honorarios de abogados y gastos reales (incluidos los gastos del Tribunal), sujeta a la aprobación judicial.  Los Demandados tendrán la opción de responder a cualquier solicitud de este tipo, incluso a impugnar los honorarios y gastos solicitados. Si el Tribunal aprueba las solicitudes de gastos y honorarios de los abogados, se pagarán con el fondo de liquidación.  Los Miembros del Colectivo no tendrán que pagar nada de los honorarios o gastos del Abogado del Colectivo.  El Abogado del Colectivo buscará la aprobación definitiva de la Conciliación en nombre de todos los Miembros del Colectivo.  Puede contratar su propio abogado para que lo represente en este caso si lo desea, pero será a sus expensas.

## 7.  ¿Cómo me excluyo del Colectivo?

Puede salirse de la Conciliación y del Colectivo mediante su "autoexclusión" (también llamada "optar por renunciar").  Si se excluye a usted mismo, no podrá enviar un formulario de reclamación y no tendrá derecho a reclamar ninguna compensación ofrecida por la Conciliación.  Si elige autoexcluirse del Colectivo, puede ejercer cualquier derecho legal que puede tener en cualquier procedimiento independiente si decide hacerlo, pero tendrá que hacerlo a sus expensas.

Para excluirse del Colectivo, debe enviar una carta diciendo que desea ser excluido del colectivo de *Gallucci vs. Boiron, Inc. et al.,* No. 11-cv-2039-JAH-NLS.  No se aceptarán opciones de renunciar "en masa" o "colectivamente".  Su solicitud de exclusión debe incluir su nombre, dirección, número de teléfono, firma y una declaración firmada indicando: "Por la presente solicito ser excluido del Colectivo propuesto en *Gallucci vs. Boiron, Inc. et al.,* No. 11-cv-2039-JAH-NLS".  **Su solicitud de exclusión debe llevar un matasellos a más tardar el 14 de julio de 2012 y debe enviarse al Administrador de la Conciliación a la siguiente dirección: Administrador de la Conciliación de Boiron, c/o Gilardi & Co. LLC, P.O. Box 8090, San Rafael, CA 94912-8090.**

Una solicitud de exclusión que no incluya toda la información anterior, que se envíe a una dirección distinta de la indicada anteriormente o que no se haya recibido a tiempo, no será válida, y las personas que pidan ser excluidas se considerarán Miembros del Colectivo y estarán obligadas por la Conciliación como Miembros del Colectivo.

Si elige autoexcluirse, (i) no tendrá ningún derecho como Miembro del Colectivo en lo referente a la Conciliación, (ii) no podrá recibir ningún pago según lo dispuesto en la Conciliación, (iii) no quedará obligado por ninguna orden o resolución judicial posterior en este caso, y (iv) seguirá teniendo capacidad de llevar adelante contra los Demandados las reclamaciones aducidas en el caso, presentando su propia demanda a sus propias expensas.  Si procede de manera individual, puede recibir un beneficio mayor o menor del que de otro modo recibiría en virtud de esta Conciliación, o no recibir ninguno.

## 8.  ¿Cómo puedo decirle al Tribunal lo que pienso sobre la Conciliación?

Si no se excluye del Colectivo, usted o su abogado pueden alegar en apoyo u oposición a la Conciliación y tienen derecho a comparecer ante el Tribunal para hacerlo. **Su objeción o comentarios a la Conciliación deben enviarse por escrito al Administrador de la Conciliación a la siguiente dirección: Administrador de la Conciliación de Boiron, c/o Gilardi & Co. LLC, P.O. Box 8060, San Rafael, CA 94912-8060, a más tardar el 14 de julio de 2012.**  Debe enviar también copias de su comentario u objeción al Tribunal y a los abogados de las Partes a las siguientes direcciones:

| Secretario del Tribunal | Abogado del Colectivo | Abogado de los Demandados |
|---|---|---|
| Tribunal de distrito de los | Ronald A. Marron | Christina Guerola Sarchio |
| Estados Unidos | Bufete legal de Ronald A. Marron, APLC | Patton Boggs LLP |
| Distrito Sur de California | 3636 Fourth Avenue, Ste. 202 | 2550 M St, NW |
| 880 Front Street, Suite 4290 | San Diego, CA 92103 | Washington, DC 20037 |
| San Diego, CA 92101-8900 | | |

La objeción o los comentarios deben ir por escrito e incluir el nombre del caso  *Gallucci vs. Boiron, Inc. et al.,* Nº 11- cv-2039 -JAH-NLS, y (a) el nombre completo y dirección actual del Miembro del Colectivo; (b) una declaración firmada señalando que es Miembro del Colectivo; (c) la base fáctica y los fundamentos jurídicos de la objeción,

4

**EXHIBIT C PAGE 10**

incluidos documentos suficientes para establecer la base de su posición como Miembro del Colectivo como, por ejemplo, verificación bajo juramento de las fechas y ubicaciones aproximadas de sus compras de los productos; (d) la identificación del nombre del caso, el número del caso y el tribunal de cualquier demanda colectiva previa en la que el objetor haya presentado objeciones a una propuesta de conciliación a la demanda colectiva, la naturaleza general de tales objeciones previas y el resultado de las mismas; (e) la identificación del nombre del caso, número de caso y el tribunal para cualquier demanda colectiva previa en la que el objetor (si procede) haya presentado objeciones a una propuesta de conciliación a la demanda colectiva, la naturaleza general de tales objeciones previas y el resultado de las mismas; (f) las condiciones de pago de cualquier acuerdo de honorarios entre el objetor y su abogado con respecto a la objeción; y (g) cualquier acuerdo para compartir honorarios de los abogados o acuerdo de honorarios por recomendación entre el objetor, el abogado del objetor o cualquier tercero, incluyendo cualquier otro abogado o bufete, con respecto a la objeción.

Si desea comparecer en la audiencia, tendrá que presentar ante el Tribunal un aviso de intención de comparecer, ya sea en persona o a través de un abogado, e indicar el nombre, dirección y teléfono del abogado, si lo hubiere, que comparecerá. Este aviso de intención de comparecer deberá presentarse a más tardar el 14 de julio de 2012.

Si no envía un comentario por escrito sobre la Conciliación propuesta o las solicitudes del Representante del Colectivo y el Abogado del Colectivo para una adjudicación de incentivos y honorarios y gastos de abogados, respectivamente, de conformidad con la fecha límite y el procedimiento establecidos anteriormente, y el tribunal no le otorga reparación, renunciará a su derecho a ser escuchado en la audiencia de equidad.

Si no se opone como se describió anteriormente y no se excluye del Colectivo, se considerará que ha accedido a la certificación y jurisdicción del Tribunal sobre el Colectivo y que ha liberado las Reclamaciones Liberadas (definidas en el Acuerdo de Conciliación).

## 9.   ¿Cuál es el efecto de la aprobación final de la conciliación?

Si el Tribunal concede la aprobación final a la Conciliación, emitirá una orden final y sentencia definitiva y sobreseerá el caso.  La liberación de los Miembros del Colectivo surtirá efecto entonces.  Todos los Miembros del Colectivo liberarán, con excepción de las reclamaciones por lesiones personales, de cualesquiera y todas las reclamaciones, peticiones, derechos, demandas, responsabilidad legal y causas de demanda de cualquier naturaleza y descripción, conocidos o desconocidos, vencidos o por vencer, por ley o equidad, existentes en virtud de la ley federal o estatal, contingentes o no contingentes, sospechosos o insospechados, contra los Demandados o las Personas Liberadas (como se define en la sección 1.29 del Acuerdo de Conciliación) y que se desprendan de o estén relacionados de alguna forma con las declaraciones hechas en o en relación con la publicidad, mercadotecnia, empaquetado, etiquetado, promoción, fabricación, venta y distribución de los productos del Demandado, que se hayan presentado, pudieran haber sido presentados o estén actualmente pendientes, en cualquier foro en los Estados Unidos (incluidos sus territorios y Puerto Rico), hasta la fecha de vigencia.  Los Miembros del Colectivo y los Demandantes también liberarán cualquier reclamación que se aduzca o se afirme en la Demanda.  Consulte la sección 6 del Acuerdo de Conciliación para obtener una descripción completa de las reclamaciones y las personas que se liberarán tras la aprobación definitiva de la Conciliación.

Hay un plazo de tiempo concreto para apelar la orden y sentencia definitivas.  Una vez caducado el plazo sin que se haya presentado ninguna apelación, o cuando se haya resuelto definitivamente cualquier recurso presentado, se procesarán los formularios de reclamación y los pagos en virtud de la Conciliación, y se repartirán entonces los pagos de las reclamaciones.

Ya sea que considere que la Conciliación es favorable o desfavorable, cualesquiera y todos los Miembros del Colectivo que no se excluyan del mismo <u>no</u> podrán continuar demandando las reclamaciones liberadas en ningún otro litigio contra los Demandados u otras personas y entidades cubiertas por la liberación.  Puede obtener copia del Acuerdo de Conciliación del Secretario del Tribunal, en línea en <u>www.gilardi.com/boironsettlement</u>, o escribiendo al Administrador de la Conciliación a Administrador de la Conciliación de Boiron, c/o Gilardi & Co. LLC, P.O. Box 8060, San Rafael, CA 94912-8060.   Si no desea ser Miembro del Colectivo, debe excluirse del mismo (vea la pregunta Nº 7 arriba).

Si la Conciliación no se aprueba, el caso continuará como si no se hubiera intentado o alcanzado ninguna conciliación.  No puede haber ninguna garantía de que, si la Conciliación no se aprueba y se reanuda el caso, el Colectivo recuperará más de lo que está contemplado en la Conciliación, o si no recuperará nada en absoluto.

5

**EXHIBIT C PAGE 11**

## 10. ¿Cuándo y dónde celebrará el Tribunal la audiencia sobre la equidad de la conciliación?

Se ha fijado una audiencia de equidad para el 13 de agosto de 2012 a las 2:30 p.m., ante el Juez John A. Houston en su sala del Tribunal de Distrito de los Estados Unidos para el Distrito Sur de California, 940 Front Street, San Diego, California, 92101.   En la audiencia, el Tribunal escuchará todos los comentarios, objeciones y argumentos correctamente presentados sobre la equidad de la conciliación propuesta, incluyendo la cantidad solicitada por el Abogado del Colectivo por honorarios y gastos de abogados, y las asignaciones de incentivos para los Representantes del Colectivo.  Si ha presentado una objeción a la Conciliación, usted o su abogado deben asistir a esta audiencia para que la objeción sea examinada por el Tribunal.

**Nota:**   La fecha y hora de la audiencia de equidad están sujetas a cambios por orden judicial.

## 11. ¿Tengo que venir a la audiencia de equidad? ¿Puedo hablar en la audiencia?

No es necesario que asista a la audiencia de equidad para seguir siendo Miembro del Colectivo o para presentar una reclamación de un pago en efectivo.  Usted o su propio abogado podrán asistir a la audiencia si lo desean, a sus expensas.

Si no se excluye del Colectivo, usted puede pedir al Tribunal permiso para hablar en la audiencia respecto de la Conciliación propuesta o la solicitud del Abogado del Colectivo de honorarios y gastos de abogados, y las adjudicaciones de incentivo para los Representantes del Colectivo siguiendo las instrucciones en la pregunta Nº 8 arriba.

## 12. ¿Cómo recibo mi parte de la liquidación?

Si no se excluye del Colectivo y le gustaría recibir dinero, debe enviar un formulario de reclamación oportuno y válido como se estipula en la respuesta a la pregunta Nº 5 arriba.  **Los formularios de reclamación deben presentarse en línea o con matasellos no posterior a la fecha límite de presentación de reclamaciones, que será cuarenta y cinco (45) días después de la fecha en que el Tribunal dicte sentencia.**  Puede presentar una reclamación en línea o descargar una copia del formulario de reclamación en www.gilardi.com/boironsettlement, u obtener una copia del formulario de reclamación escribiendo al Administrador de la Conciliación a: Administrador de la Conciliación de Boiron, c/o Gilardi & Co. LLC, P.O. Box 8060, San Rafael, CA 94912-8060 o llamando sin costo al (877) 256-3879.

## 13. ¿Qué sucede si no hago nada en absoluto?

Si no hace nada, no recibirá ningún pago de la Conciliación.  Sin embargo, seguirá siendo parte del Colectivo y estará sujeto a la liberación descrita en la sección 6 del Acuerdo de Conciliación y a la pregunta Nº 9 arriba.  Esto significa que no se le permitirá seguir sosteniendo las reclamaciones liberadas en ningún otro caso contra los Demandados u otras personas y entidades cubiertas por la liberación.  Consulte la sección 6 del Acuerdo de Conciliación para ver una descripción completa de las reclamaciones y las personas que se liberarán tras la aprobación definitiva de la Conciliación.

## 14. ¿Dónde puedo obtener información adicional?

Este aviso le proporciona sólo un resumen de las cuestiones relativas a la Conciliación.  Para obtener información más detallada, es recomendable que revise el Acuerdo de Conciliación.  Puede ver el Acuerdo de Conciliación y obtener más información en www.gilardi.com/boironsettlement.  También puede obtener más información llamando sin costo al (877) 256-3879.  El Acuerdo de Conciliación y todos los demás alegatos y papeles presentados en el caso están disponibles para su inspección y copiado en horario normal de trabajo en la oficina del Secretario del Tribunal de Distrito de los Estados Unidos para el Distrito Sur de California, 880 Front Street, Suite 4290, San Diego, CA 92101-8900.

Si desea información adicional, también puede escribir al Abogado del Colectivo a la dirección señalada en la pregunta Nº 8 arriba.

**POR FAVOR, <u>NO</u> SE COMUNIQUE CON EL TRIBUNAL, EL JUEZ O LOS DEMANDADOS PARA PLANTEAR PREGUNTAS SOBRE LA CONCILIACIÓN**

**EXHIBIT C PAGE 12**

U.S. Boiron Administration
c/o Gilardi & Co. LLC
P.O. Box 8060
San Rafael, CA 94912-8060

Must Be Postmarked
**No Later Than**
**45 days after the date the Court enters**
**the judgment ("Claim-In Period")**

*Gallucci v. Boiron, Inc. et al.*
**Case No. 11-cv-2039-JAH-NLS**

# BRGL1

**CLASS ACTION SETTLEMENT CLAIM FORM**

You must complete this Claim Form in its entirety using blue or black ink. Please print all information clearly. This Claim Form only relates to qualifying purchases of products manufactured by Boiron such as Oscillococcinum, Children's Oscillococcinum, Arnicare, Quietude, Camilia or Coldcalm (a "Boiron Product"). Do not complete this Claim Form if you did not make a qualifying purchase of a Boiron Product. **All information requested on this Claim Form is required including a proof of purchase, where available, for each purchase that you claim.**

You may submit only one Claim Form, and two people cannot submit Claim Forms for the same qualifying purchase of a Boiron Product. All Claim Forms must be postmarked by no later than 45 days after the date the Court enters the judgment ("Claim-In Period"). Mail your fully completed and signed Claim Form and, where available, the required proof of purchase of a Boiron Product to: Boiron Settlement Administrator, c/o Gilardi & Co. LLC, P.O. Box 8060, San Rafael, CA 94912-8060

## CLAIMANT INFORMATION

**All of the information below is required.** If you do not provide all of the information below, your claim may be denied.

First Name            M.I.    Last Name

Address 1

Address 2

City                                State    Zip Code

Email Address

Daytime Telephone Number

## CLAIM INFORMATION

**All of the information below is required**. You must provide the information in the table below for **each** purchase of Oscillococcinum or any other Boiron product. (If additional space is needed, please submit on a copy of either page 2 or page 3, or on a separate sheet, and attach that sheet to your completed claim form.) If available, you must provide proof of each purchase you list below. If you cannot provide proof of a particular purchase, you may still submit your claim as detailed below. If you do not provide all of the information below, your claim may be denied.

## QUALIFYING PURCHASES OF BOIRON PRODUCTS

Product Name

Store Name

Store Location: Address

Store Location: City                    State    Zip Code

Date of Purchase            Purchase Price            Proof of Purchase Attached?

M M / D D / Y Y Y Y        $            .            ◯ Yes        ◯ No

| FOR CLAIMS PROCESSING ONLY | ◯ LC |
| | ◯ OZ |

1

**EXHIBIT C PAGE 13**

**QUALIFYING PURCHASES OF BOIRON PRODUCTS**

Product Name

Store Name

Store Location: Address

Store Location: City                                      State        Zip Code

Date of Purchase                    Purchase Price              Proof of Purchase Attached?
M M / D D / Y Y Y Y        $ ___ . ___           ○ Yes        ○ No

Product Name

Store Name

Store Location: Address

Store Location: City                                      State        Zip Code

Date of Purchase                    Purchase Price              Proof of Purchase Attached?
M M / D D / Y Y Y Y        $ ___ . ___           ○ Yes        ○ No

Product Name

Store Name

Store Location: Address

Store Location: City                                      State        Zip Code

Date of Purchase                    Purchase Price              Proof of Purchase Attached?
M M / D D / Y Y Y Y        $ ___ . ___           ○ Yes        ○ No

Product Name

Store Name

Store Location: Address

Store Location: City                                      State        Zip Code

Date of Purchase                    Purchase Price              Proof of Purchase Attached?
M M / D D / Y Y Y Y        $ ___ . ___           ○ Yes        ○ No

2

**EXHIBIT C PAGE 14**

## QUALIFYING PURCHASES OF BOIRON PRODUCTS

Product Name

Store Name

Store Location: Address

Store Location: City                                              State        Zip Code

Date of Purchase                    Purchase Price              Proof of Purchase Attached?
M M / D D / Y Y Y Y        $ ____ . __        ○ Yes        ○ No

Product Name

Store Name

Store Location: Address

Store Location: City                                              State        Zip Code

Date of Purchase                    Purchase Price              Proof of Purchase Attached?
M M / D D / Y Y Y Y        $ ____ . __        ○ Yes        ○ No

Product Name

Store Name

Store Location: Address

Store Location: City                                              State        Zip Code

Date of Purchase                    Purchase Price              Proof of Purchase Attached?
M M / D D / Y Y Y Y        $ ____ . __        ○ Yes        ○ No

Product Name

Store Name

Store Location: Address

Store Location: City                                              State        Zip Code

Date of Purchase                    Purchase Price              Proof of Purchase Attached?
M M / D D / Y Y Y Y        $ ____ . __        ○ Yes        ○ No

3

**EXHIBIT C PAGE 15**

**PROOF OF PURCHASE**

If available, proof of purchase is required for each qualifying purchase of a Boiron product listed above.  Include your proof(s) of purchase, sign the Certification Under Penalty of Perjury below, and mail the fully completed and signed Claim Form to: Boiron Settlement Administrator, c/o Gilardi & Co. LLC, P.O. Box 8060, San Rafael, CA 94912-8060.  There is a limit of $100.00 per household for claims containing proof(s) of purchase.

**NO PROOF OF PURCHASE**

If you do not have a proof of purchase, you may submit a claim for Boiron products you purchased by completing the Claim Information table above to the best of your knowledge and signing the below Certification Under Penalty of Perjury.  Non-proof-of-purchase claims will be processed after claims that are submitted with a proof of purchase.  Non-proof of purchase claims eligible for a payment of $10.00 per Product, are subject to a $50.00 per household limit, and may be reduced based on the number of claims received.

**CERTIFICATION UNDER PENALTY OF PERJURY**

I hereby certify under penalty of perjury, as follows:

a) All of the information on this Claim Form is true and correct;

b) If I have proof of a qualifying purchase of any Boiron product that I have listed on this Claim Form, I am providing such proof with the submission of this Claim Form.  If I do not have a proof of purchase for a qualifying purchase listed on this Claim Form, I certify that I purchased the product for which I submit the claim.

c) I understand that the Settlement Administrator may contact me to verify any of the information that I have provided on this Claim Form or to verify any of the proofs of purchase that I have submitted with this Claim Form; and

d) I understand that the decision of the Settlement Administrator is final and binding on me.


Signature: _____   Date: _____


Printed Name: _____

4

**EXHIBIT C PAGE 16**

Administrador de la Conciliación de Boiron
c/o Gilardi & Co. LLC
P.O. Box 8060
San Rafael, CA 94912-8060

*Gallucci v. Boiron, Inc. et al.*
**Caso Nº 11-cv-2039-JAH-NLS**

con matasellos no posterior a 45 días después de que el Tribunal dicte su sentencia ("Período de reclamación").

# BRGL1

## FORMULARIO DE RECLAMACIÓN EN LA CONCILIACIÓN DE LA DEMANDA COLECTIVA

Debe completar este Formulario de Reclamación en su totalidad con tinta azul o negra. Escriba toda la información claramente en letra de molde. Este formulario de reclamación sólo se refiere a las compras elegibles de productos fabricados por Boiron como Oscillococcinum, Oscillococcinum para niños, Arnicare, Quietude, Camilia o Coldcalm (un "producto de Boiron"). No rellene este formulario de reclamación si no hizo una compra elegible de un producto de Boiron. **Toda la información solicitada en este formulario de reclamación es necesaria, incluyendo un comprobante de compra, si está disponible, para cada compra que usted reclame.**

Podrá presentar un único formulario de reclamación, y dos personas no pueden presentar formularios de reclamación para la misma compra elegible de un producto de Boiron. Todos los formularios de reclamación deben tener matasellos no posterior a 45 días después de que el Tribunal dicte su sentencia ("Período de reclamación"). Envíe por correo su Formulario de Reclamación rellenado y firmado y, si está disponible, el comprobante de compra exigido de un producto de Boiron a: Administrador de la Conciliación de Boiron, c/o Gilardi & Co. LLC, P.O. Box 8060, San Rafael, CA 94912-8060

### INFORMACIÓN DEL RECLAMANTE

**Toda la información que aparece abajo es obligatoria.** Si no proporciona toda la información que aparece abajo, se podría denegar su reclamación.

Nombre                                    Inicial    Apellido

Dirección 1

Dirección 2

Ciudad                                              Estado      Código Postal

Dirección de correo electrónico

Número de teléfono durante el día

### INFORMACIÓN DE LA RECLAMACIÓN

Toda la información que aparece abajo es obligatoria. Debe proporcionar la información en la tabla que aparece a continuación para **cada** compra de Oscillococcinum o cualquier otro producto de Boiron. (Si necesita espacio adicional, por favor envíe una copia ya sea de la página 2 o de la 3, o una hoja aparte, y adjunte esa hoja a su formulario de reclamación completado.) Si está disponible, debe proporcionar el comprobante de cada compra que enumere abajo. Si no puede proporcionar el comprobante de una compra en particular, aún podrá presentar su reclamación según se detalla a continuación. Si no proporciona toda la información que aparece abajo, se podría denegar su reclamación.

### COMPRAS ELEGIBLES DE PRODUCTOS DE BOIRON

Nombre del producto

Nombre de la tienda

Ubicación de la tienda: Dirección

Ubicación de la tienda: Ciudad                                    Estado      Código postal

Fecha de la compra          Precio de compra          ¿Se adjunta comprobante de la compra?

M M / D D / Y Y Y Y        $ ___ ___ . ___ ___        ◯ Sí        ◯ No

FOR CLAIMS PROCESSING ONLY    ◯ LC    ◯ OZ

1

**EXHIBIT C PAGE 17**

**COMPRAS ELEGIBLES DE PRODUCTOS DE BOIRON**

Nombre del producto

Nombre de la tienda

Ubicación de la tienda: Dirección

Ubicación de la tienda: Ciudad                                         Estado        Código postal

Fecha de la compra          MM / DD / YYYY        Precio de compra  $ ____ . __        ¿Se adjunta comprobante de la compra?   ○ Si    ○ No

Nombre del producto

Nombre de la tienda

Ubicación de la tienda: Dirección

Ubicación de la tienda: Ciudad                                         Estado        Código postal

Fecha de la compra          MM / DD / YYYY        Precio de compra  $ ____ . __        ¿Se adjunta comprobante de la compra?   ○ Si    ○ No

Nombre del producto

Nombre de la tienda

Ubicación de la tienda: Dirección

Ubicación de la tienda: Ciudad                                         Estado        Código postal

Fecha de la compra          MM / DD / YYYY        Precio de compra  $ ____ . __        ¿Se adjunta comprobante de la compra?   ○ Si    ○ No

Nombre del producto

Nombre de la tienda

SUbicación de la tienda: Dirección

Ubicación de la tienda: Ciudad                                         Estado        Código postal

Fecha de la compra          MM / DD / YYYY        Precio de compra  $ ____ . __        ¿Se adjunta comprobante de la compra?   ○ Si    ○ No

**EXHIBIT C PAGE 18**

**COMPRAS ELEGIBLES DE PRODUCTOS DE BOIRON**

Nombre del producto

Nombre de la tienda

SUbicación de la tienda: Dirección

Ubicación de la tienda: Ciudad                                                                 Estado        Código postal

Fecha de la compra                              Precio de compra              ¿Se adjunta comprobante de la compra?
M M  /  D D  /  Y Y Y Y        $          .                   ○ Si          ○ No

Nombre del producto

Nombre de la tienda

SUbicación de la tienda: Dirección

Ubicación de la tienda: Ciudad                                                                 Estado        Código postal

Fecha de la compra                              Precio de compra              ¿Se adjunta comprobante de la compra?
M M  /  D D  /  Y Y Y Y        $          .                   ○ Si          ○ No

Nombre del producto

Nombre de la tienda

SUbicación de la tienda: Dirección

Ubicación de la tienda: Ciudad                                                                 Estado        Código postal

Fecha de la compra                              Precio de compra              ¿Se adjunta comprobante de la compra?
M M  /  D D  /  Y Y Y Y        $          .                   ○ Si          ○ No

Nombre del producto

Nombre de la tienda

SUbicación de la tienda: Dirección

Ubicación de la tienda: Ciudad                                                                 Estado        Código postal

Fecha de la compra                              Precio de compra              ¿Se adjunta comprobante de la compra?
M M  /  D D  /  Y Y Y Y        $          .                   ○ Si          ○ No

**EXHIBIT C PAGE 19**

## COMPROBANTE DE COMPRA

Si está disponible, el comprobante de compra es necesario para cada compra idónea de un producto de Boiron enumerado anteriormente. Incluya sus comprobantes de compra, firme la certificación bajo pena de perjurio que aparece a continuación y envíe el formulario de reclamación totalmente rellenado y firmado a: Administrador de la Conciliación de Boiron, c/o Gilardi & Co. LLC, P.O. Box 8060, San Rafael, CA 94912-8060. Hay un límite de $100.00 dólares por cada hogar para reclamaciones que contengan comprobantes de compra.

## SIN COMPROBANTE DE COMPRA

Si no tiene un comprobante de compra, podrá presentar una reclamación por los productos de Boiron que compró rellenando la tabla de información de la reclamación según sus conocimientos y firmando la siguiente Certificación bajo pena de perjurio. Las reclamaciones sin comprobante de compra se procesarán después de las reclamaciones que se presentan con un comprobante de compra. Las reclamaciones sin comprobante de compra elegibles para un pago de $10.00 por producto están sujetas a un límite de $50.00 por cada hogar y podrá reducirse con base en el número de reclamaciones recibidas.

## CERTIFICACIÓN BAJO PENA DE PERJURIO

Por la presente certifico bajo pena de perjurio lo siguiente:

a) Toda la información de este formulario de reclamación es verdadera y correcta;

b) Si tengo comprobantes de una compra elegible de cualquier producto de Boiron que he enumerado en este formulario de reclamación, estoy proporcionando dicha prueba con el envío de este formulario de reclamación. Si no tengo un comprobante de una compra elegible que figure en este formulario de reclamación, certifico que he comprado el producto por el cual presento la reclamación.

c) Entiendo que el Administrador de la Conciliación puede comunicarse conmigo para verificar cualquier información que haya yo proporcionado en este formulario de reclamación o para verificar alguno de los comprobantes de compra que he enviado con este formulario de reclamación; y

d) Entiendo que la decisión del Administrador de la Conciliación es definitiva y vinculante para mí.

Firma: _____   Fecha: _____

Nombre en letra de imprenta: _____

**EXHIBIT C PAGE 20**

# EXHIBIT D



## Ask Matt | By Matt Krantz

# How blockbusters translate on Wall Street

**Q: How can investors score on the upcoming lineup of summer movies?**

A: Investors are wondering if now's the time to place their bets on Wall Street on Hollywood's summer movies.

The *Avengers*. *Brave*. *Battleship*. *G.I. Joe: Retaliation*. There's no shortage of big movies on the summer slate with great potential firepower. And it's logical that investors are wondering if there's a way to profit from this star-studded lineup.

Hopes are high for the summer 2012 season, says David Miller of Caris. The year is off to a blockbuster start, with the U.S. box office up 23.7% in the first quarter. Miller says. A big part of that gain was Lionsgate Entertainment's *Hunger Games*. Shares of Lionsgate, a movie production company, are up 51% this year, driven, in large part, by the popularity of the movie.

"This is going to be an extraordinary summer" for box office numbers, says Matthew Harrigan of Wunderlich Securities. U.S. box office numbers could be up 10% to 12% this year, he says.

But investors shouldn't necessarily suspend their disbelief and start buying shares of the entertainment companies that own the big movie studios. In fact, most investors recognize that the movie-production businesses are very small portions of the large diversified entertainment giants such as Walt Disney, Viacom, Time Warner and Sony, Miller says.

Even the *John Carter* flop at Disney, which resulted in a $200 million write-down for the company, hardly registered with investors.

"The studios are cogs in the wheels for the very large companies," Miller says. "Disney never moves on studio economics at all," adding that the company's ESPN sports TV network and Disney park businesses are more important to profits and the stock price.

There are also company-specific factors at play. Sony has a solid slate of movies coming, including *Men in Black 3* and *The Amazing Spider-Man*, Harri-

gan says. But investors have much bigger concerns, including the company's struggling consumer electronics business, he says.

Lionsgate is the only significant pure-play in the movie production business. And while the studio has promising movies in the works, nothing major is expected in the summer, Harrigan says. If *G.I. Joe* is a "breakout hit," it possibly could lift the stock, Miller says.

Meanwhile, most of Time Warner's big movies aren't scheduled to open until after the summer, in the third or fourth quarters, Miller says. That includes *The Hobbit* and the next Batman movie, *The Dark Knight Rises*.

And that's why investors looking to profit on the strong summer slate of movies are probably better off betting on the companies that own the theaters, not the companies that own the big studios, Miller says. Among the largest public theater companies are: Regal Entertainment, Cinemark and Carmike. "If the summer finishes up 10%, theater stocks have a chance to make material gains," Miller says.

---

Matt answers reader questions weekdays at money.usatoday.com. E-mail your question to Matt at mkrantz@usatoday.com

**YOUR PERSONAL FINANCE COACHES**
■ **MONDAY** MATT KRANTZ ■ **TUESDAY** SANDRA BLOCK ■ **FRIDAY** JOHN WAGGONER

Follow Matt on Twitter at: twitter.com/mattkrantz

---

 # LEGAL MONDAY

www.marketplace.usatoday.com | Hours of operation: Mon. – Fri., 8:30 am – 7:00 pm (EST) | To advertise call **1.800.872.3433** Toll-free in the U.S. only



---

LEGAL NOTICE

**If you purchased a product manufactured by Boiron such as Oscillococcinum, Children's Oscillococcinum, Arnicare, Quietude, Camilia or Coldcalm between January 1, 2000 and the present, your rights may be affected by a proposed class action settlement.**

*Para una notificación en Español, llamar o visitar nuestro website.*

**WHAT IS THIS CASE ABOUT?**
A proposed settlement has been reached in a class action lawsuit regarding Oscillococcinum, Children's Oscillococcinum, Arnicare, Quietude, Camilia, Coldcalm and other products manufactured by Boiron ("the Products"). The lawsuit claims advertising concerning the Products was not true. The manufacturer of the Products stands by its advertising and denies it did anything wrong. The manufacturer has settled to avoid the cost and distraction of the lawsuit.

**ARE YOU A CLASS MEMBER?** You are a Class Member and may be eligible to receive a settlement benefit if you purchased the Products between Jan. 1, 2000 and the present. You are not a Class Member if you were a California resident whose only purchase of a Boiron product was of Children's Coldcalm after August 31, 2006.

**WHAT DOES THIS SETTLEMENT PROVIDE?**
A settlement fund of $5 million is being set up to pay claims to eligible Class Members, attorneys' fees and costs, and the notice and claims administration costs. The manufacturer of the Products is also agreeing to make certain changes to the manner in which it advertises the Products. The Settlement Agreement is found at www.gilardi.com/boironsettlement.

**WHAT ARE YOUR OPTIONS?**
**File a Claim:** To get a settlement benefit, Class Members must send in a completed claim form and, if available, proof of purchase of the Products to the **Claims Administrator at the address below postmarked no later than 45 days after the date the Court enters the Judgment.** Class Members who file timely and valid claims are eligible to receive up to $100.00 per household.

**Object to the settlement:** If you want to object to the settlement you must **file a written statement with the Court and serve a copy on Class Counsel, Counsel for Defendants and the Claims Administrator, postmarked by July 14, 2012.** Any objection regarding or related to the Agreement shall

contain certain information about the objector's standing as a Class member, the facts supporting the objection, the legal grounds on which the objection is based, and verification under oath of the contents of that written statement. If an objecting party chooses to appear at the hearing, a notice of intent to appear must also be filed with the Court. The instructions for how to object are explained in the detailed notice at www.gilardi.com/boironsettlement.

**Exclude Yourself:** If you do not want to be bound by the settlement, you must send a letter to the Claims Administrator at the address below requesting to be excluded. The letter must be **postmarked by July 14, 2012.** If you exclude yourself, you cannot receive a benefit from this settlement, but you can sue the manufacturer of the Products for the claims alleged in this lawsuit. If you do not exclude yourself from the settlement or do nothing, you will be bound by the Court's decisions.

The Court will hold a hearing in this case on **August 13, 2012 at 2:30 p.m.** at the federal courthouse located at **940 Front Street, Courtroom 11, San Diego, CA 92101,** to consider final approval of the settlement, including payment of reasonable attorneys' fees and costs to Class Counsel related to obtaining the settlement relief, an incentive award to each of the named Plaintiffs, and related issues. The motion(s) by Class Counsel for attorneys' fees and costs and incentive awards for the Class Representatives will be available for viewing on the settlement website after they are filed. You may appear at the hearing in person or through your attorney at your own cost, but you are not required to do so.

The detailed notice describes in detail how to file a claim, object, or exclude yourself and provides other important information. For more information and to obtain a detailed notice, claim form, list of Products, or other documents, visit www.gilardi.com/boironsettlement or call, toll-free, **877-256-3879,** or write to Boiron Claims Administrator, P.O. Box 8060, San Rafael, CA 94912-8060.


**1-877-256-3879** | www.gilardi.com/boironsettlement

LEGAL NOTICE                                                        LEGAL NOTICE

**If you subscribed to a HughesNet Satellite Internet Plan any time between May 15, 2005 and March 2, 2012 you could get a $5 or $40 payment from a class action settlement.**

A nationwide settlement has been reached with Hughes Communications, Inc. and Hughes Network Systems, LLC, (the "Defendants" or "Hughes") in a class action lawsuit about the actual and advertised speeds of the HughesNet internet service, the terms and application of the Fair Access Policy, and the fees charged to customers when they cancelled their service before the end of their contract. The settlement provides benefits to certain current and former Hughes subscribers.

If you're included, you may submit a claim form to ask for a payment, exclude yourself from or object to the settlement, or ask to speak at the Court's fairness hearing. The U.S. District Court for the Northern District of California authorized this notice and will have a hearing to decide whether to approve the settlement, so that benefits can be issued. You may get a detailed notice at www.SatelliteInternetSettlement.com.

**WHO IS INCLUDED?**
**If you received a notice in the mail, Hughes records show that you are included.** Generally, the settlement includes everyone in the U.S. who, at any time from 5/15/05 to 3/2/12 subscribed to any of the following Hughes Consumer Service Plans: Home, Pro, Pro Plus, Small Office, Business Internet, Elite, ElitePlus, ElitePremium, Basic, Power 150 and Power 200. Together these people are called a Class or Class Members.

**WHAT DOES THE SETTLEMENT PROVIDE?**
Hughes will make $5 and $40 cash payments to eligible Class Members who submit valid claim forms. Hughes will also change the way it advertises its internet speed, and change its business practices related to its Fair Access Policy (Restore) Token Program and the amount of money it charges for early termination fees.

**HOW DO YOU ASK FOR A PAYMENT?**
If you paid an early termination fee before December 6, 2010, you are eligible to receive $40 from this settlement. If you were no longer a Hughes subscriber as of March 2, 2012 but are not eligible for a $40 payment, you are eligible to receive $5. Submit a claim form online, print one from the website listed below, or get one by mail by calling the toll-free number. The deadline

to submit or mail your claim form is **September 28, 2012.**

**WHAT ARE YOUR OPTIONS?**
You have a choice about whether to stay in the Class or not. If you **submit a claim form** or **do nothing,** you are choosing to stay in the Class. This means you will be legally bound by all orders and judgments of the Court, and you will not be able to sue or continue to sue Hughes about the legal claims resolved by this settlement. If you stay in the Class you may **object to the settlement.** You or your own lawyer may also **ask to appear and speak at the hearing,** at your own cost, but you don't have to. The deadline to submit objections and requests to appear is **July 16, 2012.** If you don't want to stay in the Class, you must **submit a request for exclusion** by **September 28, 2012.** If you exclude yourself, you cannot get a payment from this settlement, but you will keep any rights to sue Hughes for the same claims in a different lawsuit. Hughes may ask the Court to send your individual lawsuit to arbitration. The detailed notice, available at the website, explains how to do all of these things.

**THE COURT'S FAIRNESS HEARING.**
The U.S. District Court for the Northern District of California will hold a hearing in this case (*Raber v. Hughes Communications, Inc.*, No. 09cv02136), on **November 16, 2012** at 10:00 a.m. at the U.S. District Courthouse, Courtroom 1, 17th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102 to consider whether to approve the settlement; Class Counsel's request for up to $630,000 in fees, costs and expenses; and a $5,000 payment to each of the three Class Representatives. If approved, the settlement will release Defendants from all claims about actual or advertised internet speeds, the terms or application of the Fair Access Policy, early termination fees, or advertising regarding these subjects.

**HOW DO YOU GET MORE INFORMATION?**
The detailed notice, claim form and Settlement Agreement are available at the website, by calling 1-888-232-3395, or by writing to: Satellite Internet Settlement Administrator, c/o KCC LLC, P.O. Box 43047, Providence, RI 02940-3143.

**1-888-232-3395**
**www.SatelliteInternetSettlement.com**

---

## NOTICE TO CONSUMERS

Information maintained by the consumer credit reporting companies (Equifax Information Services LLC, Experian Information Solutions, Inc., Innovis Data Solutions, Inc., and TransUnion LLC) helps connect consumers with their buying power. This information is provided to companies that send consumers pre-approved offers of credit and insurance. Many people take advantage of these opportunities, yet some consumers prefer not to receive such offerings. Before you choose, look at the competitive offers you are receiving.

For those who no longer wish to receive such offers, the federal Fair Credit Reporting Act provides for the opportunity to opt out. Opting-out will remove you from lists provided by each of the consumer credit reporting companies; but it does not guarantee that you won't receive direct mail from other sources.

If you wish to be excluded from the lists provided by companies that make these pre-approved offers, you may go to
**www.optoutprescreen.com**

**Or call 1-888-5-OPTOUT (888-567-8688)**

Or you may write to any one of the following consumer credit reporting companies, and they will share your request with the others. Include your name, address, Social Security number and date of birth in your request.

 **EQUIFAX**
Equifax Options
P.O. Box 740123
Atlanta, GA 30374-0123

**Experian**
Experian Opt-Out
P.O. Box 919
Allen, TX 75013

 **INNOVIS**
DATA SOLUTIONS
Innovis Consumer Opt-Out
P.O. Box 495
Pittsburgh, PA 15230-0495

**TransUnion**
TransUnion Opt-Out Request
P.O. Box 505
Woodlyn, PA 19094-0505

# For more information on how to place your advertisement in Legal Monday, contact a sales representative at:

# 1-800-872-3433

### Toll-free in the U.S. only

*Natural Healing*

## NOTICE OF PROPOSED CLASS ACTION SETTLEMENT
*Burton, et al. v. Ganeden Biotech, Inc., et al.*
**Case No. 11-cv-1471 (U.S. District Court for the Southern District of California)**

This is a notice about a proposed class action settlement involving advertisements for Sustenex, Digestive Advantage, EnLiven, and GanedenBC[30] Chews products (the "Products"). Plaintiff in this case alleges that the advertising and packaging for the Products contains false and misleading information about the Products. Defendants Ganeden Biotech, Inc. ("Ganeden"), Schiff Nutrition International, Inc., and Schiff Nutrition Group, Inc. (collectively, "Defendants") deny the claims and any wrongdoing.

**Am I included?** If you purchased any of the Products between July 1, 2006 and April 16, 2012, you are included in this Settlement. More information is available at www.gilardi.com/probiotic.

**What do I get?** Ganeden will pay all valid claims of the Settlement Class Members, together with attorneys' fees and incentive awards, up to a cumulative total of $900,000. If you are entitled to relief, you may submit a claim to receive a cash payment ranging from $2 up to $20. There is a chance that class members with valid claims will receive less than those amounts if the amount of valid claims, attorneys' fees, and incentive awards exceed $900,000. Any funds remaining out of the $900,000 after the payment of all valid claims, attorneys' fees, and incentive fees will be donated to charity. The settlement also provides prospective relief in the form of advertising and labeling modifications.

**How do I receive payment?** In order to receive payment under the settlement, you must submit a claim form. You may do so by mail or online at www.gilardi.com/probiotic, which contains additional information about how to submit a claim. The deadline to submit a claim form is **October 19, 2012**.

**Additional rights.** If you participate in this settlement, you will not be able to individually sue Defendants for any claims that are part of the settlement. If you would prefer not to participate in the settlement and instead initiate your own lawsuit, you must notify us that you would like to exclude yourself or "opt out" of the settlement. You must opt out by **July 17, 2012**. If you do not exclude yourself or "opt out," but disagree with any part of the settlement, you may object to the settlement by **June 22, 2012**. The Court will hold a hearing on August 21, 2012 (date subject to change) to consider whether to approve the settlement and a request for attorneys' fees of up to 30% of the value of the settlement, a class representative award of $3,500, and to consider a number of other important legal issues. The Court has appointed attorneys to represent the Settlement Class. However, you may hire an attorney at your own expense. If you object to the settlement in writing by the date specified above, you (or your own attorney) must appear at the hearing on August 21, 2012 (date subject to change) to have your objection considered by the Court.

**For more information,** including obtaining a more detailed notice, claim form, a copy of the Settlement Agreement and other court documents, please visit the website www.gilardi.com/probiotic, call (866) 323-3945, or write to Ganeden Biotech Settlement Administrator, c/o Gilardi & Co. LLC, P.O. Box 8060, San Rafael, CA 94912-8060.

**PLEASE DO NOT CONTACT THE COURT OR THE JUDGE IN THIS CASE**

---

**If you purchased a product manufactured by Boiron such as Oscillococcinum, Children's Oscillococcinum, Arnicare, Quietude, Camilia or Coldcalm between January 1, 2000 and the present, your rights may be affected by a proposed class action settlement.**

*Para una notificación en Español, llamar o visitar nuestro website.*

**WHAT IS THIS CASE ABOUT?** A proposed settlement has been reached in a class action lawsuit regarding Oscillococcinum, Children's Oscillococcinum, Arnicare, Quietude, Camilia, Coldcalm and other products manufactured by Boiron ("the Products"). The lawsuit claims advertising concerning the Products was not true. The manufacturer of the Products stands by its advertising and denies it did anything wrong. The manufacturer has settled to avoid the cost and distraction of the lawsuit.

**ARE YOU A CLASS MEMBER?** You are a Class Member and may be eligible to receive a settlement benefit if you purchased the Products between Jan. 1, 2000 and the present. You are not a Class Member if you were a California resident whose only purchase of a Boiron product was of Children's Coldcalm in California after August 31, 2006.

**WHAT DOES THIS SETTLEMENT PROVIDE?** A settlement fund of $5 million is being set up to pay claims to eligible Class Members, attorneys' fees and costs, and the notice and claims administration costs. The manufacturer of the Products is also agreeing to make certain changes to the manner in which it advertises the Products. The Settlement Agreement is found at www.gilardi.com/boironsettlement.

**WHAT ARE YOUR OPTIONS?** File a Claim: To get a settlement benefit, Class Members must send in a completed claim form and, if available, proof of purchase of the Products to the Claims Administrator at the address below postmarked no later than 45 days after the date the Court enters the Judgment. Class Members who file timely and valid claims are eligible to receive up to $100.00 per household.

Object to the settlement: If you want to object to the settlement you must file a written statement with the Court and serve a copy on Class Counsel, Counsel for Defendants and the Claims Administrator, postmarked by July 14, 2012. Any objection regarding or related to the

Agreement shall contain certain information about the objector's standing as a Class member, the facts supporting the objection, the legal grounds on which the objection is based, and verification under oath of the contents of that written statement. If an objecting party chooses to appear at the hearing, a notice of intent to appear must also be filed with the Court. The instructions for how to object are explained in the detailed notice at www.gilardi.com/boironsettlement.

Exclude Yourself: If you do not want to be bound by the settlement, you must send a letter to the Claims Administrator at the address below requesting to be excluded. The letter must be **postmarked by July 14, 2012**. If you exclude yourself, you cannot receive a benefit from this settlement, but you can sue the manufacturer of the Products for the claims alleged in this lawsuit. If you do not exclude yourself from the settlement or do nothing, you will be bound by the Court's decisions.

The Court will hold a hearing in this case on August 13, 2012 at 2:30 p.m. at the federal courthouse located at 940 Front Street, Courtroom 11, San Diego, CA 92101, to consider final approval of the settlement, including payment of reasonable attorneys' fees and costs to Class Counsel identified in the settlement relief, an incentive award to each of the named Plaintiffs, and related issues. The motion(s) by Class Counsel for attorneys' fees and costs and incentive awards for the Class Representatives will be available for viewing on the settlement website after they are filed. You may appear at the hearing in person or through your attorney at your own cost, but you are not required to do so.

The detailed notice describes in detail how to file a claim, object, or exclude yourself and provides other important information. For more information and to obtain a detailed notice, claim form, list of Products, or other documents, visit www.gilardi.com/boironsettlement or call, toll-free, 877-256-3879, or write to Boiron Claims Administrator, P.O. Box 8060, San Rafael, CA 94912-8060.

**1-877-256-3879**      **www.gilardi.com/boironsettlement**

---

*(continued from pg. 88)*

and 1 part water, or the Therapik ($13; therapik.com), a small device that delivers heat to the site of a bug bite or sting and was confirmed by the Food and Drug Administration to relieve itching and burning.

## Fire ants

Fire ants don't bite, they sting. In fact, their stings are similar to bee stings and can trigger serious allergic reactions in some people. "Fire ants attack in a very organized and aggressive manner when their nests are disturbed," says Gregory Sonnen, M.D., a pediatrician at Pediatric & Adolescent Specialists of Rockwall in Texas. So steer clear of little dirt mounds, where they like to make their nests. If you do wind up stepping into the territory of fire ants, a small army is likely to respond. "It's not uncommon to see people come into the emergency room with 60 to 100 stings," says Sonnen. The sting can produce an intense searing sensation that may last for a few days. A day or so after the sting, pustules or blisters will develop. Clean the area to prevent infection and apply cold compresses to reduce inflammation. See a doctor if you experience hives, swelling or labored breathing, or feel faint. Fire ants aren't usually life-threatening, but a large number of stings can be deadly.
**Try:** The treatments recommended for bee and wasp stings (pg. 88).

*Amy Paturel, M.S., M.P.H., is a freelance journalist in Murrieta, Calif.* ✖

*Natural Health* (ISSN 1067-9588) Vol. 42 No. 6 is published 6 times a year, Jan/Feb., Mar/Apr., May/Jun. Jul./Aug., Sept/ Oct., and Nov/Dec., by Weider Publications LLC., a division of American Media, Inc. 4 New York Plaza, 4th Fl, New York, NY 10004. Periodical Rates Postage Paid at the New York, NY Post Office and at additional Mailing office. Copyright © Weider Publications, LLC 2011. All rights reserved. Canada Post International Publications Mail Sale Agreement No. 40028566. Canadian BN 896792885RT. All excepted materials submitted without restrictions become the sole property of Weider Publications, LLC. and shall constitute permission in writing from Weider Publications, LLC. To use name, likeness, story, and all other information submitted of the person submitting the same for any and all purposes and cannot be used without permission in writing from Weider Publications, LLC. Title trademark registered in U.S. Patent Office. Copyrighted under the Universal Copyright Convention and International Copyright Convention. Copyright reserved under the Pan-American Copyright Convention. Todos derechos reservada según la convención Pan Americana de Propiedad Literaria Artistica. Subscription rate is $28.00 for (1yr) 6 issues in U.S.A. & Canada $40.00 U.S. for (1yr) 6 issues. Outside of U.S.A. and Canada (1yr) $43.00 U.S. Orders outside of U.S.A. must be prepaid in U.S. funds. For Customer Service and Back issues call toll-free (800) 526-8440 or write to: Natural Health, P.O. Box 37474, Boone, IA 50037. SUBSCRIBERS: If the postal service alerts us that your magazine is undeliverable, we have no further obligation unless we receive a corrected address within one year. U.S. POSTMASTER: send U.S. Address changes to: Natural Health, P.O. Box 37474, Boone, IA 50037. CANADA POSTMASTER: Send address changes to American Media Inc, PO Box 907 STN Main, Markham, ON L3P 0A7, Canada. From time to time we make our subscriber list available to companies who sell goods and services by mail that we believe would interest our readers. If you would rather not receive such mailings, please send your current mailing label to: Natural Health, P.O. Box 37474, Boone, IA 50037. Printed in the U.S.A.

**BEST SHAPE | Diet Update**

breakfast weigh less. Other research has found that people who ~~down a bowl of cereal at breakfast~~ weigh less. And still other research ~~has found that people who chase~~ their breakfast with a slice of chocolate cake weigh less. The common denominator? You guessed it: They all ate breakfast.

When you wake up in the morning, sunlight tells your brain that the day has started. Eating breakfast—breaking your night's fast—sends that same signal to the circadian rhythms in your body. Chowing shortly after you get up synchronizes these clocks and, as a result, delivers a powerful metabolic jumpstart, Panda says. That means you'll more efficiently use nutrients all day.

There's one caveat: If you eat a big dinner at 11 p.m. one night, it's actually smart to skip the early morning meal in order to fit in a 12-hour fast. "The idea that we need to have breakfast every single day has become so ingrained in people's minds that for late-night eaters, it means they end up eating around the clock," Panda says. If your last meal was a plate of bar fries at midnight, push your first meal the next day to noon. (Consider it lunch if you're returning to a regular schedule or breakfast if you expect a repeat late-night eating event.)

How big should your a.m. dish be? It depends whether you're counting calories. "Having a big breakfast can lead to feeling less deprived overall, but you have to take total calories into account," Baron

## YOUR CALORIE-TIMING CHEAT SHEET

✓ Keep to a regular sleep schedule, so your internal clocks stay in sync.

✓ Eat breakfast within an hour of waking up, unless you ate late the night before.

✓ Space the rest of your meals three to five hours apart. Aim for a mix of lean protein, good carbs, and healthy fats at every meal.

✓ Snack during the day, then stop 12 hours before you plan to eat breakfast tomorrow.

✓ Go to bed two to three hours after your last meal or snack.

explains. A recent study from Tel Aviv University looked at women on a strict 1,400-calorie-a-day plan and found that those who had a 600-calorie breakfast high in protein and carbs that included dessert (like chocolate!) not only lost more weight on average than the ones who ate a 300-calorie low-carb breakfast, but they also had fewer cravings and were better at keeping off the weight.

However, if you're not tallying your total daily calories—balancing a big breakfast with a smaller lunch and dinner—eating a lot first thing in the morning could cause you to take in too many calories, and subsequently put on weight.

Good advice for all: Simply include protein (like yogurt or nuts) in your morning meal. Several studies have found that higher-protein breakfasts can help you feel full and make you less likely to overeat all day—and into the night. ●



**10 POUNDS**

Average amount of weight gained by women working the night shift

**LEGAL NOTICE**

**If you purchased a product manufactured by Boiron such as Oscillococcinum, Children's Oscillococcinum, Arnicare, Quietude, Camilia or Coldcalm between January 1, 2000 and the present, your rights may be affected by a proposed class action settlement.**

*Para una notificación en Español, llamar o visitar nuestro website.*

**WHAT IS THIS CASE ABOUT?** A proposed settlement has been reached in a class action lawsuit regarding Oscillococcinum, Children's Oscillococcinum, Arnicare, Quietude, Camilia, Coldcalm and other products manufactured by Boiron ("the Products"). The lawsuit claims advertising concerning the Products was not true. The manufacturer of the Products stands by its advertising and denies it did anything wrong. The manufacturer has settled to avoid the cost and distraction of the lawsuit.

**ARE YOU A CLASS MEMBER?** You are a Class Member and may be eligible to receive a settlement benefit if you purchased the Products between Jan. 1, 2000 and the present. You are not a Class Member if you were a California resident whose only purchase of a Boiron product was of Children's Coldcalm in California after August 31, 2006.

**WHAT DOES THIS SETTLEMENT PROVIDE?** A settlement fund of $5 million is being set up to pay claims to eligible Class Members, attorneys' fees and costs, and the notice and claims administration costs. The manufacturer of the Products is also agreeing to make certain changes to the manner in which it advertises the Products. The Settlement Agreement is found at www.gilardi.com/boironsettlement.

**WHAT ARE YOUR OPTIONS?** File a Claim: To get a settlement benefit, Class Members must send in a completed claim form and, if available, proof of purchase of the Products to the Claims Administrator at the address below postmarked no later than 45 days after the date the Court enters the Judgment. Class Members who file timely and valid claims are eligible to receive up to $100.00 per household.

Object to the settlement: If you want to object to the settlement you must file a written statement with the Court and serve a copy on Class Counsel, Counsel for Defendants and the Claims Administrator, postmarked by July 14, 2012. Any objection regarding or related to the Agreement shall contain certain information about the objector's standing as a Class member, the facts supporting the objection, the legal grounds on which the objection is based, and verification under oath of the contents of that written statement. If an objecting party chooses to appear at the hearing, a notice of intent to appear must also be filed with the Court. The instructions for how to object are explained in the detailed notice at www.gilardi.com/boironsettlement.

Exclude Yourself: If you do not want to be bound by the settlement, you must send a letter to the Claims Administrator at the address below requesting to be excluded. The letter must be postmarked by July 14, 2012. If you exclude yourself, you cannot receive a benefit from this settlement, but you can sue the manufacturer of the Products for the claims alleged in this lawsuit. If you do not exclude yourself from the settlement or do nothing, you will be bound by the Court's decisions.

The Court will hold a hearing in this case on August 13, 2012 at 2:30 p.m. at the federal courthouse located at 940 Front Street, Courtroom 11, San Diego, CA 92101, to consider final approval of the settlement, including payment of reasonable attorneys' fees and costs to Class Counsel related to obtaining the settlement relief, an incentive award to each of the named Plaintiffs, and related issues. The motion(s) by Class Counsel for attorneys' fees and costs and incentive awards for the Class Representatives will be available for viewing on the settlement website after they are filed. You may appear at the hearing in person or through your attorney at your own cost, but you are not required to do so.

The detailed notice describes in detail how to file a claim, object, or exclude yourself and provides other important information. For more information and to obtain a detailed notice, claim form, list of Products, or other documents, visit www.gilardi.com/boironsettlement or call, toll-free, 877-256-3879, or write to Boiron Claims Administrator, P.O. Box 8060, San Rafael, CA 94912-8060.

**1-877-256-3879**
**www.gilardi.com/boironsettlement**

# EXHIBIT E





# The Law Office of Ronald A. Marron, APLC and Patton Boggs LLP Announce Preliminary Approval of Class Action Settlement

SAN DIEGO, May 25, 2012 /PRNewswire/ -- The following notice is being issued pursuant to an order of the United States District Court, Southern District of California:

**If you purchased a product manufactured by Boiron such as Oscillococcinum, Children's Oscillococcinum, Arnicare, Quietude, Camilia or Coldcalm between January 1, 2000 and the present, your rights may be affected by a proposed class action settlement.**

***Para una notificacionen Espanol, llamar o visitar nuestro website.***

**WHAT IS THIS CASE ABOUT?**  A proposed settlement has been reached in a class action lawsuit regarding Oscillococcinum, Children's Oscillococcinum, Arnicare, Quietude, Camilia, Coldcalm and other products manufactured by Boiron ("the Products").  The lawsuit (which is titled *Gallucci v. Boiron, Inc. et al.*, No. 11-cv-2039-JAH (NLSx)) claims advertising concerning the Products was not true.  The manufacturer of the Products stands by its advertising and denies it did anything wrong.  The manufacturer has settled to avoid the cost and distraction of the lawsuit.

**ARE YOU A CLASS MEMBER?**  You are a Class Member and may be eligible to receive a settlement benefit if you purchased the Products between Jan. 1, 2000 and the present.  You are not a Class Member if you were a California resident whose only purchase of a Boiron product was of Children's Coldcalm in California after August 31, 2006.

**WHAT DOES THIS SETTLEMENT PROVIDE?**  A settlement fund of $5 million is being set up to pay claims to eligible Class Members, attorneys' fees and costs, and the notice and claims administration costs.  The manufacturer of the Products is also agreeing to make certain changes to the manner in which it advertises the Products.  The Settlement Agreement is found at www.gilardi.com/boironsettlement.

**WHAT ARE YOUR OPTIONS?**  File a Claim:  To get a settlement benefit, Class Members must send in a completed claim form and, if available, proof of purchase of the Products **to the Claims Administrator at the address below postmarked no later than 45 days after the date the Court enters the Judgment.**  Class Members who file timely and valid claims are eligible to receive up to $100.00 per household.

Object to the settlement:  If you want to object to the settlement you must **file a written statement with the Court and serve a copy on Class Counsel, Counsel for Defendants and the Claims Administrator, postmarked by July 14, 2012.** Any objection regarding or related to the Agreement shall contain certain information about the objector's standing as a Class member, the facts supporting the objection, the legal grounds on which the objection is based, and verification under oath of the contents of that written statement.  If an objecting party chooses to appear at the hearing, a notice of intent to appear must also be filed with the Court.  The instructions for how to object are explained in the detailed notice at **www.gilardi.com/boironsettlement**.

Exclude Yourself:  If you do not want to be bound by the settlement, you must send a letter to the Claims Administrator at the address below requesting to be excluded.  The letter must be **postmarked by July 14, 2012**.  If you exclude yourself, you cannot receive a benefit from this settlement, but you can sue the manufacturer of the Products for the claims alleged in this lawsuit.  If you do not exclude yourself from the settlement or do nothing, you will be bound by the Court's decisions.

The Court will hold a hearing in this case on **August 13, 2012at2:30 p.m.**at the federal courthouse located at **940 Front Street, Courtroom 11, San Diego, CA 92101,** to consider final approval of the settlement, including payment of reasonable attorneys' fees and costs to Class Counsel related to obtaining the settlement relief, an incentive award to each of the named Plaintiffs, and related issues.  The motion(s) by Class Counsel for attorneys' fees and costs and incentive awards for the Class Representatives will be available for viewing on the settlement website after they are filed. You may appear at the hearing in person or through your attorney at your own cost, but you are not required to do so.

The detailed notice describes in detail how to file a claim, object, or exclude yourself and provides other important information. For more information and to obtain a detailed notice, claim form, list of Products, or other documents, visit **www.gilardi.com/boironsettlement** or call, toll-free, **877-256-3879**, or write to Boiron Claims Administrator, P.O. Box 8060, San Rafael, CA 94912-8060**.**

**For more information, call 1-877-256-3879 or visit www.gilardi.com/boironsettlement.**

SOURCE The Law Office of Ronald A. Marron, APLC

Back to top
RELATED LINKS
http://www.gilardi.com/boironsettlement

**Find this article at:**
http://www.prnewswire.com/news-releases/the-law-office-of-ronald-a-marron-aplc-and-patton-boggs-llp-announce-preliminary-approval-of-class-action-settlement-154195415.html

☐  Check the box to include the list of links referenced in the article.

# EXHIBIT F



| | |
|---|---|
| **Headline:** | The Law Office of Ronald A. Marron, APLC and Patton Boggs LLP Announce Preliminary Approval of Class Action Settlement |
| **Story Number:** | SF14269 |
| **Story Date:** | May 25, 2012 |

`PREMIUM`

---

Release Overview is a summary of all top level ROI statistics relating to your release.

---

**Online & Search:**                                                                                    2,158

    The online and search total includes the number of views to your release on prnewswire.com as well as all search engine indexing activity to your release from search engines.

**Media Views:**                                                                                          43

    Media views reflect the total number of times your release has been viewed by a journalist and/or blogger on *PR Newswire for Journalists.*

**Investor Views:**                                                                                        4

    Investor views are defined as views to your release that originate from an investment house (i.e., views which derive from PR Newswire's Thomson ONE Desktop or StreetEvents newsfeeds.)

**Total Views:**                                                                                        2205

**ReleaseWatch Links:**                                                                                  269

    A snapshot of links to your press release as it appears on third party web sites when distributed by PR Newswire.

**Total Visibility Index:**                                                                               54

    This index compares the overall visibility generated by your releases to others issued by PR Newswire within your industry. The scale is set from 0 - 100, with 50 always being the industry average.

**Engagement Index:**                                                                                     74

    This index is an indicator of interactive usage vis-a-vis your news releases in the past year (i.e., how many times your releases were blogged about, emailed, bookmarked, printed, etc.).  A score of 50 is average.

**Release Views**

This pie chart illustrates views according to audience type: online (i.e., views on prnewswire.com from all referrers, including search engines), media (i.e., views from the media & blogger site media.prnewswire.com) and investor audiences (i.e., views from Thomson ONE Desktop and StreetEvents, for publicly-traded companies only).



**EXHIBIT F PAGE 26**

**Media Views by Media Type**

Media Views by Media Type shows you the number of journalists and/or bloggers viewing your release grouped by the type of media outlet they represent.

| Media Type | Media Views |
|---|---|
| Blogger | 5 |
| Consumer Periodicals | 3 |
| Freelance/Writer | 7 |
| Newspaper | 12 |
| Other | 8 |
| Radio | 2 |
| Television | 3 |
| Trade Periodicals | 10 |
| Web/On-Line Service | 15 |
| Wire Service | 6 |

NOTE: The media type numbers might not always correspond to those given for media views. This is because some media outlets correspond to more than one media type. For example, a journalist might register as both a blogger as well as a journalist, if he wears two hats. The release may get one view from this individual, but two 'media outlets' will be represented by that view.

**Top ReleaseWatch Links**

This list shows the top online sites that have posted your news release, as measured by the number of visitors that frequent that site per day.

| Site Name | Visitors Per Day |
|---|---|
| YAHOO! FINANCE | 61,096,000 |
| comcast. | 5,100,000 |
| comcast. | 5,100,000 |
| REUTERS | 775,000 |
| MarketWatch | 585,000 |

Visitors per day statistics are provided by comScore, Inc.

**Online Views**

The Online Views page gives you a snapshot of how many times your release was viewed on prnewswire.com over time, as well as where the traffic to your release originated (i.e., referring sites).

**Online Views:**     121

     This number shows the cumulative count of views to your release on www.prnewswire.com

**Online Score:**

     This score is an indicator of the overall visibility of your release to online audiences, as compared to industry averages for releases issued over PR Newswire. Online audience combines release postings and views on prnewswire.com. 

**Online View Timeline**



## Online Geographical Visibility - Global

This map displays views on prnewswire.com originating from all countries.



| Country | Views |
|---|---|
| CANADA | 1 |
| INDIA | 2 |
| GUAM | 1 |
| RUSSIAN FEDERATION | 13 |
| PHILIPPINES | 1 |
| UNITED KINGDOM | 3 |
| UNITED STATES | 99 |
| EGYPT | 1 |

## Online Geographical Visibility - USA

This map displays views on prnewswire.com originating from states in the USA.

**EXHIBIT F PAGE 28**



| State | Views |
|---|---|
| CALIFORNIA | 43 |
| NEW YORK | 14 |
| NEW JERSEY | 11 |
| DISTRICT OF COLUMBIA | 7 |
| CONNECTICUT | 4 |
| NORTH CAROLINA | 4 |
| MARYLAND | 2 |
| WASHINGTON | 2 |
| PENNSYLVANIA | 2 |
| VIRGINIA | 2 |
| NEW HAMPSHIRE | 1 |
| OREGON | 1 |
| MICHIGAN | 1 |
| MINNESOTA | 1 |
| NEW MEXICO | 1 |
| TEXAS | 1 |
| ARIZONA | 1 |
| FLORIDA | 1 |

## Online Geographical Visibility - Canada

This map displays views on prnewswire.com originating from provinces in Canada

**EXHIBIT F PAGE 29**



1

| Province | Views |
|----------|-------|
| QUEBEC | 1 |

## Top Referring Sites

This list shows where the traffic to your release on prnewswire.com originated and which search engines are referring the most traffic to your release.

| Site Name | Referrers |
|-----------|-----------|
| google.com * | 51 |
| prnewswire.com | 10 |
| search.yahoo.com * | 2 |
| search.babylon.com | 1 |
| start.funmoods.com | 1 |
| news.google.com * | 1 |
| 1.rp-api.com | 1 |
| search.aol.com * | 1 |

Some referring sites cannot be determined due to encryption, firewalls, browser privacy features, direct links to content, or bookmarks.

 * referring site is a search engine

## Release Media Views

The Media Views page shows the number, geographic location and media type of journalists who have accessed your release(s) on PR Newswire for Journalists, PR Newswire's exclusive award winning media-only platform.

**Media Views:**                                                                          43

This number shows the cumulative count of journalist and blogger views to your release from PR Newswire for Journalists.

**Media Score:**

This score is an indicator of the overall visibility of your release as compared to all PR Newswire releases in the same industry sector on PR Newswire for Journalists. The scale is 0 - 100, with 50 the average.

24

**EXHIBIT F PAGE 30**

**Media Summary by Geography**
**(registered media views from PR Newswire for Journalists)**

The Media summary by geography map highlights journalist and blogger release views by country.  Refer to the Media View Details chart below for more specific information.



**Media View Timeline**
This chart shows the number of media views over time and the cumulative count of media views.



**Media View Details**

| Outlet | Industry | Media Type | Country | Media Views |
|---|---|---|---|---|
| Close-Up Media | Broadcast, Technology | Wire Service | UNITED STATES OF AMERICA | 4 |
| NewsRX | Other | Other | UNITED STATES OF AMERICA | 3 |
| The Star-Ledger | Transport, Travel | Newspaper | UNITED STATES OF AMERICA | 2 |
| Women in Business magazine | Consumer Products, Entertainment, Environment, Features, General Business, Healthcare, Media, Other, Public Issues, Technology | Blogger,Consumer Periodicals,Freelance/Writer, Other,Trade Periodicals,Web/On-Line Service | UNITED STATES OF AMERICA | 1 |
| Architects Datafile | Environment, Features, General Business, Other | Trade Periodicals | UNITED KINGDOM | 1 |
| Daily Journal | Auto, Consumer Products, Energy, Entertainment, Environment, General Business, Healthcare, Heavy Industry, Media, Other, Public Issues, Technology | Newspaper | UNITED STATES OF AMERICA | 1 |
| Radio Caracol | Auto, Broadcast, Consumer Products, Energy, Entertainment, Environment, Features, Financial Services, General Business, Healthcare, Heavy Industry, Media, Other, Public Issues, Sports, Technology, Transport, Travel | Radio,Television | UNITED STATES OF AMERICA | 1 |
| Latitudes & Attitudes | Features, Financial Services, General Business, Public Issues, Technology, Travel | Blogger,Consumer Periodicals,Freelance/Writer,Trade Periodicals,Web/On-Line Service | FRANCE | 1 |
| Internet World Business, Sportonline | Consumer Products, Sports | Trade Periodicals,Web/On-Line Service | GERMANY | 1 |
| Essence Magazine | Entertainment, Features, Healthcare | Blogger,Consumer Periodicals,Freelance/Writer, Newspaper | UNITED STATES OF AMERICA | 1 |
| Dow Jones Newswires | Features, Financial Services, Media, Public Issues | Wire Service | UNITED STATES OF AMERICA | 1 |
| Next-finance | Financial Services | Web/On-Line Service | FRANCE | 1 |
| Debtwire Europe | Financial Services | Web/On-Line Service,Wire Service | UNITED KINGDOM | 1 |
| TusMedios | Energy, Technology | Newspaper,Web/On-Line Service | SPAIN | 1 |
| PERFIL | Broadcast, Features, Healthcare, Media, Public Issues, Technology | Freelance/Writer,Newspaper, Web/On-Line Service | ARGENTINA | 1 |
| Castleford Media Pty Ltd | Auto, Broadcast, Consumer Products, Energy, Entertainment, Environment, Features, Financial Services, General Business, Healthcare, Heavy Industry, Media, Other, Public Issues, Sports, Technology, Transport, Travel | Web/On-Line Service | AUSTRALIA | 1 |
| cnbc.com | Financial Services, General Business, Healthcare, Public Issues | Freelance/Writer | UNITED STATES OF AMERICA | 1 |
| MarketWatch | Financial Services | Web/On-Line Service | UNITED STATES OF AMERICA | 1 |
| Plastic Surgery Practice | Energy, Environment, Financial Services, General Business, Healthcare, Public Issues | Blogger,Freelance/Writer,Newspaper,Radio,Television,Trade Periodicals,Web/On-Line Service | UNITED STATES OF AMERICA | 1 |
| Bryn Mawr Communications II - Endovascular Today; Cardiac Interventions Today | Healthcare | Trade Periodicals | UNITED STATES OF AMERICA | 1 |
| Agencia EFE | Broadcast, Energy, Features, Public Issues, Technology | Freelance/Writer | UNITED STATES OF AMERICA | 1 |
| ABA Journal | Media, Other | Blogger,Trade Periodicals,Web/On-Line Service | UNITED STATES OF AMERICA | 1 |
| San Diego Daily Transcript | Consumer Products, Other | Newspaper | UNITED STATES OF AMERICA | 1 |
| Mealey Publications | Other | Trade Periodicals | UNITED STATES OF AMERICA | 1 |

**EXHIBIT F PAGE 32**

| | | | | |
|---|---|---|---|---|
| The National Law Journal | Other | Newspaper | UNITED STATES OF AMERICA | 1 |
| MedialNewsService.com | Healthcare | Web/On-Line Service | UNITED STATES OF AMERICA | 1 |
| Daily Commercial Record | Other | Other | UNITED STATES OF AMERICA | 1 |
| HealthNewsDigest.com | Other | Other | UNITED STATES OF AMERICA | 1 |
| YubaNet.com | Auto, Broadcast, Energy, Entertainment, Features, Healthcare, Media, Other, Public Issues, Sports, Technology, Transport, Travel | Web/On-Line Service | UNITED STATES OF AMERICA | 1 |
| The Woman's Newspapers | Auto, Broadcast, Consumer Products, Energy, Entertainment, Features, Financial Services, Healthcare, Media, Other, Public Issues, Sports, Technology, Transport, Travel | Newspaper | UNITED STATES OF AMERICA | 1 |
| CNNMoney | Auto, Broadcast, Consumer Products, Energy, Entertainment, Features, Financial Services, Healthcare, Media, Other, Public Issues, Sports, Technology, Transport, Travel | Television,Web/On-Line Service | UNITED STATES OF AMERICA | 1 |
| Future Oncology / New Medicine | Healthcare | Other | UNITED STATES OF AMERICA | 1 |
| National Underwriter | Financial Services, Healthcare | Trade Periodicals | UNITED STATES OF AMERICA | 1 |
| Adis International Ltd. | Healthcare | Other | NEW ZEALAND | 1 |
| Marin Independent Journal | Consumer Products, Energy, Features, Financial Services, Media, Technology | Newspaper | UNITED STATES OF AMERICA | 1 |
| www.WorldofPrint.com | Features, Media, Technology | Trade Periodicals,Web/On-Line Service | GERMANY | 1 |
| San Diego Bureau, L.A. Daily Journal | Other | Newspaper | UNITED STATES OF AMERICA | 1 |
| **Grand Total for All Media Views** | | | | **43** |

## Search Views

The Search Views page details the number of views your release has received on PR Newswire's optimized platform, prnewswire.com. Additionally this page of reports includes data regarding number of click-throughs, highest ranking keywords, search engine indexing statistics, referring sites and trend data.

**Search Views:**                                                                                      55

This statistic reflects the number of times your release has been viewed on prnewswire.com as a result of search from any of the major search engines.

**Search Engine Indexing:**                                                                     2,037

This number reflects the amount of times your release has been 'pinged' by an inanimate search engine spider or 'bot' and indexed for search.

**Click Throughs:**                                                                                    14

This number reflects the number of times that readers have clicked on a link in your news release and landed on the associated website.

**SEO Score:**                                                                                          79

This score is an indicator of how many readers accessed your optimized release as a result of finding it using a search engine, as compared to how many readers accessed other releases issued over PR Newswire, again via search engines, for the same industry. The scale is 0 - 100, with 50 being average.

## Clickthrough URLs

See a breakout of each URL within your release on which viewers have clicked.

**EXHIBIT F PAGE 33**



**Clickthrough URLs**                                                                                      **Clicks**

1) http://www.gilardi.com/boironsettlement                                                                      14

Some keywords cannot be determined due to encryption, firewalls, browser privacy features, direct links to content or bookmarks.

## Search View Timeline

This chart shows the number of search views over time and the cumulative count of search views.



## Top Search Terms

| Search Terms | Google | Yahoo! | MSN/Bing | AOL | Ask | Total |
|---|---|---|---|---|---|---|
| "patton boggs" | 1 | 0 | 0 | 0 | 0 | 1 |
| law offices of ronald marron• | 0 | 0 | 0 | 1 | 0 | 1 |
| "class action" "postmarked by" 2012 | 0 | 1 | 0 | 0 | 0 | 1 |
| children's coldcalm settlement | 0 | 1 | 0 | 0 | 0 | 1 |
| "ronald a. marron" | 1 | 0 | 0 | 0 | 0 | 1 |
| law firm of ronald marron | 1 | 0 | 0 | 0 | 0 | 1 |
| law office of ronald a. marron | 1 | 0 | 0 | 0 | 0 | 1 |

**EXHIBIT F PAGE 34**

| | | | | | | |
|---|---|---|---|---|---|---|
| law offices of ronald a. marron aplc | 3 | 0 | 0 | 0 | 0 | 3 |
| law offices of ronald a. marron | 1 | 0 | 0 | 0 | 0 | 1 |
| patton boggs news | 1 | 0 | 0 | 0 | 0 | 1 |
| patton boggs | 3 | 0 | 0 | 0 | 0 | 3 |
| pr newswire law offices of ronald a marron | 1 | 0 | 0 | 0 | 0 | 1 |
| ron marron lawsuit | 1 | 0 | 0 | 0 | 0 | 1 |
| ron marron | 1 | 0 | 0 | 0 | 0 | 1 |
| ronald a marron | 2 | 0 | 0 | 0 | 0 | 2 |
| ronald a. marron | 1 | 0 | 0 | 0 | 0 | 1 |
| ronald marron law office san diego | 1 | 0 | 0 | 0 | 0 | 1 |
| ronald marron law offices | 1 | 0 | 0 | 0 | 0 | 1 |
| ronald marron | 3 | 0 | 0 | 0 | 0 | 3 |
| ronald a. marron  san diego | 1 | 0 | 0 | 0 | 0 | 1 |
| ronald marron law office | 1 | 0 | 0 | 0 | 0 | 1 |
| the law office of ronald a. marron, aplc and patton boggs llp announce preliminary approval of class action settlement | 1 | 0 | 0 | 0 | 0 | 1 |

**Grand Total For All Search Terms:**          **29**

## Release Investor Views

> The Investor Views page details the visibility of your release to the investment community as achieved on Thomson ONE Desktop and StreetEvents databases. Comprehensive metrics are only available for public company releases issued over premium newslines.

### Investor Views:      4

This number shows the cumulative count of investor views to your release from Thomson ONE Desktop and StreetEvents.

### Investor Score:

This index is an indicator of the overall visibility of your release to the investment community using Thomson ONE Desktop and StreetEvents, as compared against industry averages.  The scale is 0 - 100, with 50 the average.



## Distribution of Investor Views (Top 5)

This graph shows a breakout of investor views among the top five investment houses.



## Investor View Timeline

This chart shows the number of investor views over time and the cumulative count of investor views.

**EXHIBIT F PAGE 35**



## Investment House View Listings

| Investment House | Views |
|---|---|
| Thomson ONE Desktop | 4 |
| **Grand Total for All Views** | **4** |

## Release ReleaseWatch Views

> The ReleaseWatch page provides a listing of sites where your release was posted on the Web. ReleaseWatch(TM) monitors over 1,400 Web sites - including MarketWatch, Reuters and Yahoo! - and offers a report with an average of more than 100 links to the precise page where the full text of your press release can be viewed.

## Total ReleaseWatch Postings = 269

### Postings by Hour (48 hour timeline)

ReleaseWatch links are collected indefinitely after your release crosses the wire. However, most links accrue within the first 48 hours after transmission. The timeline below tracks link collection by the hour after transmission of your release.



## Postings by Industry (Top 5)

This chart breaks out release postings by the industry vertical of the online site posting the release.  Only the top five industries are shown.



- Media & Information
- Financial
- Health
- Policy & Public Interest
- Energy

## ReleaseWatch Postings Details

| Logo | Site | Link | Industry | Visitors |
|---|---|---|---|---|
| YAHOO! FINANCE | Yahoo! | Link | Media & Information | 61,096,000 |
| Comcast | Comcast Finance | Link | Financial | 5,100,000 |
| REUTERS | Reuters | Link | Financial | 775,000 |
| MarketWatch | MarketWatch | Link | Financial | 585,000 |
| boston.com | Boston Globe | Link | Media & Information | 562,000 |
| bizjournals | Bizjournals.com, Inc. | Link | Media & Information | 381,000 |
| ATLANTA BUSINESS CHRONICLE | Atlanta Business Chronicle | Link | Media & Information | 381,000 |
| AUSTIN BUSINESS JOURNAL | Austin Business Journal | Link | Media & Information | 381,000 |
| BALTIMORE BUSINESS JOURNAL | Baltimore Business Journal | Link | Media & Information | 381,000 |
| Boston Business Journal | Boston Business Journal | Link | Media & Information | 381,000 |
| Business First | Business First of Buffalo | Link | Media & Information | 381,000 |
| BUSINESS FIRST | Business First of Columbus | Link | Media & Information | 381,000 |
| BUSINESS FIRST | Business First of Louisville | Link | Media & Information | 381,000 |
| The Business Journal | Business Journal of Greater Milwaukee | Link | Media & Information | 381,000 |
| The Business Journal | Business Journal of Phoenix | Link | Media & Information | 381,000 |
| THE BUSINESS JOURNAL | Business Journal of the Greater Triad Area | Link | Media & Information | 381,000 |

**EXHIBIT F PAGE 37**

| | | | | |
|---|---|---|---|---|
| | Business Review (Albany) | Link | Media & Information | 381,000 |
| | Cincinnati Business Courier | Link | Media & Information | 381,000 |
| | Dallas Business Journal | Link | Media & Information | 381,000 |
| | Denver Business Journal | Link | Media & Information | 381,000 |
| | Houston Business Journal | Link | Media & Information | 381,000 |
| | Jacksonville Business Journal | Link | Media & Information | 381,000 |
| | Kansas City Business Journal | Link | Media & Information | 381,000 |
| | Los Angeles Business from bizjournals | Link | Media & Information | 381,000 |
| | Memphis Business Journal | Link | Media & Information | 381,000 |
| | Minneapolis / St. Paul Business Journal | Link | Media & Information | 381,000 |
| | Nashville Business Journal | Link | Media & Information | 381,000 |
| | New Mexico Business Weekly | Link | Media & Information | 381,000 |
| | Orlando Business Journal | Link | Media & Information | 381,000 |
| | Pacific Business News | Link | Media & Information | 381,000 |
| | Philadelphia Business Journal | Link | Media & Information | 381,000 |
| | Pittsburgh Business Times | Link | Media & Information | 381,000 |
| | Portland Business Journal | Link | Media & Information | 381,000 |
| | Puget Sound Business Journal | Link | Media & Information | 381,000 |
| | Sacramento Business Journal | Link | Media & Information | 381,000 |
| | San Antonio Business Journal | Link | Media & Information | 381,000 |
| | San Francisco Business Times | Link | Media & Information | 381,000 |
| | San Jose Business Journal | Link | Media & Information | 381,000 |
| | South Florida Business Journal | Link | Media & Information | 381,000 |
| | St. Louis Business Journal | Link | Media & Information | 381,000 |
| | Tampa Bay Business Journal | Link | Media & Information | 381,000 |
| | Triangle Business Journal | Link | Media & Information | 381,000 |
| | Washington Business Journal | Link | Media & Information | 381,000 |
| | Wichita Business Journal | Link | Media & Information | 381,000 |
| | Yahoo! Canada | Link | Media & Information | 346,000 |

**EXHIBIT F PAGE 38**

| | | | | |
|---|---|---|---|---|
| | International Business Times | Link | Media & Information | 239,000 |
| | The Sacramento Bee | Link | Media & Information | 197,000 |
| | TheStreet.com | Link | Financial | 186,000 |
| | WFSB-TV CBS-3 (Hartford, CT) | Link | Media & Information | 94,000 |
| | Yahoo! Singapore | Link | Media & Information | 82,000 |
| | PR Newswire | Link | Media & Information | 71,000 |
| | ShareBuilder | Link | Financial | 69,000 |
| | KPTV-TV FOX-12 (Beaverton, OR) | Link | Other | 56,000 |
| | Press-Enterprise | Link | Media & Information | 55,000 |
| | KOTV-TV CBS-6 (Tulsa, OK) | Link | Media & Information | 51,000 |
| | WTHR NBC-13 (Indianapolis, IN) | Link | Media & Information | 46,000 |
| | KCTV-TV CBS-5 (Kansas City, MO) | Link | Other | 45,000 |
| | WISTV NBC-10 (Columbia, SC) | Link | Media & Information | 45,000 |
| | KSTP-TV ABC-5 (Saint Paul, MN) | Link | Media & Information | 44,000 |
| | KGO-TV ABC-7 (San Francisco, CA) | Link | Media & Information | 42,000 |
| | KWTV-TV CBS-9 (Oklahoma City, OK) | Link | Media & Information | 36,000 |
| | WSMV-TV NBC-4 (Nashville, TN) | Link | Other | 36,000 |
| | WAVE NBC-3 (Louisville, KY) | Link | Media & Information | 33,000 |
| | KVVU-TV FOX-5 (Las Vegas, NV) | Link | Other | 32,000 |
| | WHTM-TV ABC-27 (Harrisburg, PA) | Link | Media & Information | 31,000 |
| | WNEM-TV CBS-5 (Saginaw, MI) | Link | Other | 30,000 |
| | The Herald | Link | Media & Information | 29,000 |
| | WAFB CBS-9 (Baton Rouge, LA) | Link | Media & Information | 27,000 |
| | WMC NBC-5 (Memphis, TN) | Link | Media & Information | 27,000 |
| | WFMZ | Link | Other | 26,000 |
| | KLTV ABC-7 (Tyler, TX) | Link | Media & Information | 26,000 |
| | WSFA NBC-12 (Montgomery, AL) | Link | Media & Information | 26,000 |
| | WCAX CBS-3 (Burlington, VT) | Link | Media & Information | 25,000 |
| | KPHO-TV CBS-5 (Phoenix, AZ) | Link | Media & Information | 24,000 |

**EXHIBIT F PAGE 39**

| | | | | |
|---|---|---|---|---|
| DIGITAL JOURNAL | digital journal | Link | Media & Information | 24,000 |
| KATV | KATV-TV ABC-7 (Little Rock, AR) | Link | Media & Information | 23,000 |
| HERALD-WHIG | Quincy Herald-Whig (Quincy, IL) | Link | Other | 23,000 |
| WBOC 16 | WBOC CBS-16 (Salisbury, MD) | Link | Media & Information | 23,000 |
| FOX CAROLINA | WHNS-TV FOX-21 (Greenville, SC) | Link | Other | 23,000 |
| WKRN.com | WKRN ABC-2 (Nashville, TN) | Link | Media & Information | 23,000 |
| LIVE HD 5 NEWS | WCSC CBS-5 (Charleston, SC) | Link | Media & Information | 22,000 |
| KTUL.com | KTUL-TV ABC-8 (Tulsa, OK) | Link | Media & Information | 21,000 |
| KFMB-TV 8 HD | KFMB-TV CBS-8 (San Diego, CA) | Link | Media & Information | 20,000 |
| HAWAII NEWS NOW | KHNL-TV NBC-8 (Honolulu, HI) | Link | Media & Information | 20,000 |
| WLBT 3 | WLBT NBC-3 (Jackson, MS) | Link | Media & Information | 20,000 |
| WAFF 48 NEWS | WAFF NBC-48 (Huntsville, AL) | Link | Media & Information | 19,000 |
| wbtv.com On Your Side | WBTV CBS-3 (Charlotte, NC) | Link | Media & Information | 19,000 |
| abc 13 | WSET-TV ABC-13 (Lynchburg, VA) | Link | Media & Information | 19,000 |
| 12 | WWBT NBC-12 (Richmond, VA) | Link | Media & Information | 19,000 |
| Heartland NEWS KFVS12 | KFVS CBS-12 (Cape Girardeau, MO) | Link | Media & Information | 18,000 |
| Atlanta cbsatlanta.com | WGCL-TV CBS-46 (Atlanta, GA) | Link | Other | 18,000 |
| 7 KPLC | KPLC NBC-7 (Lake Charles -Lafayette, LA) | Link | Media & Information | 17,000 |
| 7 KWWL.com | KWWL-TV NBC-7 (Waterloo, IA) | Link | Media & Information | 17,000 |
| 2 WBAY | WBAY ABC-2 (Green Bay, WI) | Link | Media & Information | 17,000 |
| 3 EYEWITNESS NEWS | WRCB-TV NBC-3 (Chattanooga, TN) | Link | Media & Information | 17,000 |
| 8 NEWS | WRIC ABC-8 (Richmond, VA) | Link | Media & Information | 17,000 |
| FOX 19 WXIX CINCINNATI | WXIX FOX-19 (Cincinnati, OH) | Link | Media & Information | 17,000 |
| KAIT 8 Jonesboro, AR abc | KAIT ABC-8 (Jonesboro, AR) | Link | Media & Information | 16,000 |
| KHQ 06 HD Right Now | KHQ-TV NBC-6 (Spokane, WA) | Link | Media & Information | 16,000 |
| NEWS 12 KSLA-TV-DT | KSLA CBS-12 (Shreveport, LA) | Link | Media & Information | 16,000 |
| my FoxAL.com | WBRC-TV FOX-6 MyFox Birmingham (Birmingham, AL) | Link | Media & Information | 16,000 |
| WTOC The Southeast News Leader | WTOC CBS-11 (Savannah, GA) | Link | Media & Information | 16,000 |
| LongIslandPress.com | Long Island Press | Link | Other | 15,000 |

**EXHIBIT F PAGE 40**

| | | | | |
|---|---|---|---|---|
| | KCBD NBC-11 (Lubbock, TX) | Link | Media & Information | 14,000 |
| | KFDA CBS-10 (Amarillo, TX) | Link | Media & Information | 14,000 |
| | KTRE ABC-9 (Lufkin, TX) | Link | Media & Information | 14,000 |
| | WAOW-TV ABC-9 / WYOW-TV CW-34 (Wausau, WI) | Link | Media & Information | 14,000 |
| | Business Today [India] | Link | Media & Information | 14,000 |
| | WALB NBC-10 (Albany, GA) | Link | Media & Information | 13,000 |
| | WBMA-TV ABC-33 / ABC-40 (Birmingham, AL) | Link | Media & Information | 13,000 |
| | WLOX ABC-13 (Biloxi, MS) | Link | Media & Information | 13,000 |
| | WVVA NBC-6 (Bluefield, WV) | Link | Media & Information | 13,000 |
| | WKOW-TV ABC-27 (Madison, WI) | Link | Media & Information | 12,000 |
| | WECT NBC-6 (Wilmington, NC) | Link | Media & Information | 11,000 |
| | WTVM ABC-9 (Columbus, GA) | Link | Media & Information | 11,000 |
| | KWQC NBC-6 (Davenport, IA) | Link | Media & Information | 10,000 |
| | WBOY-TV NBC-12 (Clarksburg, WV) | Link | Other | 10,000 |
| | WDAM NBC-7 (Hattiesburg-Laurel, MS) | Link | Media & Information | 10,000 |
| | WMBF NBC-32 (Myrtle Beach, SC) | Link | Media & Information | 10,000 |
| | WWTV-TV CBS-9 (Cadillac, MI) | Link | Other | 10,000 |
| | Ticker Technologies | Link | Financial | 10,000 |
| | KTIV NBC-4 (Sioux City, IA) | Link | Media & Information | 9,000 |
| | WJRT-TV ABC-12 (Flint, MI) | Link | Media & Information | 9,000 |
| | WTEN ABC-10 (Albany, NY) | Link | Media & Information | 9,000 |
| | WTVG-TV ABC-13 (Toledo, OH) | Link | Media & Information | 8,000 |
| | KXXV-TV ABC-25 (Waco, TX) | Link | Media & Information | 7,000 |
| | KION CBS-46 (Salinas, CA) | Link | Media & Information | 6,000 |
| | KOLD CBS-13 (Tucson, AZ) | Link | Media & Information | 6,000 |
| | KMPH-TV FOX-26 (Fresno, CA) | Link | Media & Information | 5,000 |
| | KNDU-TV NBC (Kennewick, WA) | Link | Media & Information | 5,000 |
| | KYTX CBS-19 (Tyler, TX) | Link | Media & Information | 5,000 |
| | OTC Markets | Link | Financial | 4,000 |

**EXHIBIT F PAGE 41**

| | Outlet | Link | Category | Value |
|---|---|---|---|---|
| | KIII-TV ABC-3 (Corpus Christi, TX) | Link | Other | 4,000 |
| | WPFO-TV FOX-23 (Portland, ME) | Link | Other | 4,000 |
| | BioPortfolio | Link | Health | 3,000 |
| | Webindia123.com | Link | Financial | 1,000 |
| | AD HOC NEWS | Link | Media & Information | 0 |
| | AlipesNews | Link | Media & Information | 0 |
| | Association of Energy Engineers | Link | Energy | 0 |
| | Austin American-Statesman (Austin, TX) | Link | Media & Information | 0 |
| | Biz Daily (Singapore) | Link | Financial | 0 |
| | Bolsamania (Web Financial Group) | Link | Financial | 0 |
| | CBOE [Chicago Board Options Exchange] | Link | Financial | 0 |
| | DallasNews.com | Link | Media & Information | 0 |
| | Denton Record-Chronicle | Link | Media & Information | 0 |
| | El Paso Times | Link | Media & Information | 0 |
| | FinRoad | Link | Financial | 0 |
| | Globe Advisor | Link | Financial | 0 |
| | HealthScout | Link | Health | 0 |
| | HealthSquare | Link | Health | 0 |
| | Interest!ALERT | Link | Media & Information | 0 |
| | InvestorPoint.com | Link | Financial | 0 |
| | KING-TV NBC-5 (Seattle, WA) | Link | Media & Information | 0 |
| | Las Vegas Business Press | Link | Media & Information | 0 |
| | myMotherLode.com | Link | Media & Information | 0 |
| | News Info Guide | Link | Media & Information | 0 |
| | Provident Healthcare Partners | Link | Health | 0 |
| | Stocklink | Link | Financial | 0 |
| | ValueNotes | Link | Financial | 0 |
| | FinWin | Link | Other | 0 |
| | JobCruiter.com | Link | Other | 0 |

**EXHIBIT F PAGE 42**

| | | | |
|---|---|---|---|
| KALB-TV CBS-2 / NBC-5 (Alexandria, LA) | Link | Media & Information | 0 |
| KAUZ-TV CBS-6 (Wichita Falls, TX) | Link | Media & Information | 0 |
| KAZT IND-7 (Phoenix/Prescott, AZ) | Link | Media & Information | 0 |
| KBMT-TV ABC-12 (Beaumont, TX) | Link | Media & Information | 0 |
| KCAU ABC-9 (Sioux City, IA) | Link | Media & Information | 0 |
| KCBA-TV FOX-35 (Salinas, CA) | Link | Media & Information | 0 |
| KCEN-TV NBC-9 (Temple, TX) | Link | Media & Information | 0 |
| KCOY CBS-12 (Santa Maria, CA) | Link | Media & Information | 0 |
| KDUH-TV ABC-3 (Scottsbluff, NE) | Link | Media & Information | 0 |
| KEYC-TV CBS-12 / FOX-12 (Mankato, MN) | Link | Other | 0 |
| KFJX-TV FOX-14 (Pittsburg, KS) | Link | Media & Information | 0 |
| KFMB 100.7 Jack-FM (San Diego, CA) | Link | Media & Information | 0 |
| KFMB 760-AM (San Diego, CA) | Link | Media & Information | 0 |
| KFRE-TV CW-59 (Fresno, CA) | Link | Media & Information | 0 |
| KFVE MyNetworkTV-5 (Honolulu, HI) | Link | Media & Information | 0 |
| KGWN-TV CBS-5 (Fort Collins, CO) | Link | Other | 0 |
| KKFX FOX-11 (Santa Maria, CA) | Link | Media & Information | 0 |
| KLFY CBS-10 (Lafayette, LA) | Link | Media & Information | 0 |
| KLJB-TV FOX-18 (Davenport, IA) | Link | Other | 0 |
| KLKN ABC-8 (Lincoln, NE) | Link | Media & Information | 0 |
| KMEG-TV CBS-14 (Sioux City, IA) | Link | Media & Information | 0 |
| KNDO-TV NBC-3 (Yakima, WA) | Link | Media & Information | 0 |
| KNOE-TV CBS-8 (Monroe, LA) | Link | Media & Information | 0 |
| KOAM-TV CBS-7 (Pittsburg, KS) | Link | Media & Information | 0 |
| KOTA ABC-3 (Rapid City, SD) | Link | Media & Information | 0 |
| KPTH-TV FOX-44 (Dakota Dunes, SD) | Link | Media & Information | 0 |
| KPTM-TV FOX-42 (Omaha, NE) | Link | Media & Information | 0 |
| KQCW CW-12/19 (Tulsa, OK) | Link | Media & Information | 0 |
| KRHD-TV ABC-40 (Bryan-College Station, TX) | Link | Media & Information | 0 |

| | | | | |
|---|---|---|---|---|
| KSFY.com | KSFY-TV ABC-13 (Sioux Falls, SD) | Link | Media & Information | 0 |
| 45 7NEWS | KSTC-TV IND-45 (Saint Paul, MN) | Link | Media & Information | 0 |
| | KSWO-TV ABC-7 (Lawton, OK) | Link | Media & Information | 0 |
| KSWT 13 NEWS | KSWT-TV CBS-13 (Yuma, AZ) | Link | Media & Information | 0 |
| 10 KTEN | KTEN NBC-10 (Denison, TX) | Link | Media & Information | 0 |
| fox12idaho.com KTRV-TV | KTRV-TV FOX-12 (Nampa, ID) | Link | Media & Information | 0 |
| KTTC | KTTC NBC-10 (Rochester, MN) | Link | Media & Information | 0 |
| FOX KFXL | KTVG-TV FOX-17 / KSNB-TV FOX-4 (Kearney, NE) | Link | Media & Information | 0 |
| 2 NEWS KTVN RENO  KTVN DT | KTVN-TV CBS-2 (Reno, NV) | Link | Media & Information | 0 |
| KUAM NEWS | KUAM-TV NBC-8 / CBS-11 (Hagatna, Guam) | Link | Media & Information | 0 |
| KUSI NEWS | KUSI-TV IND-51 (San Diego, CA) | Link | Media & Information | 0 |
| NewsWest 9.com MORE NEWS. MORE OFTEN. | KWES-TV NBC-9 (Midland, TX) | Link | Media & Information | 0 |
| valleynewslive.com | KXJB-TV CBS-4 / KVLY-TV NBC-11 (Fargo, ND) | Link | Media & Information | 0 |
| my FOX 47.com | KXLT FOX-47 (Rochester, MN) | Link | Media & Information | 0 |
| KX News HIGH DEFINITION | KXMB-TV CBS-12(Bismarck, ND) | Link | Other | 0 |
| THE KXVO 15 | KXVO-TV CW-15 (Omaha, NE) | Link | Media & Information | 0 |
| MedIndia.com | Medindia Health Network | Link | Health | 0 |
| Interest! ALERT | Mega News Network: Banking | Link | Financial | 0 |
| Interest! ALERT | Mega News Network: Health | Link | Health | 0 |
| Interest! ALERT | Mega News Network: Legal | Link | Policy & Public Interest | 0 |
| NTV NEBRASKA.TV | NebraskaTV (Kearney, NE) | Link | Media & Information | 0 |
| NORTHERN COLORADO | NOCO-TV CBS-5 (Fort Collins, CO) | Link | Other | 0 |
| StockRants | StockRants | Link | Financial | 0 |
| THE STATE JOURNAL | The State Journal (Charleston, WV) | Link | Other | 0 |
| wandtv.com 17 | WAND-TV NBC-17 (Decatur, IL) | Link | Media & Information | 0 |
| CW WBCB | WBCB-TV CW-21 (Youngstown, OH) | Link | Media & Information | 0 |
| FOX 21 DELMARVA | WBOC-TV FOX-21 (Salisbury, MD) | Link | Other | 0 |
| abc 4 NEWS CHARLESTON | WCIV-TV ABC-4 (Charleston, SC) | Link | Media & Information | 0 |
| THE CW WCWG 20 | WCWG-TV CW-20 (Greensboro, NC) | Link | Media & Information | 0 |

**EXHIBIT F PAGE 44**

| | | | |
|---|---|---|---|
| WDRB FOX-41 (Louisville, KY) | Link | Media & Information | 0 |
| WDSI-TV FOX-61 (Chattanooga, TN) | Link | Other | 0 |
| WEHT-TV ABC-25 (Evansville, IN) | Link | Media & Information | 0 |
| WFFF-TV FOX-44 (Colchester, VT) | Link | Media & Information | 0 |
| WFIE NBC-14 (Evansville, IN) | Link | Media & Information | 0 |
| WFLX FOX-29 (West Palm Beach, FL) | Link | Media & Information | 0 |
| WFMJ-TV NBC-21 (Youngstown, OH) | Link | Media & Information | 0 |
| WFXG-TV FOX-54 (Augusta, GA) | Link | Media & Information | 0 |
| WFXR-TV FOX-21/27 (Roanoke, VA) | Link | Other | 0 |
| WFXS-TV FOX-55 (Wausau, WI) | Link | Other | 0 |
| WGEM-TV NBC-10 (Quincy, IL) | Link | Media & Information | 0 |
| WGFL-TV CBS-4 (Gainesville, FL) | Link | Media & Information | 0 |
| WHBF CBS-4 (Rock Island, IL) | Link | Media & Information | 0 |
| WICU-TV NBC-12  (Erie, PA) | Link | Other | 0 |
| WLAX-TV FOX-25/48 (LaCrosse, WI) | Link | Other | 0 |
| WLNE-TV ABC-6 (Providence, RI) | Link | Media & Information | 0 |
| WLNS CBS-6 (Lansing, MI) | Link | Media & Information | 0 |
| WLTZ-TV CW-38 (Columbus, GA) | Link | Other | 0 |
| WLTZ-TV NBC-38 (Columbus, GA) | Link | Media & Information | 0 |
| WMBB-TV ABC-13 (Panama City, FL) | Link | Media & Information | 0 |
| WMDT-TV ABC-47 /CW-3 (Salisbury, MD) | Link | Media & Information | 0 |
| WOI ABC-5 (West Des Moines, IA) | Link | Media & Information | 0 |
| WOIO CBS-19 (Cleveland, OH) | Link | Media & Information | 0 |
| WOLF-TV FOX-56 (Wilkes-Barre, PA) | Link | Other | 0 |
| WOWK-TV CBS 13 (Huntington, WV) | Link | Other | 0 |
| WQOW-TV ABC-18 (Eau Claire, WI) | Link | Media & Information | 0 |
| WREX-TV NBC-13 (Rockford, IL) | Link | Media & Information | 0 |
| WSFX-TV FOX-26 (Wilmington, NC) | Link | Media & Information | 0 |
| WSHM-TV CBS-3 (Springfield, MA) | Link | Other | 0 |

**EXHIBIT F PAGE 45**

| | | | | |
|---|---|---|---|---|
| WSJV-TV FOX-28 (South Bend, IN) | Link | | Media & Information | 0 |
| WTLH-TV FOX-49 (Tallahassee, FL) | Link | | Other | 0 |
| WTNZ FOX-43 (Knoxville, TN) | Link | | Media & Information | 0 |
| WTOL CBS-11 (Toledo, OH) | Link | | Media & Information | 0 |
| WTRF-TV CBS-7 (Wheeling, WV) | Link | | Other | 0 |
| WUPV-TV CW-65 (Ashland, VA) | Link | | Media & Information | 0 |
| WVNS-TV CBS-59 (Ghent, WV) | Link | | Other | 0 |
| WVNY-TV ABC-22 (Colchester, VT) | Link | | Media & Information | 0 |
| WXOW ABC-19 (La Crosse, WI) | Link | | Media & Information | 0 |
| WXTX-TV FOX-54 (Columbus, GA) | Link | | Media & Information | 0 |
| WXVT-TV CBS-15 (Greenville, MS) | Link | | Media & Information | 0 |
| WZDX-TV FOX-54 (Huntsville, AL) | Link | | Other | 0 |
| KTAL-TV Channel 6 Shreveport / ArkLaTexHomepage.com | Link | | Media & Information | 0 |
| WSBNN The Wall Street Business News Network | Link | | Financial | 0 |
| EIN Presswire | Link | | Media & Information | 0 |
| FOREX Trading News Today | Link | | Financial | 0 |
| Global Investing Today | Link | | Financial | 0 |
| Healthcare Industry Today | Link | | Health | 0 |
| Telegraph India | Link | | Media & Information | 0 |
| Pharma Leaders | Link | | Health | 0 |
| Benchmark Imaging Group | Link | | Health | 0 |

Visitors per day statistics are provided by comScore, Inc.

**Release Engagement Views**

The engagement page helps you understand the level of engagement of your audience using the number of touch points from viewers. Releases that have not been printed, emailed, etc. do not display Engagement Index scores.

**Engagement Actions:**          4

Engagement actions are actions taken by online readers as they interact with your news release on www.prnewswire.com. These actions may include printing your release, sharing it on a social network, blogging about it, or performing a search via Blog Search, Technorati or Twitter to find your content online.

**EXHIBIT F PAGE 46**

**Engagement Index:**

This index is an indicator of interactive usage vis-a-vis your news releases in the past year (i.e., how many times your releases were blogged about, emailed, bookmarked, printed, etc.).  A score of 50 is average.



**3 I's of Release Engagement:**

PR Newswire segments engagement actions into three categories:  "Interaction", "Intimacy" and "Influence", as part of a ranking hierarchy coined by Forrester Research.  Below you will find all reader interactions with your news release broken out by engagement type.

Interaction                                                                                                              3

The actions a reader takes while reading your release such as printing it.

Intimacy                                                                                                                 0

The affection a reader has for your release as expressed by bookmarking, release submissions to Facebook, MySpace, Digg, etc., or reactions on Technorati and Google Blogs.

Influence                                                                                                                1

The likelihood a reader is to advocate on behalf of your release/company as shown by blog postings found or the reader clicking a "Blog it" button in the release, emailing, linking, etc.

**Timeline of Total Engagement Activities by Day**



**Engagement Actions by Engagement Type**

| Engagement Action(s) | Engagement Type | Total |
|---|---|---|
| Email | Influence | 1 |
| Print | Interaction | 3 |
| **Grand Total for All Engagement Actions** | | **4** |

**EXHIBIT F PAGE 47**

# EXHIBIT G

**Online Advertising Vehicles - Quick Reference Guide**

**Sponsored Links Advertising - Google, Yahoo, and Bing**

The sponsored links portion of an internet advertising campaign targets individuals who are specifically looking for information about the case on the major search engines because they may have seen the print ad or received information from someone who has already heard about the case.  A Class Member may remember a few keywords about the case and likely utilize one of the major search engines to find the case website.

Sponsored links are helpful in directing traffic to the case website because part of the algorithm that determines organic search results is the length of time a website has been online.  By bidding on keywords to generate sponsored links early in the campaign, a link to the case website will be positioned high in the search results for all keywords that we select for the campaign.  After the site begins to show up organically (without paid advertising), budget can be scaled back or transferred to other media vehicles.

**Targeted Content Advertising - Google Display Network**

Similar to placing fractional print ads near relevant print content, advertisers know that placing website links on pages with content relevant to the case is a highly effective way to generate interest from those individuals who may not be looking for the case website, but who may be potential class members nonetheless.   LDG utilize Google's Display Network and managed placement tool to develop a list of appropriate sites to target potential class members.

**Banner Display Advertising - Pulsepoint**

Banners and Block ads are designed to attract the attention of potential class members and placed near relevent content online.  Delivery of the impressions can be limited to three per unique IP address to minimize audience duplication (the number of times a potential class member sees the ad).  Our internet partners have the ability to contextualize a site realtime, determining it's content and how that content relates to a number of categories for the purpose of placing advertising.  This approach to banner advertising allows for impressions to be focused where potential class members are likely to be.  Because of the class demographics, this would be a very effective method to direct class members to the case website.

**Social Media - Facebook**

As an additional component of its online notification, LDG would suggest utilization of social networking media, a rapidly growing element used in nearly all advertising campaigns [2].  Impressions could be purchased over broad demographic profiles, or could be targeted to pages dedicated to individuals that fit within our demographic profile.

The Facebook page would be created and banner ads placed within the Facebook network.  The goal of the Facebook page is to direct class members to the actual settlement website so while basic information would be placed to summarize the settlement, class members would still have to visit the case website for more comprehensive information.

[2] In 2009, a survey conducted with 133 Chief Marketing Officers found that nearly two-thirds planned to increase social media budgets in 2010 Mediapost, "Survey: Most CMOs to boost Social Media Budgets in 2010," December 2009

**EXHIBIT G PAGE 48**

# EXHIBIT H



*Gallucci v. Boiron, Inc.*
**Requests For Exclusion Received**

1) Rebecca Bohn      Chicago, IL

2) Leonidas Jovel      Los Angeles, CA

**EXHIBIT H PAGE 49**

# EXHIBIT I



***Gallucci v. Boiron, Inc.***
**Objections Received**

1) Objection of Class Members Henry Gonzales, Monica Fernandez, Eleanor Lanigan, Michael Martinez, Glenna O'Dell, and Gemis Rangel TO Final Appproval of Class Action Settlement

   *Submitted by Pearson, Simon, Warshaw & Penny LLP and Newport Trial Group*

2) Israel Elizondo

   *Submitted by Class Member*

3) Maria Carapia & David Johnson

   *Submitted by Law Offices of Darrell Palmer*

**EXHIBIT I PAGE 50**

# EXHIBIT J



**Gilardi**
**&Co LLC**

3301 Kerner Blvd.
San Rafael, CA  94901
P: (415) 461-0410
F: (415) 461-0412

Sent via Email                                                         May 24, 2012

Ronald A. Marron, Esq.                          Christina Guerola Sarchio, Esq.
Law Offices of Ronald A. Marron, APLC           Patton Boggs LLP
3636 4th Avenue, Suite 202                      2550 M St. NW
San Diego, CA 92103                             Washington, DC 20037

Re:    **Gallucci v. Boiron, Inc. et al.**
       Client Matter Number 3899
       Invoice: 3899-1

Professional services, out-of-pocket expenses and third party expenses in connection with Case
Setup, Software Customization, CAFA Notice Mailing, Case Management, Email Blast, Telephone
Support, Case Website and Publication for the **Gallucci v. Boiron, Inc. et al.** matter.

**Notification**
|  |  |  |
|---|---|---|
| Case Setup | $      450.00 |  |
| Software Customization | 450.00 |  |
| Document Formatting & Proofreading | 360.00 |  |
| CAFA Notice Mailing | 2,500.00 |  |
| Case Management | 2,700.00 |  |
| Email Notice |  |  |
|   One Time Setup Cost | 150.00 |  |
|   Email Blast | 25.00 |  |
|   Staff Time | 180.00 |  |
| Telephone Support |  |  |
|   One Time Setup Cost | 1,500.00 |  |
|   Preparation of IVR Script & Operator FAQs | 900.00 |  |
| Case Website | 1,000.00 |  |
| Publication | 231,018.00 |  |
| Subtotal Notification |  | $ 241,233.00 |
|  |  |  |
| AMOUNT DUE |  | $ 241,233.00 |